LYLE H HUGHES
H3072721



# Disability Income Policy

**New York Life Insurance Company** will pay the benefits of this policy in accordance with its provisions. The pages which follow, including any exceptions and limitations, are also a part of this policy.

**10 day free examination period.** Please examine this policy. Within 10 days after delivery, the policy can be returned to the Company or to the agent through whom it was purchased, with a written request for a full refund of premium. Upon such a request, the policy will be void from the start, and any premium paid will be refunded.

**Pre-existing condition limitations.** Benefits for a disability caused in any way by a pre-existing condition, as defined in this policy, will be provided only if the disability starts after the policy has been in force for 2 years.

However, if a condition is excluded from coverage by name or specific description, no benefits will be provided for a loss that results from that condition even after these 2 years.

**Renewability.** This policy is non-cancellable and guaranteed renewable to the policy anniversary nearest the insured's 65th birthday as stated in the Right to Renew Policy section.

After that anniversary, the policy may be renewed to the policy anniversary nearest the insured's 75th birthday as long as the insured is gainfully employed full time. During this time, the Company can change the table of premium rates that applies to this policy.

**Disability Income Policy**
Non-Cancellable and Guaranteed Renewable to Age 65—No Increase in Premium Rates
Conditionally Renewable From Age 65 to Age 75
Subject to Change in Premium Rates

8732-1

**Important notice concerning statements in the application for this insurance.** Please read the copy of the application attached to this policy. Omissions or misstatements in the application could cause an otherwise valid claim to be denied or the policy to be rescinded. Carefully check the application and write to the Company within 10 days after delivery if any information shown is not correct and complete or if any medical history has not been included. The application is part of this insurance policy and this insurance policy was issued on the basis that the answers to all questions and any other material information shown are correct and complete.

This policy is executed as of 12:01 A.M. on the policy date.

Coverage ends as of 11:59 P.M. on the last date this policy is in effect. These times are based on the insured's place of residence.

*[signature]*

President

*[signature]*

Secretary

Countersignature



EXHIBIT "A"

INSURED              LYLE H HUGHES                                    AGE 27

POLICY NUMBER        H3072721

POLICY DATE          DECEMBER 25, 1987

OWNER                INSURED

**BENEFITS MONTHLY INCOME BENEFIT FOR TOTAL DISABILITY   $2450
(IF TOTAL DISABILITY STARTS AT OR AFTER AGE 75, ONE-HALF OF BENEFIT
PAYABLE BEFORE AGE 75.)**

**ELIMINATION PERIOD: 90 DAYS OF DISABILITY AS DESCRIBED IN THIS
POLICY**

**MAXIMUM BENEFIT TERM: BENEFITS ARE PAYABL UP TO AGE 65, OR IF THE
DISABILITY BEGINS AT AGE 60, IT WILL PAY UP TO AGE 65 OR 2 YEARS,
WHICHEVER IS LONGER**

**WAIVER OF PREMIUM BENEFIT**

**SUPPLEMENTARY BENEFITS:**

**COST OF LIVING BENEFIT (COLB)**

**CURRENT MONTHLY PREMIUM:**                                       $85.84

*Information on this schedule page indicates current coverage and premiums.

PAGE 2            POLICY DATA          NEW YORK LIFE INSURANCE COMPANY
8732-1

In this policy, the words "we", "our" or "us" refer to New York Life Insurance Company and the words "you" or "your" refer to the Owner of this policy.

When writing to us, please include the insured's full name, current address, and the policy number.

# CONTENTS

**POLICY DATA** — 10 day free examination period; Pre-existing condition limitations; Renewability; Policy identification and specifications / 1-2

**DEFINITIONS** — Age; Benefit Term; Elimination Period; Income Starting Date; Injury and Sickness; Physician; Pre-Existing Condition; Regular Job; Total Disability / 4-5

**BENEFITS** — Benefits for Disability; Monthly Income Benefit for Total Disability; New Period of Disability; Waiver of Premium Benefit; Rehabilitation; When Benefits Not Payable / 5

**CLAIMS** — How and when to file a claim / 6

**PREMIUMS** — Payment of premiums; What happens if a premium is not paid; Suspension during military duty; Reinstatement of a lapsed policy / 6-7

**RIGHT TO RENEW POLICY** — How the policy is renewed / 7

**GENERAL PROVISIONS** — Misstatement of Age; Policy Ownership; Change of Ownership; Entire Contract; Application; Incontestability; Policy Dates; Dividends; Assignment; Protection Against Creditors; Payments to Company; Conformity with Statutes; Voting Rights / 8-9

**APPLICATION** — Attached to the policy.

**RIDERS OR ENDORSEMENTS (IF ANY)** — Attached to the policy.

## DEFINITIONS

**Age**   Reference to an age in this policy, such as "age 65" or "age 75", means the policy anniversary nearest to the birthday of the insured on which he or she is that age. For example, "Guaranteed Renewable to Age 65" means that the policy can be renewed until the policy anniversary which is closest to the insured's 65th birthday.

**Benefit Term**   A period of time for which monthly income benefits are payable for disability due to the same cause. It starts on the day after the elimination period ends. It goes on until (1) the insured is no longer disabled, or (2) the end of the maximum benefit term shown on the Data page, or (3) the death of the insured, whichever occurs first.

**Elimination Period**   The number of days the insured must be disabled before monthly income benefits can become payable. The elimination period may be satisfied in either of 2 ways:

(a)   by a single, continuous period of disability due to the same cause, which begins on the day the disability starts; or

(b)   by combining separate periods of continuous disability, due to the same cause, which occur in a period of time lasting not longer than twice the number of days in the elimination period. Each such period must be at least 30 days long, except for the last period if fewer than 30 days are needed to reach the end of the elimination period.

The number of days of the elimination period is shown on the Data page.

**Income Starting Date**   The first day of disability for which monthly income benefits are payable. It is the day after the end of the elimination period.

**Injury and Sickness**   Injury means an accidental bodily injury of the insured. Sickness means an illness or disease of the insured.

Except as stated in the Pre-Existing Condition Limitations provision, the injury must occur, or the sickness must first manifest itself, while this policy is in force. The injury or sickness must not be self-inflicted on purpose. The injury or sickness must be one which requires and receives regular care by a physician.

A transplant of a part of the insured's body to the body of someone else will be considered a sickness only if the transplant takes place while this policy is in force and after the policy has been in force for 6 months.

**Physician**   A licensed practitioner of the healing arts acting within the scope of his or her license in treating an injury or a sickness. The following are not physicians for the purpose of this policy: the Owner of this policy; the insured; a member of the Owner's or the insured's family.

**Pre-Existing Condition**   A bodily injury or sickness of the insured which a physician has treated or for which a physician has advised treatment within 2 years before the date this policy takes effect. It is also one which would cause an ordinarily prudent person to seek diagnosis or care within the same 2 year period. A condition which was fully disclosed in the application and not excluded from coverage is not considered to be a pre-existing condition. However, a normal pregnancy which began before the effective date of this policy is considered to be a pre-existing condition whether or not it was fully disclosed in the application.

**Regular Job**   The occupation in which the insured is engaged when a disability starts. If the insured is regularly engaged in more than one occupation at the time disability starts, regular job means all of those occupations.

**Total Disability**   From the start of a total disability until 5 years after the income starting date, total disability means that the insured can not do any of the substantial and material duties of his or her regular job and is not working at any other gainful job.

After 5 years from the income starting date, if a new period of disability does not apply, total disability will then mean that the insured can not do any of the substantial and material duties of a job for which he or she is suited. Schooling, training and experience are factors that we will use as the basis for deciding if the insured is suited for a job.

The cause of the total disability must be an injury or a sickness.

**DEFINITIONS**
(continued)

Total disability also means the insured's total loss of one or more of the following, without regard to the insured's ability to work:

    (a) the sight of both eyes;

    (b) the use of both hands, both feet, or one hand and one foot;

    (c) speech;

    (d) hearing in both ears.

The loss must be one which can not be recovered. It must occur while this policy is in force. The cause of the loss must be an injury or a sickness. In the case of losses (a) through (d) we will pay the monthly income benefit for total disability from the date of the loss.

---

**BENEFITS**

**Benefits for Disability**  This policy provides monthly income benefits for disability. When the term "disability" is used alone, it means total disability, as defined in this policy.

**Monthly Income Benefit for Total Disability**  This benefit becomes payable as follows: premiums must be paid as called for in the Premiums Section and the elimination period must be satisfied.

Then, beginning with the income starting date and while total disability goes on continuously, we will pay the monthly income benefit for total disability, for each full month of total disability. The benefit is payable at monthly intervals during the benefit term. If the insured is totally disabled for part of a month, we will pay 1/30th of the monthly benefit for each day of total disability. The amount of the monthly income benefit will not change if total disability results from more than one cause.

The monthly income benefit for total disability is shown on the Data page.

**New Period of Disability**  If the insured recovers from a disability for which monthly income benefits were paid, any later disability will be treated as a new period of disability when at least one of the following conditions is met while this policy is in force. First, the cause of the later disability must not be related in any way to the cause of any prior disability. Second, for at least 6 months in a row after recovery, the insured must have both worked full time at a gainful job and must not have had a disability. A new maximum benefit term and a new elimination period will apply to each new disability.

If neither of the above conditions is met, we will consider the later disability to be an extension of the prior disability, with no new elimination period and no new maximum benefit term.

**Waiver of Premium Benefit**  We will start to waive the premiums for this policy when a monthly income benefit for disability becomes payable, and all premiums have been paid. We will waive those premiums that fall due on or after that income starting date and during that disability until age 65 or until the end of the maximum benefit term, whichever is later. We will also waive premiums which become due during the 3 months after the disability ends, but only if such premiums fall due before age 65.

Also, we will refund any premium which was paid and which fell due on a day of disability used to satisfy the elimination period.

Premiums will be waived based on the interval of payment which is in effect when the disability starts. A premium which is waived will not be deducted from any monthly income benefits or other proceeds.

**Rehabilitation**  A totally disabled insured's participation in a work rehabilitation program approved by us will not be considered, by itself, as a recovery from total disability. Also, if a totally disabled insured submits a written request, we will consider participating in the expense of such a program. The nature and extent of participation by the insured and by us must be satisfactory to both, and it must be set forth in a written Rehabilitation Program Agreement before any such program can start.

**When Benefits Not Payable**  We will not pay any benefits for an injury which occurs or a sickness which first manifests itself while this policy is not in force, except as stated in the Pre-Existing Condition Limitations provision.

We will also not pay any benefits if the injury or sickness is caused in any way by declared or undeclared war, or any act of war, including an armed conflict involving the armed forces of one or more countries.

## CLAIMS

**Notice of Claim** A written notice of claim must be given to us at our Home Office, 51 Madison Avenue, New York, N.Y. 10010, or to one of our authorized agents. The notice must be given within 30 days after a disability starts or a covered loss occurs, or as soon as this can reasonably be done. It must include the name of the insured and the policy number.

**Claim Forms** When the notice is received, claim forms will be sent to the claimant to be filled out and returned to us. If the claimant does not receive these forms within 15 days after giving us notice of claim, he or she may instead give a complete written account of the facts that we need.

**Proof of Disability or Loss** Written proof must be given within 90 days after a period of disability ends or within 90 days after a loss occurs. Failure to give the proof within that time is not a basis for us to reduce or deny the claim, if the following 3 conditions are met. First, it must not be reasonably possible to give the proof within that time. Second, the proof must be given as soon as reasonably possible. Third, the proof must be given within one year from the time that proof is otherwise required, except in the absence of legal capacity.

**Time of Payment of Claim** A claim will be payable when all information that is necessary for us to make a decision is received.

**Payment of Claim** While the insured is living, any benefits will be payable to you. If any of these benefits have not been paid at the insured's death, they will be paid to you or to your estate.

A claim may become payable to your estate or to someone who can not give a valid release. In this case, up to $1,000 of that claim may be paid to the person whom we decide has the right to receive it. This person must be related by blood or marriage to you or to the person who could not give the release. Any payment made in good faith to that relative will release us to that extent.

**Examination of the Insured** While a claim under this policy goes on, we have the right to have the insured examined, at our own expense, by physicians approved by us, as often as reasonably required.

**Legal Actions** With respect to any claim under this policy, no legal action may be taken against us during the 60 days after receipt of the written proof, or after 3 years from the date proof is required to be given.

## PREMIUMS

**Payment of Premiums** Each premium is payable on or before its due date as shown in the Premium Schedule. Premiums are payable at our Home Office or at a service office.

**Grace Period** We allow 31 days from the due date for payment of a premium. All insurance continues during this grace period.

**Nonpayment of Premium** If a premium is not paid by the end of the grace period, this policy will lapse. All insurance will end at the time of lapse; but this will not affect the payment of any benefit for disability, if disability started before the end of the grace period.

**Suspension During Military Duty** If the insured enters military duty (except when that duty lasts for 31 days or less), this policy will be suspended for the period of that military duty. We will refund any premium paid for that period. The refund will be made when a notice stating that the insured has entered military duty is received.

When military duty ends before age 65, this policy may be reinstated without proof of insurability. To do this, we must receive a signed request and the required premium within 60 days from the end of the duty. You will have the same rights under this policy as those before coverage was suspended.

## PREMIUMS
(continued)

**Reinstatement** You may ask that this policy be reinstated if it lapses. If your signed application is not required by us the policy will be reinstated when we accept the correct premium at our Home Office or at a service office.

For a case where your signed application is required by us, a receipt will be issued when the premium is paid. If that application is approved, the policy will be reinstated on the date of approval. However, if we do not tell you in writing, on or before the 45th day after the date of the receipt, that the application is not approved, the policy will be reinstated on that 45th day.

In no case will a premium be applied to a period for which a premium has already been paid and, unless you agree, to a period more than 60 days before reinstatement.

When a policy is reinstated, only losses from an injury which occurs or a sickness which first manifests itself after the date of reinstatement will be covered. You will have the same rights under this policy as those before lapse, unless we otherwise endorse the policy.

**Premium Adjustment at Death** We will refund the applicable part of a premium, which is paid for the period after the policy month in which the insured dies. This refund will be payable to you or to your estate.

## RIGHT TO RENEW POLICY

**Non-Cancellable and Guaranteed Renewable to Age 65** While this policy is in force and if the insured has not reached age 65, we can not take any of the actions listed below, without your consent.

(a) Refuse to let you renew the policy.

(b) Limit the policy by rider.

(c) Change any provisions of the policy.

(d) Change the table of premium rates.

**Renewability of Policy from Age 65 to Age 75** Starting at age 65, if this policy is then in force, it may be renewed until age 75, as long as the insured works full time at a job and gets paid for that job, and the premiums for this policy are paid when due. We have the right to ask for proof that the insured is working full time at a gainful job. The proof will be needed as often as once each year. If the insured is working full time at a gainful job and a premium for an interval that starts at or after age 75 is accepted, insurance goes on to the end of that interval, unless the age was not correct as stated.

When the insured's job ends after age 65, except as a result of a total disability which starts at or after age 65, this policy will not stay in force beyond the end of the policy month in which that job ends. We will refund the part of a premium which is paid for the period after that policy month. The payment of a benefit for a total disability that started before the end of that policy month will not be affected.

We have the right to change the table of premium rates which applies to this policy at or after age 65. All policies that are issued on this form for the same type of benefits will be subject to the new rates. The premium rate that applies to this policy, in the changed table, will be based on the age of the insured at the time of the change.

If the rates are changed, the new rates will take effect for this policy on the anniversary that follows the date of the change.

**GENERAL PROVISIONS**

**Misstatement of Age**  If the age of the insured is not correct as stated, any amount payable under this policy will be what the premiums paid would have purchased at the correct age. However, if the correct age on the policy date is not one of the ages at which this policy would be issued, the only amount payable will be the premiums paid for this policy.

If a date in the Premium Schedule is based on an age that is not correct, we may change the date to reflect the correct age.

If the age of the insured is not correct as stated and a premium is accepted for a period of coverage that starts after age 75, only a refund of that premium will be payable.

**Policy Ownership**  You are the insured unless this policy states otherwise. If you are not the insured and you die before the insured, the new Owner will be the insured unless this policy states otherwise. The Owner has all rights of ownership in this policy while the insured is living.

**Change of Ownership**  You can change the ownership of this policy in a signed notice which includes the facts that are needed. When this change takes effect, all rights of ownership in this policy will pass to the new Owner. When the facts about a change of owner are received by our Home Office, this change will take effect as of the date the notice was signed, subject to any payment made or action taken by us before recording this change. We may require that this change be endorsed in the policy.

**Entire Contract**  The entire contract consists of this policy, any attached riders or endorsements, and the attached copy of the application. Only the Chairman, the President, the Secretary, or one of our Vice Presidents can change the contract, and then only in writing. No change will be made in the contract unless you agree to it in writing. No agent is authorized to change this contract.

**Application**  In issuing this policy, we have relied on the statements which were made in the application. We assume that they are true and complete to the best of the knowledge and belief of those who made them. No statement made in connection with the application will be used by us to void the policy or to deny a claim unless that statement is a material misrepresentation and is part of the application.

**Incontestability**  We have no right to contest the insurance provided by this policy after it has been in force during the lifetime of the insured for 2 years from the policy date, except for a disability which starts before the end of those 2 years. No claim for a disability which starts after those 2 years will be denied on the ground that a disease or physical condition existed before the policy date, unless such disease or condition was excluded from coverage on the date the disability started.

**Policy Dates**  Policy years, policy months, and policy anniversaries are measured from the policy date. This definition does not affect other years, months, and days.

**Dividends**  While this policy is in force, it is eligible to share in our divisible surplus. Each year we determine the policy's share, if any. This share, if any, is payable as a dividend on the policy anniversary, if all premiums due before then have been paid. A dividend, when payable, will be paid to you in cash.

**Assignment**  You can assign this policy or any interest in it. In that case, your interest, and anyone else's, is subject to that of the assignee. An assignee may not change the Owner. You still have the rights of ownership that have not been assigned.

We must have a copy of any assignment. We will not be responsible for the validity of an assignment. The assignment will be subject to any payment made or other action taken by us before it was recorded.

## GENERAL PROVISIONS
(continued)

**Protection Against Creditors**   Except as stated in the Assignment provision, payments made under this policy are, to the extent the law permits, exempt from the claims, attachments, or levies of any creditors.

**Payments to Company**   Any payment made to us by check or money order must be payable to New York Life. When asked, a receipt, signed by our President or Secretary, will be given for any premium paid.

**Conformity with Statutes**   This policy is subject to all laws which apply.

**Voting Rights**   Each year there is an election of persons to our Board of Directors. You have the right to vote in person or by mail if this policy is in force, and has been in force for at least one year after the policy date. To find out more about this, you should write to the Secretary at our Home Office, 51 Madison Avenue, New York, New York 10010.

# ENDORSEMENTS

# NEW YORK LIFE INSURANCE COMPANY

New York, New York 10010

## CHECK-O-MATIC PREMIUM ARRANGEMENT

This policy is issued under the New York Life Insurance Company's Check-O-Matic arrangement under which the Company is authorized to draw checks monthly to be charged against a designated bank account for the purpose of collecting premiums payable under this policy. The premium shown in this policy is based on the Company's Check-O-Matic premium rate.

The Check-O-Matic arrangement may be terminated with respect to this policy by the policyowner or by the Company upon written notice. If the arrangement is terminated,

(1) premiums falling due under this policy after such termination shall be payable directly to the Company monthly, at the Check-O-Matic premium rate, until the first policy anniversary which follows by at least two months the date of such termination, and

(2) premiums falling due under this policy on and after said anniversary shall be payable directly to the Company at the quarterly rate if the quarterly premium would be at least $12.50, at the semi-annual rate if the semi-annual premium would be at least $15 and the quarterly rate is not available, and otherwise at the annual premium rate.

By     _Melbourne Munder_

Secretary

72-802

# RIDER

## COST OF LIVING BENEFIT (COLB)

**Cost of Living Benefit**  While this rider is in effect, the monthly income benefit for total disability may be adjusted to reflect changes, if any, in the cost of living based on the CPI-U. (The CPI-U is the Consumer Price Index for All Urban Consumers, All Items, as published and seasonally adjusted by the Bureau of Labor Statistics.)

For the purpose of determining any cost of living adjustment, we will measure years from the first day of the elimination period. In the first year, no adjustment will be made. In the second and each succeeding year, while the benefit term continues, adjustments will be made to the monthly income benefit for total disability in each of those years.

**Factor for Cost of Living Adjustments**  The adjustment to the monthly income benefit for total disability will be made by multiplying that benefit by the factor which applies for the year. The factor will be determined by dividing the CPI-U for the third month prior to the first month of that year by the CPI-U for the third month prior to the start of the elimination period. The factor can not be less than 1.00.

While the same benefit term continues, the factor for a year can not exceed the limit below:

| Year | Factor Limit | Year | Factor Limit |
|------|--------------|------|--------------|
| 1st  | 1.000        | 6th  | 1.436        |
| 2nd  | 1.075        | 7th  | 1.543        |
| 3rd  | 1.156        | 8th  | 1.659        |
| 4th  | 1.242        | 9th  | 1.783        |
| 5th  | 1.335        | 10th | 1.917        |

For each year beyond the 10th, the factor limit is determined by multiplying the factor limit for the prior year by 1.075.

However, if monthly income benefits are payable beyond age 65 for total disability, the factor in use on age 65 will be used for any future adjustments.

If the CPI-U, in our opinion, is no longer a valid index for the purpose of this provision, or is no longer published by the Bureau of Labor Statistics, we will use a new index. The new index will be one approved by the insurance supervisory official of the state in which this policy was delivered.

**Option to Purchase Cost of Living Adjustment**  When a benefit term ends before age 60, and while this rider is in effect, you may apply to increase the monthly income benefit for total disability by the amount of the cost of living adjustment applicable at the end of that benefit term, if it was $50 or more. The amount of the increase will be rounded to the next higher $10.

Your application, signed by the insured, and the first premium, must be given to us within the 60 days after the end of the benefit term, and while this rider is in effect. Evidence of insurability is not required. The increase will take effect as of the date of the application, and will apply only when an elimination period starts after the effective date.

Premiums for the increase will be based on the insured's age and then current rates as of the effective date. The insured's class of risk will be the same as under this rider. If we are waiving premiums for the policy, we will also waive the premiums for the increase in the monthly income benefit for total disability purchased under this option.

If you do not elect to exercise this purchase option at the end of a benefit term, the monthly income benefit for total disability will be reduced by the amount of the cost of living adjustment applicable at the end of that benefit term.

**Contract**  This rider, when paid for, is made part of the policy, based on the application for the rider.

**Incontestability of Rider**  We have no right to contest the insurance provided by this rider

(over)

**COST OF LIVING BENEFIT (COLB)**
(continued)

after it has been in force during the lifetime of the insured for 2 years from its effective date, except for a disability which starts before the end of those 2 years.

**Dates and Amounts**   When this rider is issued at the same time as the policy, we show the rider premium on the Data page. The rider will take effect on the date the policy takes effect.

When this rider is added to a policy which is already in force, a Benefit Addition rider shows the effective date and the rider premium.

**When Rider Ends**   You can cancel this rider as of the due date of a premium. To do this, your signed notice must be sent to us within 31 days of that date. If this rider is still in effect at age 65, it will end on that date. This rider will not be in effect if the policy lapses.

NEW YORK LIFE INSURANCE COMPANY

By _____
                                      President

_____
                                      Secretary

*Specimen Copy*

7-306

# RIDER

## COST OF LIVING BENEFIT (COLB)

**Cost of Living Benefit**  While this rider is in effect, the monthly income benefit for total disability may be adjusted to reflect changes, if any, in the cost of living based on the CPI-U. (The CPI-U is the Consumer Price Index for All Urban Consumers, All Items, as published and seasonally adjusted by the Bureau of Labor Statistics.)

For the purpose of determining any cost of living adjustment, we will measure years from the first day of the elimination period. In the first year, no adjustment will be made. In the second and each succeeding year, while the benefit term continues, adjustments will be made to the monthly income benefit for total disability in each of those years.

**Factor for Cost of Living Adjustments**  The adjustment to the monthly income benefit for total disability will be made by multiplying that benefit by the factor which applies for the year. The factor will be determined by dividing the CPI-U for the third month prior to the first month of that year by the CPI-U for the third month prior to the start of the elimination period. The factor can not be less than 1.00.

While the same benefit term continues, the factor for a year can not exceed the limit below:

| Year | Factor Limit | Year | Factor Limit |
|------|------|------|------|
| 1st | 1.000 | 6th | 1.436 |
| 2nd. | 1.075 | 7th | 1.543 |
| 3rd | 1.156 | 8th | 1.659 |
| 4th | 1.242 | 9th | 1.783 |
| 5th | 1.335 | 10th | 1.917 |

For each year beyond the 10th, the factor limit is determined by multiplying the factor limit for the prior year by 1.075.

However, if monthly income benefits are payable beyond age 65 for total disability, the factor in use on age 65 will be used for any future adjustments.

If the CPI-U, in our opinion, is no longer a valid index for the purpose of this provision, or is no longer published by the Bureau of Labor Statistics, we will use a new index. The new index will be one approved by the insurance supervisory official of the state in which this policy was delivered.

**Permanent Increase in Monthly Income Benefit for Total Disability**  When a benefit term ends while this rider is in effect, the monthly income benefit for total disability will be increased by the amount of the cost of living adjustment applicable at the end of that benefit term. The amount of the permanent increase will be rounded to the nearer $10 and will remain in effect as long as the policy is in force. There will be no extra premium charge for the permanent increase.

**Contract**  This rider, when paid for, is made part of the policy, based on the application for the rider.

**Incontestability**  We have no right to contest the insurance provided by this rider after it has been in force during the lifetime of the insured for 2 years from its effective date, except for a disability which starts before the end of those 2 years.

**Dates and Amounts**  When this rider is issued at the same time as the policy, we show the rider premium on the Data page. The rider will take effect on the date the policy takes effect.

When this rider is added to a policy which is already in force, a Benefit Addition rider shows the effective date and the rider premium.

**When Rider Ends**  You can cancel this rider as of the due date of a premium. To do this, your signed notice must be sent to us within 31 days of that date. If this rider is still in effect at age 65, it will end on that date. This rider will not be in effect if the policy lapses.

NEW YORK LIFE INSURANCE COMPANY

By _Donald K. Ross_
President

_Edmund R. Harnedy_
Secretary

# RIDER

**MODIFICA-
TION OF
POLICY
PROVISIONS**

1. The definition of Pre-Existing Condition is deleted and replaced by the following:

   **Pre-Existing Condition**   A bodily injury or sickness of the insured which a physician has treated or for which a physician has advised treatment within 2 years before the date this policy takes effect. A condition which was fully disclosed in the application and not excluded from coverage is not considered to be a pre-existing condition. However, a normal pregnancy which began before the effective date of this policy is considered to be a pre-existing condition

   whether or not it was fully disclosed in the application.

2. The second paragraph of the Assignment provision is deleted and replaced by the following:

   We must have a copy of any assignment. We will not be responsible for the validity of an assignment. The assignment will be subject to any payment made or other action taken by us before the assignment was filed at our Home Office.

NEW YORK LIFE INSURANCE COMPANY

By _____
President

_____
Secretary

87-346

NON-MED.

☑ NEW YORK LIFE INSURANCE COMPANY
51 Madison Ave., New York, N.Y. 10010
☐ NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION (A Delaware Corp.)
Executive Office — 372 Park Ave. South, New York, N.Y. 10010

Policy Number
(if known?)    **S-15**
**H 3 072721**

Answers to insurer forming Part II of Application for Insurance. Complete this form in private.

**Please print or type full information concerning persons proposed for insurance coverage. Do not include any person who is to be medically examined.**

1. a. PROPOSED INSURED?  *Lyle H. Hughes* ........ Height? 5 ft. 10 in.; Weight? 165 lbs.
   b. SPOUSE, if proposed for coverage? ........ Height? ...ft. ...in.; Weight? ... lbs.
   c. CHILDREN, if proposed for coverage (give full names)? ........

2. Personal physicians (give consultation details in Ques. 11)  Name?          Address?          Date last consulted?
   a. For Proposed Insured  *Dr. Karl Wolk*    *520 E. Center Modesto Ca. 95356*
   b. For Spouse named in Ques. 1

**Give the following information, so far as known, for all persons listed in Ques. 1. If "Yes" to any question, give full details in Ques. 11.**

3. During the past 10 years has any such person consulted a physician or practitioner for, or been treated for, or had

|  | Yes | No |
|---|---|---|
| a. elevated blood pressure, rheumatic fever, heart murmur, chest pain, angina, heart trouble, stroke or irregular pulse? | ☐ | ☒ |
| b. diabetes, anemia, thyroid or other gland or blood disorder? | ☐ | ☒ |
| c. asthma, bronchitis, emphysema, tuberculosis, coughing of blood, or nose, throat, lung or other respiratory disorder? | ☐ | ☒ |
| d. ulcer, gall bladder disease, colitis, pancreatitis, internal bleeding, hernia or other digestive or intestinal trouble? | ☐ | ☒ |
| e. hepatitis, cirrhosis or other liver trouble? | ☐ | ☒ |
| f. kidney or urinary tract stone, infection, or other disorder; sugar, albumin, blood or pus in urine? | ☐ | ☒ |
| g. psychiatric, emotional or mental health condition requiring medication or hospitalization? | ☐ | ☒ |
| h. epilepsy, convulsions, dizziness, loss of consciousness, frequent headaches or other nervous system disorder? | ☐ | ☒ |
| i. cancer, tumor, cyst; allergy; eye, ear or skin disorder? | ☐ | ☒ |
| j. hemorrhoids, varicose veins, phlebitis, circulatory disorder? | ☐ | ☒ |
| k. arthritis, rheumatism, sciatica, gout or other disorder of muscles, bones, joints, back or spine? | ☒ | ☐ |
| l. (males only) disorder of prostate or reproductive organs? | ☐ | ☒ |
| m. (females only) disorder of pelvic organs, breasts, menses or pregnancy, or is she now pregnant? | ☐ | ☐ |

4. During the past 10 years has any such person been counseled, treated, or hospitalized for the use of alcohol or drugs?  Yes ☐ No ☒

5. Has any such person, for physical or mental health reasons, ever
   a. received disability benefits, compensation or pension? ... ☐ ☒
   b. been rejected for, or discharged from, military service? ☐ ☒

6. Is any such person disabled, deformed, paralyzed, blind, deaf, physically or mentally handicapped, or an amputee? ☐ ☒

7. Other than as stated, has any such person within past 5 years
   a. been treated or had surgery in a hospital or other facility? ☐ ☒
   b. had an electrocardiogram, x-ray or other diagnostic test? ☐ ☒
   c. been advised to have any treatment, surgery or diagnostic test which was not completed? ☐ ☒

8. Other than as stated, has any such person within past 2 years had any illness or consulted any physician or practitioner for any reason, including routine or checkup examination? ☒ ☐

9. Any history of hypertension or heart trouble before age 60 among natural parents, brothers or sisters of Prop. Insured? ☐ ☒
   If "Yes", give relationship, age at onset and subsequent history.

10. Answer if any child named above has not reached first birthday:
    a. is there any abnormality? ☐ ☐
    b. Was birth weight under 5 lbs.? (if "Yes", wt. now....lbs.) ☐ ☐

**11. GIVE FULL DETAILS FOR LAST CONSULTATION WITH PERSONAL PHYSICIAN WITHIN PAST 2 YEARS, AND FOR EACH "YES" ANSWER TO QUESTIONS 3-10.**

| a. Ques. No. | b. Name of Person to whom "Yes" applies? | c. Reason — nature and severity of condition? (Include frequency, treatment, medication, surgery and results) | d. Onset? Mo. Yr. | e. Recovery? Mo. Yr. | f. Names and Addresses of Physicians, Hospitals or Medical Facilities? |
|---|---|---|---|---|---|
| 2a | Lyle | Flu — Medication (Penicillin) | 11/86 | 11/86 | Dr. Karl Wolk 520 E. Center Modesto Ca. 95356 |
| 8 | Lyle | Flu — Medication (Penicillin) | 11/86 | 11/86 | Modesto Ca. 95356 |
| | | | | | |

THE UNDERSIGNED DECLARE THAT, to the best of their knowledge and belief, all answers given in this Part II are correctly recorded, complete and true.

Dated at *Modesto Ca.* on  11 / 24  19 87    ⓢ *[signature]*
I certify I have truly and accurately recorded all answers given to me.                Signature of Proposed Insured

Witnessed by *David Pudlaw*

902-510    Agent

Signature of Spouse, if proposed for coverage;
Signature of Parent or Guardian, if Proposed Insured is under 14 years 6 months

OZ 684410

**INDIVIDUAL HEALTH INSURANCE APPLICATION PART I  S-15**

NEW YORK LIFE INSURANCE COMPANY 51 Madison Ave., New York, N.Y. 10010

H 3072721

If not an application for a New Policy check one:
- ☐ Add Rider to Policy No. _____
- ☐ Change in Policy No. _____
- ☐ Application to Reinstate Policy No. _____
- ☐ Amend Application No. _____
- ☐ Exercising Option in Policy No. _____
- ☐ Exercising Conversion of Policy No. _____

1. PROPOSED INSURED? _Lyle H. Hughes_    Soc. Sec. or Soc. Ins. No.? _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_  Sex? M ☒ F ☐

   Date of Birth? Mo. _09_ Day _14_ Year _01_ Place of Birth? State (Prov.) _Calif._  Country _U.S.A._

   Single ☐, Married ☒, Divorced ☐, Separated ☐, Widowed ☐    Number of Dependent Children? _2_

   ADDRESS? (Complete address including any apartment number and Zip or Postal Code)

   Residence _3600 Ayala Dr._    _Modesto    C._  Zip _95356_    Time at Address _3_ Yrs. ___ Mos.

   Previous Res. (within 2 yrs.) _____

   Business _New York Life - 1020 15th St. Suite Q._    Mail Address Res. ☒ Bus. ☐

   _Modesto    a._  Zip _95354_    Time with Employer _3_ Yrs. _9_ Mos.

   OCCUPATION(S)? Job Title(s) _Insurance Agt._

   Specific Duties _Sell Life, Health, & Disability Ins._

   Previous Business Address (within 2 yrs.) _____

   Previous Job Title and Duties (within 2 yrs.) _____

   Telephone Number(s) and Best Time(s) to Call: Res.(_209_) _529-951_ A.M. P.M. Bus.(_209_) _577-612_ 9 A.M. 5 P.M.
   Has the Proposed Insured smoked cigarettes within the past year? Yes ☐ No ☒

2. **ANSWER IF APPLYING FOR FAMILY INSURANCE COVERAGE ON SPOUSE OR CHILDREN. Also, see Questions 3 & 4:**

   | (a) Spouse, Unmarried Dependent Children Residing with Proposed Insured? | Sex? | Relation to Prop. Ins'd? | Born: Mo, Day, Yr? |
   |---|---|---|---|
   | | | | |
   | | | | |
   | | | | |
   | | | | |

   (b) SPOUSE'S OCCUPATION(S)? Job Title(s) _____
   Specific Duties _____

   (c) Has Spouse smoked cigarettes within the past year? Yes ☐ No ☐

3. Within the last 2 years, has any person named in Question 1 or 2:

   | | Yes | No |
   |---|---|---|
   | (a) engaged in motorized racing, scuba or sky diving, hang-gliding, mountain climbing, or other hazardous activity, or does any such person intend to do so? If "Yes", submit Form 7663 . . . . . . . . . . . . . . . | ☐ | ☒ |
   | (b) been convicted of 3 or more motor vehicle moving violations or been charged with driving under the influence of alcohol or drugs? If "Yes", complete Form 17480 . . . . . . . . . . . . . . . . . . . . . . . | ☐ | ☒ |
   | (c) been declined for issue or reinstatement, rated or charged an extra premium for any type of Life or Health Insurance? If "Yes", give person's name, company, and reason in Question 15 . . . . . . . . . . . . . . | ☐ | ☒ |

4. If cash is to be paid with this application and an Application Part II is required, has any person named in Question 1 or 2, within the last 2 years:

   | | Yes | No |
   |---|---|---|
   | (a) been admitted, or been advised to be admitted, to a hospital, sanitarium, or clinic other than for childbirth? | ☐ | ☒ |
   | (b) had heart trouble, stroke; cancer (other than skin cancer) or elevated blood pressure requiring medication, or had an electrocardiogram made for any cause other than a routine physical examination? . | ☐ | ☒ |

   If "Yes" to either (a) or (b) above, cash may not be paid.

5. Is it agreed that cash will be received subject to the terms of the attached receipt, that no coverage will be provided under the receipt unless all conditions to coverage are met, and that any such coverage will be temporary and limited in amount? If "No", cash may not be paid . . . . . . . . . . . . . . . . . . . . . . . . ☐ ☒

   CASH PAID? Monthly Income $ _____ ; Medical Expense $ _____

6. Answer if APPLICANT ☐ or OWNER ☐ is not Proposed Insured. (If a corporation, give place and year incorporated in Question 15.)
   (a) Name & Relation to Proposed Insured? _____
   (b) Mail Address? _____
   (c) Social Security (Soc. Ins.) or Tax No.? _____

OZ 684410                                    S-1-    H 3072721

## APPLICATION PART I TO NEW YORK LIFE INSURANCE COMPANY (Continued)

**7. (A) MONTHLY INCOME?**

   (i) Disability Income ☒ Income Insurance ☐, Overhead Expense 12 ☐  24 ☐, Disability Buy Out ☐, Key Employee ☐
   Non-Can. ☒; Guar. Ren. ☐, Level ☐, Step-Rate ☒, List Billing ☐, Other _____
   Zero Day QP ☐; Delete Not Working ☐; COLB __7.5__ %; IPO _____ Units

   (ii) Amount? Policy $ __1800__, SIS Rider $ __750__, Elim. Per. __91__ Days _____ Mos., Ben. Term __to age 65__

**(B) ANNUAL INCOME AND NET WORTH OF THE PROPOSED INSURED?**

   (i) Earned Income (if self employed exclude business expenses.) . . . . . . . . . . . $ __45,000__

   (ii) Unearned Income (incl. interest, rental income, etc.)  None ☒ or . . . . . . . . $ _____

   (iii) Net Worth (assets minus liabilities).  Less than $750,000 ☒ Other . . . . . . . $ _____

**(C) OTHER INCOME PROTECTION COVERAGE ON THE PROPOSED INSURED?**

   (i) Covered by Social Security (Social Insurance)?  Yes ☒  No ☐

   (ii) Will the employer continue salary in the event of an inability to work due to disability?  Yes ☐  No ☒
   If "Yes", salary of $ _____ will be continued for _____ months.

   (iii) Is any other income coverage (incl. group, individual or professional association) in force or pending? Yes ☐ No ☒ If "Yes":

| Company | Policy Number | Effective Date | Mo. Income | Elim. Period | Benefit Term |
|---------|---------------|----------------|------------|--------------|--------------|
| _____ | _____ | _____ | $ _____ | _____ | _____ |
| _____ | _____ | _____ | $ _____ | _____ | _____ |
| _____ | _____ | _____ | $ _____ | _____ | _____ |

   (iv) Does any of the above coverage contain a Benefit that integrates with Social Security (Soc. Ins.)? Yes ☐ No ☒ If "Yes",
   give name of company and Benefit Amount: _____

**(D)** If employer is to pay all or part of the premium, indicate the percentage. _____%

**8. (A) MEDICAL EXPENSE?**

   (i) Major Medical ☐    MM 80☐    MM 100☐    Deductible $ _____;  PEB Rider: Units _____

   (ii) Hosp. & Surgical Expense: DHB $ _____, In Hosp. Med.: DHB X10☐    X20☐    X100☐,.
   Deductible: $100☐    1X DHB☐    2X DHB☐,    Surgical Factor $ _____
   IB Rider: Percent Increase _____%,  Deductible = Rider DHB X5☐    X10☐    X20☐;  PEB Rider: Units _____
   MEB Rider: Med. Factor = Surg. Factor Increased By _____%,  Deductible = Med. Factor X10☐  X20☐  X40☐

   (iii) Short Term Medical Expense: 90 days ☐    180 days ☐    Deductible $ _____

   (iv) Medicare Supp. ☐  Are all persons applying, covered under both Parts A & B of Medicare?  Yes ☐  No ☐

   (v) Other _____

**(B) OTHER COVERAGE?**

   Is any other hospital expense, major medical, hospital indemnity, Blue Cross, Blue Shield or Medicare Supplement coverage
   (including individual or group) in force or pending on any person named in Question 1 or 2?  Yes ☐  No ☐ If "Yes", give:

| Company | Policy Number | Effective Date | Type Coverage | Max. Ben. | DHB | Ded. |
|---------|---------------|----------------|---------------|-----------|-----|------|
| _____ | _____ | _____ | _____ | $ _____ | $ _____ | $ _____ |
| _____ | _____ | _____ | _____ | $ _____ | $ _____ | $ _____ |
| _____ | _____ | _____ | _____ | $ _____ | $ _____ | $ _____ |

**REPLACEMENT?** Is the policy applied for intended to replace, in whole or in part, any existing insurance? Yes ☐ No ☒ If "Yes":

(a) Company? _____  (b) Policy Number? _____

(c) Plan? _____  (d) Termination date? _____  (e) Amount replaced? _____

**PREMIUM MODE** (if other than Short Term Single)? Annual ☐  Semiannual ☐  Quarterly ☐  C-O-M ☒  Nyl-A-Plan ☐

**POLICY DATE?** _____, 19 _____ if no date is specified, the policy date is: the later of Parts I and II if cash is paid with
this application; or the date of issue, if cash is not paid. If converting coverage, the policy date will be the date following the day
the original coverage ends.

500 Printed in U.S.A.                                                                                              2

OZ 684410   **APPLICATION PART I TO NEW YORK LIFE INSURANCE COMPANY** (Continued)   S-15   H 3072721

**IF AMENDING APPLICATION PREVIOUSLY SUBMITTED:** Since the date of the application for the policy (including any Part II), has any person proposed for coverage:

(a) been admitted to a hospital, sanitarium or other medical facility?   Yes☐ No☐   If "Yes", submit a new application Part II.

(b) had any illness, injury, or consulted any physician or practitioner for any reason, including routine checkup examination?   Yes☐ No☐   If "Yes", give full details. _____

**13. IF AMOUNT OF BENEFIT IS BEING INCREASED UNDER AN OPTION: (IPO, IMBO, OIMB)**

(a) Amount of Increase $ _____   (b) Option Date? _____, 19___   (c) Scheduled☐ or Alternate☐

If Alternate Option Date, give: Date of marriage☐ Birth☐ or Adoption☐   Mo. _____ Day _____ Yr. _____

**14. IF CONVERTING COVERAGE:** Give information concerning the original policy:

(a) Insured? Person named in Question 1☐ Other _____

(b) Relationship of person named in Question 1 to insured under original policy? Self☐ Other _____

(c) (i) Reason for termination of coverage? Attained Age☐   Marriage☐   Divorce☐   Ceased to be a dependent☐

(ii) Date coverage ends? _____, 19___

**15. ADDITIONAL DETAILS AND SPECIAL REQUESTS (incl. Question Number, where applicable).**

Ques. No. _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**THOSE WHO SIGN THIS PART I AGREE THAT:**

1. All of the statements in the application are correctly recorded, and are complete and true to the best of the knowledge and belief of those who made them.

2. No agent or medical examiner has any right to accept risks, make or change contracts, or give up any of the Company's rights or requirements.

3. "Cash Paid" with the application with respect to a new policy or additional benefit provides a limited amount of temporary coverage for up to 60 days, if the terms and conditions of the receipt are met. If an option to increase the amount of income protection is being exercised, it must be available in the policy indicated, and no coverage will be provided before the Option Date. Temporary coverage is not provided if reinstatement of a policy or conversion of coverage is applied for.

4. To put a policy or benefit issued in response to this application into effect, the policy or written evidence of the benefit must be delivered to the Applicant and the full first premium paid, if temporary coverage with respect to a policy or benefit is not in effect at time of delivery, there must not have been any material change in the insurability of those persons, as described by the application's written statements; this means that these statements would still be complete and true if made at time of delivery. This paragraph shall not apply if the policy is being applied for under a conversion provision.

5. If the policy is being applied for under a conversion provision, the policy applied for will be put in force as soon as the terms and conditions of that conversion provision have been met.

6. If this application is in connection with a reinstatement, it is agreed that the payment of the overdue premium to New York Life Insurance Company will be applied to a period which starts more than 60 days before the date of reinstatement.

Dated at _____ C.

on _11_ / _25_ / 19_67_

I certify I have truly and accurately recorded all answers given to me.

Witness _____   Agent

_____   Countersigned by Licensed resident agent (if required)

_____   Signature of Applicant

_____   Signature of Proposed Insured if other than Applicant

_____   Spouse or Other Required Signature

85-600   Printed in U.S.A.

3

New York Life Insurance Company
51 Madison Avenue, New York, N.Y. 10010
A Mutual Company Founded in 1845

Disability Income Policy
Non-Cancellable and Guaranteed Renewable
to Age 65—No Increase in Premium Rates
Conditionally Renewable From Age 65 to Age 75
Subject to Change in Premium Rates

8732-1

S-1

H 3 072721

## NEW YORK LIFE INSURANCE COMPANY
### 51 Madison Avenue, New York, N.Y. 10010

### DISABILITY INCOME PROTECTION COVERAGE
### OUTLINE OF COVERAGE
#### Retain for your Records
#### Disability Income Policy (8722/8730/8731/8732/8733)

**READ YOUR POLICY CAREFULLY.** The fact that you have received this outline of coverage does not guarantee a policy will be issued. This outline of coverage provides a very brief description of the important features of your policy. This is not the insurance contract and only the actual policy provisions will control. The policy itself sets forth in detail the rights and obligations of both you and New York Life Insurance Company. It is, therefore, important that you READ YOUR POLICY CAREFULLY!

**DISABILITY INCOME PROTECTION COVERAGE.** Policies of this category are designed to provide, to persons insured, coverage for disabilities resulting from a covered accident or sickness, subject to any limitations set forth in the policy. Coverage is not provided for basic hospital, basic medical-surgical, or major medical expenses.

**BENEFITS. This policy:**

1. Provides a Monthly Income Benefit of $ _1800_ for total disability, as defined in the policy, subject to the maximum benefit term indicated below.

   — Lifetime, for a total disability that starts before age 60. If total disability starts at or after age 60 but before age 63, the maximum benefit term is to age 65.

   — To Age 65          — 5 years          — 2 years

   If total disability starts at or after age 63, the maximum benefit term is 2 years.

   Payments begin on the income starting date, the day after your elimination period of _91_ days is satisfied.

2. Provides a Waiver of Premium Benefit. We will waive those premiums that fall due on or after the income starting date and during disability until age 65 or until the end of the maximum benefit term, whichever is later. We will also refund any premium which was paid and which fell due on a day of disability used to satisfy the elimination period.

**THE OPTIONAL BENEFITS CHECKED ARE CONTAINED IN YOUR POLICY. (Those marked "N/A" are not a part of your policy.)** Applicants must meet certain eligibility requirements in order to purchase these optional benefits.

   — Modification of Policy Provision Rider. This rider: (1) redefines total disability as the inability to do any of the substantial and material duties of the insured's regular job and (2) deletes the requirement that the insured can not be working at any other gainful job in order to be considered totally disabled.

   — Modification of Policy Provisions Rider. This rider provides a monthly income benefit for residual disability. If your loss of income, for the first six months of residual disability during a benefit term, is at least 20% but less than 50% for a calendar month, residual disability benefits will be paid on the basis of a 50% loss of income. If the loss of income for a calendar month is 80% or more, we will consider the loss to be 100% for that month. Benefits may be payable to age 65 subject to the requirements stated in the rider.

H-20202                                    (over)

—2—

— Social Insurance Supplement Income Benefit Rider. This rider provides an additional monthly income benefit of $ 750 reduced by the amount of benefits payable by Government Programs when the Insured is receiving benefits for total disability. A proportionate benefit is provided if the Insured is receiving a monthly income benefit for residual disability.

— Cost of Living Benefit Rider. This rider provides for up to an annual adjustment of _____5% or X 7.5%, compounded, in the amount of monthly income benefit for disability based on changes in the Consumer Price Index as described in this rider.

— Income Purchase Option Rider. This rider allows the policy owner to increase the amount of monthly income benefit for total disability on option dates subject to New York Life's issue, participation and earned income limits. We will not require proof that the Insured is medically insurable.

EXCEPTIONS, REDUCTIONS AND LIMITATIONS. This policy will not pay any benefits for:

(a) a pre-existing condition, as defined in the policy, unless

1. the disability starts after the Insured has been covered under this policy for two years; and
2. the condition has not been excluded by name or specific description;

(b) an injury or sickness self-inflicted on purpose; or

(c) an injury or sickness caused in any way by declared or undeclared war, or any act of war.

In addition, Policy Form 8722 does not provide coverage for normal pregnancy, except for complications of pregnancy, and Policy Forms 8730, 8731, 8732, and 8733 do not provide coverage for a pregnancy which began before the policy was in force.

RENEWABILITY. This policy:

— is guaranteed renewable to the policy anniversary nearest the Insured's 65th birthday. If the policy is in force at age 65, it may be renewed to age 75 while the Insured works full time at a job and is paid for that job. The Company can change the table of premium rates for this policy.

— is non-cancellable and guaranteed renewable to the policy anniversary nearest the Insured's 65th birthday. There will not be an increase in premium rates to age 65. If the policy is in force at age 65, it may be renewed to age 75 while the Insured works full time at a job and is paid for that job. In this case, it will be subject to a change in premium rates.

PREMIUM. The Annual Premium for your policy is $ 732.24. You pay $ 61.02 per mo-th. We allow 31 days from the due date for payment of a premium. All insurance continues during this grace period.

Date 4/25/07   Signature of Proposed Insured _____

H-20202

# AMENDMENT

NOTE { This requirement must not be changed or modified in any way, but remain as made out by the Home Office

NAME.  HUGHES

NUMBER    H3 072 721

The NEW YORK LIFE INSURANCE COMPANY will please accept the following answers in lieu of the answers to the corresponding questions in my application for insurance dated as indicated at the left.

APPLICATION DATED    NOVEMBER 25, 1987

| QUESTION<br>No. 7 (A) | MONTHLY INCOME?<br>(A) Disability Income ☒, Income Insurance ☐, Overhead Expense 12 ☐ 24 ☐, Disability Buy Out ☐, Key Employee ☐, Non-Can. ☒, Guar. Ren. ☐, Level ☐, Step Billing ☒, List Billing ☐, Other.................<br>Zero Day QP ☐; Delete Not Working ☐; COLB ...7..5..........%; IPO................Units<br>(B) Amount? Policy $...2450..., SIS Rider $............., Elm. Per. .91...Days.......Mos., Ren. Term...65 .YEARS |
|---|---|
| QUESTION<br>No. | |
| QUESTION<br>No. | |
| QUESTION<br>No. | |

and I hereby agree that the above answers shall form a part of my said application for insurance, the agreement in which I hereby renew and confirm, and shall apply to any policy issued thereon.

Dated    NOVEMBER 25,                  19   87                                          _____
                                                                                                                                    Proposed Insured

Witness    _James H. Felt_                              _____
                                                                                                                                    Applicant

Forwarded to the Central Records Division from _____ STOCKTON _____    General Office

                                                                                        DEC 3 0 1987                    19

256-B. 9-87  Printed in U.S.A.

UnumProvident companies, includ    insurers and insurance service provide.    .nay share NPI about you with each other. The NPI might not be directly related to our transaction or experience with you. It may include financial or other personal information such as employment history. Consistent with the Fair Credit Reporting Act, we ask your permission before sharing NPI that is not directly related to our transaction or experience with you.

## Safeguarding Information

We have physical, electronic and procedural safeguards that protect the confidentiality and security of NPI. We give access only to employees who need to know the NPI to provide insurance products or services to you.

## Access to Information

You may request access to certain NPI we collect to provide you with insurance products and services. You must make your request in writing and send it to the address below. The letter should include your full name, address, telephone number and policy number if we have issued a policy. If you request, we will send copies of the NPI to you. If the NPI includes health information, we may provide the health information to you through a health care provider you designate. We will also send you information related to disclosures. We may charge a reasonable fee to cover our copying costs.

This section applies to NPI we collect to provide you with coverage. It does not apply to NPI we collect in anticipation of a claim or civil or criminal proceeding.

## Correction of Information

If you believe NPI we have about you is incorrect, please write to us. Your letter should include your full name, address, telephone number and policy number if we have issued a policy. Your letter should also explain why you believe the NPI is inaccurate. If we agree with you, we will correct the NPI and notify you of the correction. We will also notify any person who may have received the incorrect NPI from us in the past two years if you ask us to contact that person.

If we disagree with you, we will tell you we are not going to make the correction. We will give you the reason(s) for our refusal. We will also tell you that you may submit a statement to us. Your statement should include the NPI you believe is correct. It should also include the reason(s) why you disagree with our decision not to correct the NPI in our files. We will file your statement with the disputed NPI. We will include your statement any time we disclose the disputed NPI. We will also give the statement to any person designated by you if we may have disclosed the disputed NPI to that person in the past two years.

## Coverage Decisions

If we decide not to issue coverage to you, we will provide you with the specific reason(s) for our decision. We will also tell you how to access and correct certain NPI.

## Contacting Us

For additional information about UnumProvident's commitment to privacy and to view a copy of our HIPAA Privacy Notice, please visit www.unumprovident.com/privacy or www.coloniallife.com or write to: Privacy Officer, UnumProvident Corporation, 2211 Congress Street, C467, Portland, Maine 04122. We reserve the right to modify this notice. We will provide you with a new notice if we make material changes to our privacy practices.

UnumProvident Corporation is providing this notice to you on behalf of the following insuring companies: Unum Life Insurance Company of America, First Unum Life Insurance Company, Provident Life and Accident Insurance Company, Provident Life and Casualty Insurance Company, Colonial Life & Accident Insurance Company, The Paul Revere Life Insurance Company and The Paul Revere Variable Annuity Insurance Company.

© 2006 UnumProvident Corporation. All rights reserved. UnumProvident is the marketing brand of UnumProvident Corporation's insuring subsidiaries.

A-32442 (2-06)

Accident and Sickness Department.

# NEW YORK LIFE INSURANCE COMPANY

## New York, New York 10010

### RIDER CHANGING POLICY DATE

Attached to and made a part of Policy Number_____ N3 072 721

LYLE H. HUGHES _____ , the Insured.

In accordance with the applicant's written request, the policy date stated on the first page of this policy is hereby changed to **December 15** _____ 19 **57**.

NEW YORK LIFE INSURANCE COMPANY

*Edmund A. Harnely*
Secretary

Countersigned by _____
CLU          Office Manager

Accepted by ____ LYLE H. HUGHES
Insured

55-306 A. A.S.

---

## RIDER CHANGING POLICY DATE

### Instructions to Branch Office

1. Use this Rider only upon receipt of amendment Form A.S.-18 requesting change (subject to Company's rules) in policy date. This Rider is not to be used if $10 or more was paid with the original application and such amount was equal to or more than a monthly premium for the policy. This Rider is not to be used, but the policy must be returned to the Accident and Sickness Department with Form A.S.-18, if the new policy date would require a change in the age, nearest birthday, of any person to be covered and such change would result in (a) an increase in the premium or (b) making coverage unavailable for such person.

2. Fill out Rider in duplicate. The new policy date must comply with the Company's rules regarding dating of Accident and Sickness policies. Both copies are to be countersigned by the Office Manager, or in his absence by an authorized alternate. Add the word "FOR" before "Office Manager" under countersignature line if an authorized alternate countersigns.

3. Attach original copy of Rider to the tab provided for such purpose in the policy. Use rubber cement.

4. Place rubber stamp endorsement reading "SEE RIDER ATTACHED" diagonally across the policy date stated on the first page of the policy.

5. Give policy to soliciting agent for delivery.

6. Insert new policy date on Branch Office records and on accounting stub. When full first premium is paid give accounting stub to Stub Writing Section to suspend insert premium card paid) until day on which premiums and commissions are reported. Send the accounting stub with the carbon copy of the Rider and Form A.S.-18 to Division A, Comptroller's Department.



**PA 320631**

## INDIVIDUAL HEALTH INSURANCE APPLICATION PART I

**NEW YORK LIFE INSURANCE COMPANY 51 Madison Ave., New York, N.Y. 10010**

If not an application for a New Policy check one:
- ☐ Add Rider to Policy No. _____
- ☑ Amend Application No. _H3 072 721_
- ☐ Change in Policy No. _____
- ☐ Exercising Option in Policy No. _____
- ☐ Application to Reinstate Policy No. _____
- ☐ Exercising Conversion of Policy No. _____

1. PROPOSED INSURED? _Lyle H. Hurly_    Soc. Sec. or Soc. Ins. No.? _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_  Sex? M ☑ F ☐

   Date of Birth? Mo. _07_ Day _14_ Year _061_  Place of Birth? State (Prov.) _CA_  Country _U.S.A._

   Single ☐, Married ☑, Divorced ☐, Separated ☐, Widowed ☐    Number of Dependent Children? _2_

   ADDRESS? (Complete address including any apartment number and Zip or Postal Code)

   Residence _3608 Main Dr. Modesto CA_                          Zip _95356_    Time at Address _1_ Yrs. ____ Mos.

   Previous Res. (within 2 yrs.) _____                                        Mail Address

   Business _New York Life  1121 15th St. Suite D_             Res. ☐  Bus. ☑

   _Modesto CA._                       Zip _95374_    Time with Employer _1_ Yrs. ____ Mos.

   OCCUPATION(S)? Job Title(s) _Insurance Agent_

   Specific Duties _Sale Life Insurance._

   Previous Business Address (within 2 yrs.) _____

   Previous Job Title and Duties (within 2 yrs.) _____

   Telephone Number(s) and Best Time(s) to Call Res.(_209_) _521-98_ A.M. ☐ P.M. ☐  Bus.(_219_) _527-0124_ A.M. ☐ P.M. ☐

   Has the Proposed Insured smoked cigarettes within the past year? Yes ☐ No ☑

2. ANSWER IF APPLYING FOR FAMILY INSURANCE COVERAGE ON SPOUSE OR CHILDREN. Also, see Questions 3 & 4:

   (a) Spouse, Unmarried Dependent Children Residing with Proposed Insured?

| | Sex? | Relation to Prop. Ins'd? | Born: Mo, Day, Yr? |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

   (b) SPOUSE'S OCCUPATION(S)? Job Title(s) _____
       Specific Duties _____

   (c) Has Spouse smoked cigarettes within the past year?  Yes ☐  No ☐

| | | Yes | No |
|---|---|---|---|
| 3. | Within the last 2 years, has any person named in Question 1 or 2: | | |
| | (a) engaged in motorized racing, scuba or sky diving, hang-gliding, mountain-climbing, or other hazardous activity, or does any such person intend to do so? If "Yes", submit Form 7663 . . . . . . . . . . . . . . . | ☐ | ☑ |
| | (b) been convicted of 3 or more motor vehicle moving violations or been charged with driving under the influence of alcohol or drugs? If "Yes", complete Form 17480 . . . . . . . . . . . . . . . . . . . . . . . . | ☐ | ☑ |
| | (c) been declined for issue or reinstatement, rated or charged an extra premium for any type of Life or Health Insurance? If "Yes", give person's name, company, and reason in Question 15 . . . . . . . . . . . . . | ☐ | ☑ |
| 4. | If cash is to be paid with this application and an Application Part II is required, has any person named in Question 1 or 2, within the last 2 years: | | |
| | (a) been admitted, or been advised to be admitted, to a hospital, sanitarium, or clinic other than for childbirth? | ☐ | ☑ |
| | (b) had heart trouble, stroke, cancer (other than skin cancer) or elevated blood pressure requiring medication, or had an electrocardiogram for any cause other than a routine physical examination? | ☐ | ☑ |
| | If "Yes" to either (a) or (b) above, cash may not be paid. | | |
| 5. | Is it agreed that cash will be received subject to the terms of the attached receipt, that no coverage will be provided under the receipt unless all conditions to coverage are met, and that any such coverage will be temporary and limited in amount? If "No", cash may not be paid . . . . . . . . . . . . . . . . . . . . . . . . . | ☑ | ☐ |
| | CASH PAID? Monthly Income $ _63.99_ ; Medical Expense $ _____ | | |
| 6. | Answer if APPLICANT ☐ or OWNER ☐ is not Proposed Insured. (If a corporation, give place and year incorporated in Question 15.) | | |
| | (a) Name & Relation to Proposed Insured? _____ | | |
| | (b) Mail Address? _____ | | |
| | (c) Social Security (Soc. Ins.) or Tax No.? _____ | | |

85-600 Printed in U.S.A.                                                                                   1

**PA**    320631

## APPLICATION PART I TO NEW YORK LIFE INSURANCE COMPANY (Continued)

**7. (A) MONTHLY INCOME?**

(i) Disability Income □, Income Insurance □, Overhead Expense 12 □  24 □, Disability Buy Out □, Key Employee □ Non-Can. □, Guar. Ren. □, Level □; Step-Rate □, List Billing □, Other _____

Zero Day QP □; Delete Not Working □; COLB _____%; IPO _____ Units

(ii) Amount? Policy $ _____, SIS Rider $ _____, Elim. Per _____Days _____Mos., Ben. Term _____

**(B) ANNUAL INCOME AND NET WORTH OF THE PROPOSED INSURED?**

(i) Earned Income (if self employed exclude business expenses.) . . . . . . . . . . . . $ _____

(ii) Unearned Income (incl. interest, rental income, etc.)  None □ or . . . . . . . . $ _____

(iii) Net Worth (assets minus liabilities)  Less than $750,000 □  Other . . . . . . . $ _____

**(C) OTHER INCOME PROTECTION COVERAGE ON THE PROPOSED INSURED?**

(i) Covered by Social Security (Social Insurance)?  Yes □   No □

(ii) Will the employer continue salary in the event of an inability to work due to disability?  Yes □   No □

If "Yes", salary of $ _____ will be continued for _____months.

(iii) Is any other income coverage (incl. group, individual or professional association) in force or pending? Yes □ No □ If "Yes":

| Company | Policy Number | Effective Date | Mo. Income | Elim. Period | Benefit Term |
|---|---|---|---|---|---|
| _____ | _____ | _____ | $ _____ | _____ | _____ |
| _____ | _____ | _____ | $ _____ | _____ | _____ |
| _____ | _____ | _____ | $ _____ | _____ | _____ |

(iv) Does any of the above coverage contain a Benefit that integrates with Social Security (Soc. Ins.)? Yes □ No □ If "Yes", give name of company and Benefit Amount: _____

**(D)** If employer is to pay all or part of the premium, indicate the percentage. _____%

---

**(A) MEDICAL EXPENSE?**

(i) Major Medical □   MM 80□   MM 100□   Deductible $_____   PEB Rider: Units _____

(ii). Hosp. & Surgical Expense: DHB $_____; In Hosp. Med: DHB X10□   X20□   X100□, Deductible: $100□   1X DHB□   2X DHB□,  Surgical Factor $ _____
IB Rider: Percent Increase _____%,  Deductible = Rider DHB X5□   X10□   X20□;   PEB Rider: Units _____
MEB Rider: Med. Factor = Surg. Factor Increased By _____%,  Deductible = Med. Factor X10□  X20□  X40□

(iii) Short Term Medical Expense: 90 days □   180 days □   Deductible $_____

(iv) Medicare Supp. □   Are all persons applying, covered under both Parts A & B of Medicare?  Yes □   No □

(v) Other _____

**(B) OTHER COVERAGE?**

Is any other hospital expense, major medical, hospital indemnity, Blue Cross, Blue Shield or Medicare Supplement coverage (including individual or group) in force or pending on any person named in Question 1 or 2?  Yes □   No □ If "Yes", give:

| Company | Policy Number | Effective Date | Type Coverage | Max. Ben. | DHB | Ded. |
|---|---|---|---|---|---|---|
| _____ | _____ | _____ | _____ | $ _____ | $ _____ | $ _____ |
| _____ | _____ | _____ | _____ | $ _____ | $ _____ | $ _____ |
| _____ | _____ | _____ | _____ | $ _____ | $ _____ | $ _____ |

---

**REPLACEMENT?** Is the policy applied for intended to replace, in whole or in part, any existing insurance?  Yes □   No □ If "Yes":

(a) Company? _____   (b) Policy Number? _____

(c) Plan? _____   (d) Termination date? _____   (e) Amount replaced? _____

---

**PREMIUM MODE** (if other than Short Term Single)?  Annual □   Semiannual □   Quarterly □   C-O-M □   Nyl-A-Plan □

**POLICY DATE?** _12_/_25_ _____, 19 _87_ if no date is specified, the policy date is the later of Parts I and II if cash is paid with this application; or the date of issue, if cash is not paid. If converting coverage, the policy date will be the date following the day the original coverage ends.

60  Printed in U.S.A.

2

**PA 320631**    APPLICATION PART 1 TO NEW YORK LIFE INSURANCE COMPANY (Continued)

12. IF AMENDING APPLICATION PREVIOUSLY SUBMITTED: Since the date of the application for the policy (including any Part II), has any person proposed for coverage:
    (a) been admitted to a hospital, sanitarium or other medical facility?  Yes ☐  No ☐  If "Yes", submit a new application Part II.
    (b) had any illness, injury, or consulted any physician or practitioner for any reason, including routine checkup examination?  Yes ☐  No ☐  If "Yes", give full details.

13. IF AMOUNT OF BENEFIT IS BEING INCREASED UNDER AN OPTION: (IPO, IMBO, OIMB)
    (a) Amount of increase $............    (b) Option Date?................., 19.....   (c) Scheduled ☐ or Alternate ☐
    If Alternate Option Date, give: Date of marriage ☐, Birth ☐ or Adoption ☐   Mo................. Day................. Yr.................

14. IF CONVERTING COVERAGE: Give information concerning the original policy:
    (a) Insured? Person named in Question 1 ☐  Other ...........................................
    (b) Relationship of person named in Question 1 to insured under original policy? Self ☐  Other ...........................................
    (c) (i) Reason for termination of coverage? Attained Age ☐,   Marriage ☐,   Divorce ☐,   Ceased to be a dependent ☐
        (ii) Date coverage ends? ..................., 19 .....

15. ADDITIONAL DETAILS AND SPECIAL REQUESTS (incl. Question Number, where applicable).
    Ques. No.

    Please note we are chang poly date from
    11/25/87 to 12/25/87 Thank you

THOSE WHO SIGN THIS PART I AGREE THAT:

1. All of the statements in the application are correctly recorded, and are complete and true to the best of the knowledge and belief of those who made them.

2. No agent or medical examiner has any right to accept risks, make or change contracts, or give up any of the Company's rights or requirements.

3. "Cash Paid" with the application with respect to a new policy or additional benefit provides a limited amount of temporary coverage for up to 60 days, if the terms and conditions of the receipt are met. If an option to increase the amount of income protection is being exercised, it must be available in the policy indicated, and no coverage will be provided before the Option Date. Temporary coverage is not provided if reinstatement of a policy or conversion of coverage is applied for.

4. To put a policy or benefit issued in response to this application into effect, the policy or written evidence of the benefit

must be delivered to the Applicant and the full first premium paid. If temporary coverage with respect to a policy or benefit is not in effect at time of delivery, there must not have been any material change in the insurability of those persons, as described by the application's written statements; this means that these statements would still be complete and true if made at time of delivery. This paragraph shall not apply if the policy is being applied for under a conversion provision.

5. If the policy is being applied for under a conversion provision, the policy applied for will be put in force as soon as the terms and conditions of that conversion provision have been met.

6. If this application is in connection with a reinstatement, it is agreed that the payment of the overdue premium to New York Life Insurance Company will be applied to a period which starts more than 60 days before the date of reinstatement.

Dated at  Modesto    Ca.

on   12  /  30  / 19 87

I certify I have truly and accurately recorded all answers given to me.

Witness _____    Agent

Countersigned by Licensed resident agent (if required)

_____
Signature of Applicant

_____
Signature of Proposed Insured if other than Applicant

_____
Spouse or Other Required Signature

85-600   Printed in U.S.A.

3



April 30, 1987

Dear Policyowner:

We are very pleased to tell you about two improvements which have been made in your disability income policy. These improvements, which are described below, apply to a disability which begins on or after the date of this letter or the effective date of this policy, whichever is later, and while the policy is in force.

1.  We have liberalized the requirement for satis-fying the elimination period with separate periods of disability. We no longer require that these periods be at least 30 consecutive days long. Now, even one single day of dis-ability may be counted toward the elimination period.

2.  Coverage is provided for disability resulting from elective cosmetic surgery. Subject to the terms of the policy, benefits are payable for disability which results from elective cosmetic surgery on the same basis as for disability resulting from an injury or a sickness.

This letter serves as notice of the Company's intent to administer your policy in accordance with the two improvements described above. Please keep it with your policy so that you will have it for future reference.

If, at any time, you would like additional explanation of these improvements in your policy, or would like to discuss any changes in your insurance program, please get in touch with your New York Life agent or our local office. We are always happy to be of service to you.

Sincerely,

Charles I. Bauer
Corporate Vice President

H-20210
STRUPT for
Financial Products & Services

LYLE H HUGHES
H2724074



# Disability Income Policy

New York Life Insurance Company will pay the benefits of this policy in accordance with its provisions. The pages which follow, including any exceptions and limitations, are also a part of this policy.

10 day free examination period. Please examine this policy. Within 10 days after delivery, the policy can be returned to the Company or to the agent through whom it was purchased, with a written request for a full refund of premium. Upon such a request, the policy will be void from the start, and any premium paid will be refunded.

Pre-existing condition limitations. Benefits for a disability caused in any way by a pre-existing condition, as defined in this policy, will be provided only if the disability starts after the policy has been in force for 2 years.

However, if a condition is excluded from coverage by name or specific description, no benefits will be provided for a loss that results from that condition even after these 2 years.

Renewability. This policy is non-cancellable and guaranteed renewable to the policy anniversary nearest the insured's 65th birthday as stated in the Right to Renew Policy section.

After that anniversary, the policy may be renewed to the policy anniversary nearest the insured's 75th birthday as long as the insured is gainfully employed full time. During this time, the Company can change the table of premium rates that applies to this policy.

Disability Income Policy
Non-Cancellable and Guaranteed Renewable to Age 65—No Increase in Premium Rates
Conditionally Renewable From Age 65 to Age 75 Subject to Change in Premium Rates

8732-1

Important notice concerning statements in the application for this insurance. Please read the copy of the application attached to this policy. Omissions or misstatements in the application could cause an otherwise valid claim to be denied or the policy to be rescinded. Carefully check the application and write to the Company within 10 days after delivery if any information shown is not correct and complete or if any medical history has not been included. The application is part of this insurance policy and this insurance policy was issued on the basis that the answers to all questions and any other material information shown are correct and complete.

This policy is executed as of 12:01 A.M. on the policy date.

Coverage ends as of 11:59 P.M. on the last date this policy is in effect. These times are based on the insured's place of residence.

President

Secretary

Countersignature

INSURED               LYLE H HUGHES                              AGE 27

  POLICY NUMBER       H2724074

  POLICY DATE         SEPTEMBER 14, 1988

  OWNER               INSURED


BENEFITS MONTHLY INCOME BENEFIT FOR TOTAL DISABILITY   $1000
(IF TOTAL DISABILITY STARTS AT OR AFTER AGE 75, ONE-HALF OF BENEFIT
PAYABLE BEFORE AGE 75.)

       ELIMINATION PERIOD: 90 DAYS OF DISABILITY AS DESCRIBED IN THIS
                                    POLICY

       MAXIMUM BENEFIT TERM: BENEFITS ARE PAYABL UP TO AGE 65, OR IF THE
       DISABILITY BEGINS AT AGE 60, IT WILL PAY UP TO AGE 65 OR 2 YEARS,
       WHICHEVER IS LONGER


    WAIVER OF PREMIUM BENEFIT


    SUPPLEMENTARY BENEFITS:

          N/A

    CURRENT MONTHLY PREMIUM:                           $22.80


  *Information on this schedule page indicates current coverage and premiums.


PAGE 2            POLICY DATA          NEW YORK LIFE INSURANCE COMPANY
8732-1

In this policy, the words "we", "our" or "us" refer to New York Life Insurance Company and the words "you" or "your" refer to the Owner of this policy.

When writing to us, please include the Insured's full name, current address, and the policy number

# CONTENTS

**POLICY DATA** — 10 day free examination period; Pre-existing condition limitations; Renewability; Policy identification and specifications / 1-2

**DEFINITIONS** — Age; Benefit Term; Elimination Period; Income Starting Date; Injury and Sickness; Physician; Pre-Existing Condition; Regular Job; Total Disability / 4-5

**BENEFITS** — Benefits for Disability; Monthly Income Benefit for Total Disability; New Period of Disability; Waiver of Premium Benefit; Rehabilitation; When Benefits Not Payable / 5

**CLAIMS** — How and when to file a claim / 6

**PREMIUMS** — Payment of premiums; What happens if a premium is not paid; Suspension during military duty; Reinstatement of a lapsed policy / 6-7

**RIGHT TO RENEW POLICY** — How the policy is renewed / 7

**GENERAL PROVISIONS** — Misstatement of Age; Policy Ownership; Change of Ownership; Entire Contract; Application; Incontestability; Policy Dates; Dividends; Assignment; Protection Against Creditors; Payments to Company; Conformity with Statutes; Voting Rights / 8-9

**APPLICATION** — Attached to the policy.

**RIDERS OR ENDORSEMENTS (IF ANY)** — Attached to the policy.

DEFINITIONS

**Age**  Reference to an age in this policy, such as "age 65" or "age 75", means the policy anniversary nearest to the birthday of the insured on which he or she is that age. For example, "Guaranteed Renewable to Age 65" means that the policy can be renewed until the policy anniversary which is closest to the insured's 65th birthday.

**Benefit Term**  A period of time for which monthly income benefits are payable for disability due to the same cause. It starts on the day after the elimination period ends. It goes on until (1) the insured is no longer disabled, or (2) the end of the maximum benefit term shown on the Data page, or (3) the death of the insured, whichever occurs first.

**Elimination Period**  The number of days the insured must be disabled before monthly income benefits can become payable. The elimination period may be satisfied in either of 2 ways:

    (a) by a single, continuous period of disability due to the same cause, which begins on the day the disability starts; or

    (b) by combining separate periods of continuous disability, due to the same cause, which occur in a period of time lasting not longer than twice the number of days in the elimination period. Each such period must be at least 30 days long, except for the last period if fewer than 30 days are needed to reach the end of the elimination period.

The number of days of the elimination period is shown on the Data page.

**Income Starting Date**  The first day of disability for which monthly income benefits are payable. It is the day after the end of the elimination period.

**Injury and Sickness**  Injury means an accidental bodily injury of the insured. Sickness means an illness or disease of the insured.

Except as stated in the Pre-Existing Condition Limitations provision, the injury must occur, or the sickness must first manifest itself, while this policy is in force. The injury or sickness must not be self-inflicted on purpose. The injury or sickness must be one which requires and receives regular care by a physician.

A transplant of a part of the insured's body to the body of someone else will be considered a sickness only if the transplant takes place while this policy is in force and after the policy has been in force for 6 months.

**Physician**  A licensed practitioner of the healing arts acting within the scope of his or her license in treating an injury or a sickness. The following are not physicians for the purpose of this policy: the Owner of this policy; the insured; a member of the Owner's or the insured's family.

**Pre-Existing Condition**  A bodily injury or sickness of the insured which a physician has treated or for which a physician has advised treatment within 2 years before the date this policy takes effect. It is also one which would cause an ordinarily prudent person to seek diagnosis or care within the same 2 year period. A condition which was fully disclosed in the application and not excluded from coverage is not considered to be a pre-existing condition. However, a normal pregnancy which began before the effective date of this policy is considered to be a pre-existing condition whether or not it was fully disclosed in the application.

**Regular Job**  The occupation in which the insured is engaged when a disability starts. If the insured is regularly engaged in more than one occupation at the time disability starts, regular job means all of those occupations.

**Total Disability**  From the start of a total disability until 5 years after the income starting date, total disability means that the insured can not do any of the substantial and material duties of his or her regular job and is not working at any other gainful job.

After 5 years from the income starting date, if a new period of disability does not apply, total disability will then mean that the insured can not do any of the substantial and material duties of a job for which he or she is suited. Schooling, training and experience are factors that we will use as the basis for deciding if the insured is suited for a job.

The cause of the total disability must be an injury or a sickness.

**DEFINITIONS**
(continued)

Total disability also means the insured's total loss of one or more of the following, without regard to the insured's ability to work:

    (a)  the sight of both eyes;

    (b)  the use of both hands, both feet, or one hand and one foot;

    (c)  speech;

    (d)  hearing in both ears.

The loss must be one which cannot be recovered. It must occur while this policy is in force. The cause of the loss must be an injury or a sickness. In the case of losses (a) through (d) we will pay the monthly income benefit for total disability from the date of the loss.

---

**BENEFITS**

**Benefits for Disability**  This policy provides monthly income benefits for disability. When the term "disability" is used alone, it means total disability, as defined in this policy.

**Monthly Income Benefit for Total Disability**  This benefit becomes payable as follows: premiums must be paid as called for in the Premiums Section and the elimination period must be satisfied.

Then, beginning with the income starting date and while total disability goes on continuously, we will pay the monthly income benefit for total disability, for each full month of total disability. The benefit is payable at monthly intervals during the benefit term. If the insured is totally disabled for part of a month, we will pay 1/30th of the monthly benefit for each day of total disability. The amount of the monthly income benefit will not change if total disability results from more than one cause.

The monthly income benefit for total disability is shown on the Data page.

**New Period of Disability**  If the insured recovers from a disability for which monthly income benefits were paid, any later disability will be treated as a new period of disability when at least one of the following conditions is met while this policy is in force. First, the cause of the later disability must not be related in any way to the cause of any prior disability. Second, for at least 6 months in a row after recovery, the insured must have both worked full time at a gainful job and must not have had a disability. A new maximum benefit term and a new elimination period will apply to each new disability.

If neither of the above conditions is met, we will consider the later disability to be an extension of the prior disability, with no new elimination period and no new maximum benefit term.

**Waiver of Premium Benefit**  We will start to waive the premiums for this policy when a monthly income benefit for disability becomes payable, and all premiums have been paid. We will waive those premiums that fall due on or after that income starting date and during that disability until age 65 or until the end of the maximum benefit term, whichever is later. We will also waive premiums which become due during the 3 months after the disability ends, but only if such premiums fall due before age 65.

Also, we will refund any premium which was paid and which fell due on a day of disability used to satisfy the elimination period.

Premiums will be waived based on the interval of payment which is in effect when the disability starts. A premium which is waived will not be deducted from any monthly income benefits or other proceeds.

**Rehabilitation**  A totally disabled insured's participation in a work rehabilitation program approved by us will not be considered, by itself, as a recovery from total disability. Also, if a totally disabled insured submits a written request, we will consider participating in the expense of such a program. The nature and extent of participation by the insured and by us must be satisfactory to both, and it must be set forth in a written Rehabilitation Program Agreement before any such program can start.

**When Benefits Not Payable**  We will not pay any benefits for an injury which occurs or a sickness which first manifests itself while this policy is not in force, except as stated in the Pre-Existing Condition Limitations provision.

We will also not pay any benefits if the injury or sickness is caused in any way by declared or undeclared war, or any act of war, including an armed conflict involving the armed forces of one or more countries.

## CLAIMS

**Notice of Claim** A written notice of claim must be given to us at our Home Office, 51 Madison Avenue, New York, N.Y. 10010, or to one of our authorized agents. The notice must be given within 30 days after a disability starts or a covered loss occurs, or as soon as this can reasonably be done. It must include the name of the insured and the policy number.

**Claim Forms** When the notice is received, claim forms will be sent to the claimant to be filled out and returned to us. If the claimant does not receive these forms within 15 days after giving us notice of claim, he or she may instead give a complete written account of the facts that we need.

**Proof of Disability or Loss** Written proof must be given within 90 days after a period of disability ends or within 90 days after a loss occurs. Failure to give the proof within that time is not a basis for us to reduce or deny the claim, if the following 3 conditions are met. First, it must not be reasonably possible to give the proof within that time. Second, the proof must be given as soon as reasonably possible. Third, the proof must be given within one year from the time that proof is otherwise required, except in the absence of legal capacity.

**Time of Payment of Claim** A claim will be payable when all information that is necessary for us to make a decision is received.

**Payment of Claim** While the insured is living, any benefits will be payable to you. If any of these benefits have not been paid at the insured's death, they will be paid to you or to your estate.

A claim may become payable to your estate or to someone who can not give a valid release. In this case, up to $1,000 of that claim may be paid to the person whom we decide has the right to receive it. This person must be related by blood or marriage to you or to the person who could not give the release. Any payment made in good faith to that relative will release us to that extent.

**Examination of the Insured** While a claim under this policy goes on, we have the right to have the insured examined, at our own expense, by physicians approved by us, as often as reasonably required.

**Legal Actions** With respect to any claim under this policy, no legal action may be taken against us during the 60 days after receipt of the written proof, or after 3 years from the date proof is required to be given.

## PREMIUMS

**Payment of Premiums** Each premium is payable on or before its due date as shown in the Premium Schedule. Premiums are payable at our Home Office or at a service office.

**Grace Period** We allow 31 days from the due date for payment of a premium. All insurance continues during this grace period.

**Nonpayment of Premium** If a premium is not paid by the end of the grace period, this policy will lapse. All insurance will end at the time of lapse; but this will not affect the payment of any benefit for disability, if disability started before the end of the grace period.

**Suspension During Military Duty** If the insured enters military duty (except when that duty lasts for 31 days or less), this policy will be suspended for the period of that military duty. We will refund any premium paid for that period. The refund will be made when a notice stating that the insured has entered military duty is received.

When military duty ends before age 65, this policy may be reinstated without proof of insurability. To do this, we must receive a signed request and the required premium within 60 days from the end of the duty. You will have the same rights under this policy as those before coverage was suspended.

## PREMIUMS
(continued)

**Reinstatement**  You may ask that this policy be reinstated if it lapses. If your signed application is not required by us the policy will be reinstated when we accept the correct premium at our Home Office or at a service office.

For a case where your signed application is required by us, a receipt will be issued when the premium is paid. If that application is approved, the policy will be reinstated on the date of approval. However, if we do not tell you in writing, on or before the 45th day after the date of the receipt, that the application is not approved, the policy will be reinstated on that 45th day.

In no case will a premium be applied to a period for which a premium has already been paid and, unless you agree, to a period more than 60 days before reinstatement.

When a policy is reinstated, only losses from an injury which occurs or a sickness which first manifests itself after the date of reinstatement will be covered. You will have the same rights under this policy as those before lapse, unless we otherwise endorse the policy.

**Premium Adjustment at Death**  We will refund the applicable part of a premium, which is paid for the period after the policy month in which the insured dies. This refund will be payable to you or to your estate.

## RIGHT TO RENEW POLICY

**Non-Cancellable and Guaranteed Renewable to Age 85**  While this policy is in force and if the insured has not reached age 65, we can not take any of the actions listed below, without your consent.

   (a) Refuse to let you renew the policy.

   (b) Limit the policy by rider.

   (c) Change any provisions of the policy.

   (d) Change the table of premium rates.

**Renewability of Policy from Age 65 to Age 75**  Starting at age 65, if this policy is then in force, it may be renewed until age 75, as long as the insured works full time at a job and gets paid for that job, and the premiums for this policy are paid when due. We have the right to ask for proof that the insured is working full time at a gainful job. The proof will be needed as often as once each year. If the insured is working full time at a gainful job and a premium for an interval that starts at or after age 75 is accepted, insurance goes on to the end of that interval, unless the age was not correct as stated.

When the insured's job ends after age 65, except as a result of a total disability which starts at or after age 65, this policy will not stay in force beyond the end of the policy month in which that job ends. We will refund the part of a premium which is paid for the period after that policy month. The payment of a benefit for a total disability that started before the end of that policy month will not be affected.

We have the right to change the table of premium rates which applies to this policy at or after age 65. All policies that are issued on this form for the same type of benefits will be subject to the new rates. The premium rate that applies to this policy, in the changed table, will be based on the age of the insured at the time of the change.

If the rates are changed, the new rates will take effect for this policy on the anniversary that follows the date of the change.

**GENERAL PROVISIONS**

Misstatement of Age   If the age of the insured is not correct as stated, any amount payable under this policy will be what the premiums paid would have purchased at the correct age. However, if the correct age on the policy date is not one of the ages at which this policy would be issued, the only amount payable will be the premiums paid for this policy.

If a date in the Premium Schedule is based on an age that is not correct, we may change the date to reflect the correct age.

If the age of the insured is not correct as stated and a premium is accepted for a period of coverage that starts after age 75, only a refund of that premium will be payable.

Policy Ownership   You are the insured unless this policy states otherwise. If you are not the insured and you die before the insured, the new Owner will be the insured unless this policy states otherwise. The Owner has all rights of ownership in this policy while the insured is living.

Change of Ownership   You can change the ownership of this policy in a signed notice which includes the facts that are needed. When this change takes effect, all rights of ownership in this policy will pass to the new Owner. When the facts about a change of owner are received by our Home Office, this change will take effect as of the date the notice was signed, subject to any payment made or action taken by us before recording this change. We may require that this change be endorsed in the policy.

Entire Contract   The entire contract consists of this policy, any attached riders or endorsements, and the attached copy of the application. Only the Chairman, the President, the Secretary, or one of our Vice Presidents can change the contract, and then only in writing. No change will be made in the contract unless you agree to it in writing. No agent is authorized to change this contract.

Application   In issuing this policy, we have relied on the statements which were made in the application. We assume that they are true and complete to the best of the knowledge and belief of those who made them. No statement made in connection with the application will be used by us to void the policy or to deny a claim unless that statement is a material misrepresentation and is part of the application.

Incontestability   We have no right to contest the insurance provided by this policy after it has been in force during the lifetime of the insured for 2 years from the policy date, except for a disability which starts before the end of those 2 years. No claim for a disability which starts after those 2 years will be denied on the ground that a disease or physical condition existed before the policy date, unless such disease or condition was excluded from coverage on the date the disability started.

Policy Dates   Policy years, policy months, and policy anniversaries are measured from the policy date. This definition does not affect other years, months, and days.

Dividends   While this policy is in force, it is eligible to share in our divisible surplus. Each year we determine the policy's share, if any. This share, if any, is payable as a dividend on the policy anniversary, if all premiums due before then have been paid. A dividend, when payable, will be paid to you in cash.

Assignment   You can assign this policy or any interest in it. In that case, your interest, and anyone else's, is subject to that of the assignee. An assignee may not change the Owner. You still have the rights of ownership that have not been assigned.

We must have a copy of any assignment. We will not be responsible for the validity of an assignment. The assignment will be subject to any payment made or other action taken by us before it was recorded.

**GENERAL PROVISIONS**
(continued)

**Protection Against Creditors**   Except as stated in the Assignment provision, payments made under this policy are, to the extent the law permits, exempt from the claims, attachments, or levies of any creditors.

**Payments to Company**   Any payment made to us by check or money order must be payable to New York Life. When asked, a receipt, signed by our President or Secretary, will be given for any premium paid.

**Conformity with Statutes**   This policy is subject to all laws which apply.

**Voting Rights**   Each year there is an election of persons to our Board of Directors. You have the right to vote in person or by mail if this policy is in force, and has been in force for at least one year after the policy date. To find out more about this, you should write to the Secretary at our Home Office, 51 Madison Avenue, New York, New York 10010.

# ENDORSEMENTS

# NEW YORK LIFE INSURANCE COMPANY

New York, New York 10010

## CHECK-O-MATIC PREMIUM ARRANGEMENT

This policy is issued under the New York Life Insurance Company's Check-O-Matic arrangement under which the Company is authorized to draw checks monthly to be charged against a designated bank account for the purpose of collecting premiums payable under this policy. The premium shown in this policy is based on the Company's Check-O-Matic premium rate.

The Check-O-Matic arrangement may be terminated with respect to this policy by the policyowner or by the Company upon written notice. If the arrangement is terminated,

(1) premiums falling due under this policy after such termination shall be payable directly to the Company monthly, at the Check-O-Matic premium rate, until the first policy anniversary which follows by at least two months the date of such termination, and

(2) premiums falling due under this policy on and after said anniversary shall be payable directly to the Company at the quarterly rate if the quarterly premium would be at least $12.50, at the semi-annual rate if the semi-annual premium would be at least $15 and the quarterly rate is not available, and otherwise at the annual premium rate.

By _____

Secretary

72-802

# RIDER

**MODIFICA-
TION OF
POLICY
PROVISIONS**

1.  The definition of Pre-Existing Condition is deleted and replaced by the following:

    **Pre-Existing Condition**   A bodily injury or sickness of the insured which a physician has treated or for which a physician has advised treatment within 2 years before the date this policy takes effect. A condition which was fully disclosed in the application and not excluded from coverage is not considered to be a pre-existing condition. However, a normal pregnancy which began before the effective date of this policy is considered to be a pre-existing condition

whether or not it was fully disclosed in the application.

2.  The second paragraph of the Assignment provision is deleted and replaced by the following:

    We must have a copy of any assignment. We will not be responsible for the validity of an assignment. The assignment will be subject to any payment made or other action taken by us before the assignment was filed at our Home Office.

NEW YORK LIFE INSURANCE COMPANY

By _____
                              President

_____
                              Secretary

87-346

PA 149051

## INDIVIDUAL HEALTH INSURANCE APPLICATION PART I

**NEW YORK LIFE INSURANCE COMPANY** 51 Madison Ave., New York, N.Y. 10010

If not an application for a New Policy check one:

- ☐ Add Rider to Policy No. _____
- ☐ Change in Policy No. _____
- ☐ Application to Reinstate Policy No. _____
- ☐ Amend Application No. _____
- ☐ Exercising Option in Policy No. _____
- ☐ Exercising Conversion of Policy No. _____

H2 724 074

1. PROPOSED INSURED? Lyle H. Hughes   Soc. Sec. or Soc. Ins. No.? 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   Sex? M ☒ F ☐

Date of Birth? Mo. 09 Day 11 Year 61   Place of Birth? State (Prov.) CA   Country U.S.A.

Single ☐, Married ☒, Divorced ☐, Separated ☐, Widowed ☐   Number of Dependent Children? 2

ADDRESS? (Complete address including any apartment number and Zip or Postal Code)

Residence 3600 Agate Dr.   Modesto   CA.   Zip 95356   Time at Address 4 Yrs. _____ Mos.

Previous Res. (within 2 yrs.) _____

Business New York Life   1120 15th St.   Ste B   Midst A. Zip 95354   Mail Address Res. ☐ Bus. ☒   Time with Employer 5 Yrs. _____ Mos.

OCCUPATION(S)? Job Title(s)   N/A
Specific Duties _____

Previous Business Address (within 2 yrs.) _____
Previous Job Title and Duties (within 2 yrs.) _____

Telephone Number(s) and Best Time(s) to Call  Res.(____)_____ A.M. _P.M.  Bus.(____)_____ A.M. _P.M.

Has the Proposed Insured smoked cigarettes within the past year?  Yes ☐  No ☒

2. ANSWER IF APPLYING FOR FAMILY INSURANCE COVERAGE ON SPOUSE OR CHILDREN. Also, see Questions 3 & 4:

| (a) Spouse, Unmarried Dependent Children Residing with Proposed Insured? | Sex? | Relation to Prop. Ins'd? | Born: Mo, Day, Yr? |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

(b) SPOUSE'S OCCUPATION(S)? Job Title(s) _____
Specific Duties _____

(c) Has Spouse smoked cigarettes within the past year?  Yes ☐  No ☐

| | Yes | No |
|---|---|---|
| 3. Within the last 2 years, has any person named in Question 1 or 2: | | |
| (a) engaged in motorized racing, scuba or sky diving, hang-gliding, mountain climbing, or other hazardous activity, or does any such person intend to do so? If "Yes", submit Form 7663 . . . . . . . . . . . . . . . | ☐ | ☐ |
| (b) been convicted of 3 or more motor vehicle moving violations or been charged with driving under the influence of alcohol or drugs? If "Yes", complete Form 17480 . . . . . . . . . . . . . . . . . . . . . . | ☐ | ☐ |
| (c) been declined for issue or reinstatement, rated or charged an extra premium for any type of Life or Health Insurance? If "Yes", give person's name, company, and reason in Question 15 . . . . . . . . . . | ☐ | ☐ |
| 4. If cash is to be paid with this application and an Application Part II is required, has any person named in Question 1 or 2, within the last 2 years: | | |
| (a) been admitted, or been advised to be admitted, to a hospital, sanitarium, or clinic other than for childbirth? | ☐ | ☒ |
| (b) had heart trouble, stroke, cancer (other than skin cancer) or elevated blood pressure requiring medication, or had an electrocardiogram made for any cause other than a routine physical examination? | ☐ | ☒ |
| If "Yes" to either (a) or (b) above, cash may not be paid. | | |
| 5. Is it agreed that cash will be received subject to the terms of the attached receipt, that no coverage will be provided under the receipt unless all conditions to coverage are met, and that any such coverage will be temporary and limited in amount? If "No", cash may not be paid . . . . . . . . . . . . . . . . . . . . . . | ☒ | ☐ |

CASH PAID? Monthly Income $ 26 ⁰⁰/₁₀₀ ; Medical Expense $ _____

6. Answer if APPLICANT ☐ or OWNER ☐ is not Proposed Insured. (If a corporation, give place and year incorporated in Question 15.)
(a) Name & Relation to Proposed Insured? _____
(b) Mail Address? _____
(c) Social Security (Soc. Ins.) or Tax No.? _____

85-600 Printed in U.S.A.

PA        149051

**APPLICATION PART I TO NEW YORK LIFE INSURANCE COMPANY (Continued)** H2 724 074

**(A) MONTHLY INCOME?**

(i) Disability Income ☒, Income Insurance ☐, Overhead Expense 12 ☐ 24 ☐, Disability Buy Out ☐, Key Employee ☐ Non-Can. ☒, Guar. Ren. ☐, Level ☐, Step-Rate ☐, List Billing ☐, Other _____
Zero Day QP ☐; Delete Not Working ☐; COLB _____%; IPO _____ Units

(ii) Amount? Policy $ _1000_ , SIS Rider $ _____, Elim. Per. _90_ Days _____ Mos., Ben. Term _% 8_.

**(B) ANNUAL INCOME AND NET WORTH OF THE PROPOSED INSURED?**

(i) Earned Income (if self employed exclude business expenses.) . . . . . . . . . . . . $ _85,000_

(ii) Unearned Income (incl. interest, rental income, etc.)   None ☐ or . . . . . . . . $ _____

(iii) Net Worth (assets minus liabilities).   Less than $750,000 ☒   Other . . . . . . . $ _____

**(C) OTHER INCOME PROTECTION COVERAGE ON THE PROPOSED INSURED?**

(i) Covered by Social Security (Social Insurance)?   Yes ☐   No ☐

(ii) Will the employer continue salary in the event of an inability to work due to disability?   Yes ☐   No ☐
If "Yes", salary of $ _____ will be continued for _____ months.

(iii) Is any other income coverage (incl. group, individual or professional association) in force or pending? Yes ☐ No ☐ If "Yes":

| Company | Policy Number | Effective Date | Mo. Income | Elim. Period | Benefit Term |
|---------|---------------|----------------|------------|--------------|--------------|
| _____ | _____ | _____ | $ _____ | _____ | _____ |
| _____ | _____ | _____ | $ _____ | _____ | _____ |
| _____ | _____ | _____ | $ _____ | _____ | _____ |

(iv) Does any of the above coverage contain a Benefit that integrates with Social Security (Soc. Ins.)? Yes ☐ No ☐ If "Yes", give name of company and Benefit Amount: _____

**(D)** If employer is to pay all or part of the premium, indicate the percentage. _N/A_ %

**(A) MEDICAL EXPENSE?**

(i) Major Medical ☐    MM 80☐    MM 100☐    Deductible $_____    PEB Rider: Units _____

(ii) Hosp. & Surgical Expense: DHB $_____, In Hosp. Med.: DHB X10☐    X20☐    X100☐,
Deductible: $100☐    1X DHB☐    2X DHB☐,    Surgical Factor $_____
IB Rider: Percent Increase _____%,   Deductible = Rider DHB X5☐    X10☐    X20☐;   PEB Rider: Units _____
MEB Rider: Med. Factor = Surg. Factor Increased By _____%,   Deductible = Med. Factor X10☐    X20☐    X40☐

(iii) Short Term Medical Expense: 90 days ☐    180 days ☐    Deductible $_____

(iv) Medicare Supp. ☐   Are all persons applying, covered under both Parts A & B of Medicare?   Yes ☐   No ☐

(v) Other _____

**(B) OTHER COVERAGE?**

Is any other hospital expense, major medical, hospital indemnity, Blue Cross, Blue Shield or Medicare Supplement coverage (including individual or group) in force or pending on any person named in Question 1 or 2?   Yes ☐   No ☐ If "Yes", give:

| Company | Policy Number | Effective Date | Type Coverage | Max. Ben. | DHB | Ded. |
|---------|---------------|----------------|---------------|-----------|-----|------|
| _____ | _____ | _____ | _____ | $ _____ | $ _____ | $ _____ |
| _____ | _____ | _____ | _____ | $ _____ | $ _____ | $ _____ |
| _____ | _____ | _____ | _____ | $ _____ | $ _____ | $ _____ |

**REPLACEMENT?** Is the policy applied for intended to replace, in whole or in part, any existing insurance?   Yes ☐   No ☐ If "Yes":

a) Company? _____    (b) Policy Number? _____

c) Plan? _____    (d) Termination date? _____    (e) Amount replaced? _____

**PREMIUM MODE** (if other than Short Term Single)?   Annual ☐    Semiannual ☐    Quarterly ☐    C-O-M ☒    Nyl-A-Plan ☐

**POLICY DATE?** _____, 19____ if no date is specified, the policy date is: the later of Parts I and II if cash is paid with this application; or the date of issue, if cash is not paid. If converting coverage, the policy date will be the date following the day the original coverage ends.

Printed in U.S.A.

2

**PA 149051**   APPLICATION PART I TO NEW YORK LIFE INSURANCE COMPANY (Continued)    H2 724 074

12. **IF AMENDING APPLICATION PREVIOUSLY SUBMITTED:** Since the date of the application for the policy (including any Part II), has any person proposed for coverage:
   (a) been admitted to a hospital, sanitarium or other medical facility?  Yes☐  No☐  If "Yes", submit a new application Part II.
   (b) had any illness, injury, or consulted any physician or practitioner for any reason, including routine checkup examination?
      Yes☐  No☐  If "Yes", give full details. ..........................

13. **IF AMOUNT OF BENEFIT IS BEING INCREASED UNDER AN OPTION: (IPO, IMBO, OIMB)**
   (a) Amount of increase $.............    (b) Option Date?..............,19.....  (c) Scheduled☐ or Alternate☐
      If Alternate Option Date, give: Date of marriage☐, Birth☐ or Adoption☐    Mo............Day.............Yr.............

14. **IF CONVERTING COVERAGE:** Give information concerning the original policy:
   (a) Insured? Person named in Question 1☐    Other .....................
   (b) Relationship of person named in Question 1 to insured under original policy?  Self☐  Other ....................
   (c) (i) Reason for termination of coverage? Attained Age☐,   Marriage☐,   Divorce☐,   Ceased to be a dependent☐
      (ii) Date coverage ends?....................,19.....

15. **ADDITIONAL DETAILS AND SPECIAL REQUESTS (incl. Question Number, where applicable).**
   Ques. No.

   ----------------------------------------------------------------
   ----------------------------------------------------------------
   ----------------------------------------------------------------
   ----------------------------------------------------------------
   ----------------------------------------------------------------
   ----------------------------------------------------------------
   ----------------------------------------------------------------
   ----------------------------------------------------------------
   ----------------------------------------------------------------

**THOSE WHO SIGN THIS PART I AGREE THAT:**

1. All of the statements in the application are correctly recorded, and are complete and true to the best of the knowledge and belief of those who made them.

2. No agent or medical examiner has any right to accept risks, make or change contracts, or give up any of the Company's rights or requirements.

3. "Cash Paid" with the application with respect to a new policy or additional benefit provides a limited amount of temporary coverage for up to 60 days, if the terms and conditions of the receipt are met. If an option to increase the amount of income protection is being exercised, it must be available in the policy indicated, and no coverage will be provided before the Option Date. Temporary coverage is not provided if reinstatement of a policy or conversion of coverage is applied for.

4. To put a policy or benefit issued in response to this application into effect, the policy or written evidence of the benefit must be delivered to the Applicant and the full first premium paid. If temporary coverage with respect to a policy or benefit is not in effect at time of delivery, there must not have been any material change in the insurability of those persons, as described by the application's written statements; this means that these statements would still be complete and true if made at time of delivery. This paragraph shall not apply if the policy is being applied for under a conversion provision.

5. If the policy is being applied for under a conversion provision, the policy applied for will be put in force as soon as the terms and conditions of that conversion provision have been met.

6. If this application is in connection with a reinstatement, it is agreed that the payment of the overdue premium to New York Life Insurance Company will be applied to a period which starts more than 60 days before the date of reinstatement.

Dated at _Modesto        C._

on _____9___ / ___14___ , 19 _86_

I certify I have truly and accurately recorded all answers given to me.

Witness _____  Agent

_____
Countersigned by Licensed resident agent (if required)

_____
Signature of Applicant

_____
Signature of Proposed Insured if other than Applicant

_____
Spouse or Other Required Signature

85-600   Printed in U.S.A.                                    3

New York Life Insurance Company
51 Madison Avenue, New York, N.Y. 10010
A Mutual Company Founded in 1845

Disability Income Policy
Non-Cancellable and Guaranteed Renewable
to Age 65—No Increase in Premium Rates

Conditionally Renewable From Age 65 to Age 75
Subject to Change in Premium Rates

8732-1



April 30, 1987

Dear Policyowner:

We are very pleased to tell you about two improvements which have been made in your disability income policy. These improvements, which are described below, apply to a disability which begins on or after the date of this letter or the effective date of this policy, whichever is later, and while the policy is in force.

1.  We have liberalized the requirement for satisfying the elimination period with separate periods of disability. We no longer require that these periods be at least 30 consecutive days long. Now, even one single day of disability may be counted toward the elimination period.

2.  Coverage is provided for disability resulting from elective cosmetic surgery. Subject to the terms of the policy, benefits are payable for disability which results from elective cosmetic surgery on the same basis as for disability resulting from an injury or a sickness.

This letter serves as notice of the Company's intent to administer your policy in accordance with the two improvements described above. Please keep it with your policy so that you will have it for future reference.

If, at any time, you would like additional explanation of these improvements in your policy, or would like to discuss any changes in your insurance program, please get in touch with your New York Life agent or our local office. We are always happy to be of service to you.

Sincerely,

Charles I. Bauer
Corporate Vice President

H-20210

**New York Life** for
Financial Products & Services

NEW YORK LIFE    Fax:2125767421    Aug  1 2004  13:33    P.02

# Nylic Contract

# Nylic NO.QN6 -82

## New York Life Insurance Company, Jan. 1982

EXHIBIT "A"

# CONTENTS

| Section | | Page |
|---|---|---|
| **1.** | **Nylic Membership** | 1 |
| | a. Conditions of Nylic Membership | 1 |
| | b. Termination of Nylic Membership | 2 |
| **2.** | **Definitions** | 2 |
| | a. Nylic Year | 2 |
| | b. Nylic Count Insurance | 2 |
| | c. Persisting Insurance | 3 |
| **3.** | **Drawing Nylic Income** | 3 |
| | a. Base | 3 |
| | b. Rates | 5 |
| | c. Method of Calculation | 5 |
| **4.** | **Senior Nylic Income Beginning in the 21st Nylic Year** | 5 |
| | a. Base | 5 |
| | b. Rate | 6 |
| | c. Method of Calculation | 6 |
| **5.** | **Increases in Senior Nylic Income** | 6 |
| | a. Base | 6 |
| | b. Rates | 7 |
| | c. Method of Calculation | 7 |
| **6.** | **Senior Nylic Income Reduced if Agent Has a Survivorship Arrangement under the Nylic Retirement Plan** | 7 |

# CONTENTS (continued)

| Section | Page |
|---|---|
| **7.**    Physical Incapacity Benefit | 7 |
|     a.    Physical Incapacity Benefit for Disabilities Commencing in Nylic Years 6 through 15 | 8 |
|     b.    Physical Incapacity Benefit for Disabilities Commencing in Nylic Years 16 through 20 | 8 |
|     c.    Physical Incapacity Benefit for Disabilities Commencing in Nylic Years 21 through 30 | 9 |
| **8.**    General Rules Applicable to the Calculation and Payment of Nylic Income | 9 |
|     a.    Date of Nylic Income Payments | 9 |
|     b.    Nylic Count Insurance — Additional Rules | 9 |
|     c.    Health Policies — Special Rules | 10 |
|     d.    Nylic Year in Which Nylic Count Insurance is Obtained | 10 |
|     e.    Agent's Indebtedness | 11 |
|     f.    Assignment of Nylic | 11 |
|     g.    Amendment | 11 |
|     h.    Exceptions | 11 |
| Table I   — Method of Calculating Monthly Drawing Nylic Income | 12 |
| Table II   — Method of Calculating Monthly Senior Nylic Income Beginning in the 21st Nylic Year | 13 |
| Table III — Method of Calculating Increases in Monthly Senior Nylic Income | 14 |
| Table IV — Illustrative Survivorship Arrangement Factors | 15 |
| Illustrations | 16 |
|    Method of Calculating Monthly Nylic Income | 17 |
|      Nylic Years 3 — 20 Inclusive | 17 |
|      Beginning in the 21st Nylic Year | 18 |
|      Beginning in the 26th Nylic Year | 19 |
|      Beginning in the 31st Nylic Year | 20 |
|      Beginning in the 36th Nylic Year | 21 |

## NYLIC NO. QN6-82

"Nylic" is derived from the initial letters of the words that make up the corporate name, New York Life Insurance Company (the Company). Nylic is not used here as a reference to the Company, but instead is a name for the contract under which an eligible Agent of the Company may become a member of a body of persistent and successful Agents and receive the benefits of that membership.

Agents of New York Life Insurance Company eligible to qualify for membership in Nylic are in business for themselves. The Agent is his or her own master. Within the authority granted by the Agent's Contract, and subject to its provisions, the Agent is free to operate without direction and control by the Company as to the persons from whom the Agent will obtain applications and as to the time, place, method and manner of obtaining applications and of performance under such contract.

The Agent's freedom of action and the Agent's earnings from the Nylic Contract are incentives for persistent and sustained production of new business. Nylic offers to each eligible Agent the opportunity, year after year, under specified conditions, to qualify for and to receive specified benefits based on the Agent's actual production results. These benefits are in addition to the commissions that are provided for in the Agent's Contract.

The Nylic Contract governs the payment of Nylic income, and consists of this Booklet and the Application for Membership in Nylic No. QN6-82. The Application must be signed by the Agent and approved by New York Life. The countersigned copy of the completed and approved Application should be kept with this Booklet.

### 1.  Nylic Membership

To apply for membership in Nylic, an Agent must operate under an Agent's Contract (Form QN6-82) for at least one year, and must submit to the Company a signed Application for Membership in Nylic No. QN6-82. If the Application for Membership in Nylic is approved by an Executive Officer of the Company, a copy of the countersigned and approved Application will be returned to the Agent, and membership in Nylic will begin with the effective date of the Agent's Contract (Form QN6-82).

#### a.  *Conditions of Nylic Membership*

To qualify for and maintain membership in Nylic, an Agent must continuously comply with the following Conditions from the effective date of his or her Agent's Contract (Form QN6-82):

(1)  Operate under an Agent's Contract (Form QN6-82, or any subsequent contract designated in writing by an Executive Officer of the Company as one under which the Agent will be eligible for a Nylic Contract) and comply with all its terms; and

(2)  Obtain Nylic Count Insurance in each Nylic Year of not less than $250,000 (health policies and policies on the Agent's life will not count toward the $250,000 requirement, although they may count in determining Nylic income); and

(3)  Not engage in any other business or occupation for remuneration or profit without the written consent of the Company; and

(4)  Not represent any other insurance company.

1

b.   *Termination of Nylic Membership*

An Agent's Nylic membership will terminate when:

(1)   The Agent dies; or

(2)   His or her Agent's Contract (Form QN6-82) is terminated, whether with or without cause; or

(3)   The Agent retires or reaches his or her latest possible retirement date under the Nylic Retirement Plan; or

(4)   The Agent begins to receive monthly Physical Incapacity Income payments; or

(5)   The Agent fails to comply at any time with any of the Conditions of Subsection 1.a. above concerning Nylic membership (except that the $250,000 production requirement of Condition (2) will not apply after the Agent has completed 30 Nylic Years).

Nylic membership will also terminate upon written notice by the Company if the Agent fails to comply with any other terms or provisions of this Contract. Termination of Nylic membership will terminate the Nylic Contract and the Agent's rights and benefits under the Nylic Contract, and no further payments of any kind will be due under it (except as provided in Section 7 on Physical Incapacity Benefits).

## 2.   Definitions

"Nylic Year", "Nylic Count Insurance", and "Persisting Insurance" have the meanings set forth below. These terms are used in Sections 3, 4, 5, and 7, which describe the calculation of Nylic Income and Physical Incapacity Income, and are also used in other sections of this Contract.

a.   *Nylic Year*

A Nylic Year consists of 12 consecutive calendar months of an Agent's Nylic membership and coincides with each Contract Year as defined in his or her Agent's Contract (Form QN6-82).

An Agent's first Nylic Year begins, subject to the conditions in Section 1, on the effective date of his or her Agent's Contract and ends on the last day of the same calendar month in the following calendar year. Each Nylic Year thereafter consists of the following 12 consecutive calendar months.

b.   *Nylic Count Insurance*

Nylic Count Insurance is the basic face amount (except as otherwise designated in writing by an Executive Officer of the Company) of New York Life individual policies of life and endowment insurance issued on applications personally obtained by the Agent, on which at least one full year's premium has been paid to, and received by, the Company in due course. If a policy lapses, is cancelled, matures, or otherwise terminates before such payment and receipt have occurred, the policy will not count for Nylic.

The following policies are ineligible to count for Nylic: term insurance of whatever form, annuities, group insurance, single premium insurance, and other policies designated in writing by an Executive Officer of the Company as ineligible to count for Nylic.

2

Non-cancellable health policies and guaranteed renewable health policies issued on applications personally obtained by the Agent, on which at least one full year's premium has been paid to, and received by, the Company in due course, will also count for Nylic. The additional Nylic income payable with respect to health policies is calculated separately according to the formulas in Sections 3, 4, 5, and 7, after first applying a formula that converts health premiums into a face amount, as described in Subsection 8.c.

c.  *Persisting Insurance*

Persisting Insurance at the end of any Nylic Year is the Nylic Count Insurance remaining in force at the end of that Nylic Year. However, Nylic Count Insurance will not be considered in force for this purpose if it is under a nonforfeiture provision or has any premium in default.

## 3.  Drawing Nylic Income

Drawing Nylic Income is payable monthly to a Nylic member in the member's 3rd through 20th Nylic Years. Drawing Nylic Income will cease in any year with the last monthly payment due immediately prior to the time the Agent's membership in Nylic terminates, as provided in Subsection 1.b. Moreover, Drawing Nylic Income is not payable while the member is receiving Physical Incapacity Income under Subsection 7.a. or b.

The amount of monthly Drawing Nylic Income is determined by multiplying an income base by the applicable monthly income rate, as follows:

a.  *Base*

The base for Drawing Nylic Income payable in a particular Nylic Year is the amount of Nylic Count Insurance obtained in a specified earlier Nylic Year that is Persisting Insurance at the end of the Nylic Year immediately preceding payment, as follows:

*Nylic Year 3.* The base for Drawing Nylic Income payable in Nylic Year 3 is the Nylic Count Insurance obtained in Nylic Year 1 that is Persisting Insurance at the end of Nylic Year 2.

*Nylic Year 4.* The base for Drawing Nylic Income payable in Nylic Year 4 is the Nylic Count Insurance obtained in Nylic Year 2 that is Persisting Insurance at the end of Nylic Year 3.

*Nylic Year 5.* The base for Drawing Nylic Income payable in Nylic Year 5 is the Nylic Count Insurance obtained in Nylic Year 3 that is Persisting Insurance at the end of Nylic Year 4.

*Nylic Year 6.* The base for Drawing Nylic Income payable in Nylic Year 6 is the Nylic Count Insurance obtained in Nylic Year 1 that is Persisting Insurance at the end of Nylic Year 5.

*Nylic Year 7.* The base for Drawing Nylic Income payable in Nylic Year 7 is the Nylic Count Insurance obtained in Nylic Year 2 that is Persisting Insurance at the end of Nylic Year 6.

*Nylic Year 8.* The base for Drawing Nylic Income payable in Nylic Year 8 is the Nylic Count Insurance obtained in Nylic Year 3 that is Persisting Insurance at the end of Nylic Year 7.

3

NEW YORK LIFE          Fax:2125767421          Aug    2004  13:54     F.09

*Nylic Year 9*. The base for Drawing Nylic Income payable in Nylic Year 9 is the Nylic Count Insurance obtained in Nylic Year 4 that is Persisting Insurance at the end of Nylic Year 8.

*Nylic Year 10*. The base for Drawing Nylic Income payable in Nylic Year 10 is the Nylic Count Insurance obtained in Nylic Year 5 that is Persisting Insurance at the end of Nylic Year 9.

*Nylic Year 11*. The base for Drawing Nylic Income payable in Nylic Year 11 is the Nylic Count Insurance obtained in Nylic Year 6 that is Persisting Insurance at the end of Nylic Year 10.

*Nylic Year 12*. The base for Drawing Nylic Income payable in Nylic Year 12 is the Nylic Count Insurance obtained in Nylic Year 7 that is Persisting Insurance at the end of Nylic Year 11.

*Nylic Year 13*. The base for Drawing Nylic Income payable in Nylic Year 13 is the Nylic Count Insurance obtained in Nylic Year 8 that is Persisting Insurance at the end of Nylic Year 12.

*Nylic Year 14*. The base for Drawing Nylic Income payable in Nylic Year 14 is the Nylic Count Insurance obtained in Nylic Year 9 that is Persisting Insurance at the end of Nylic Year 13.

*Nylic Year 15*. The base for Drawing Nylic Income payable in Nylic Year 15 is the Nylic Count Insurance obtained in Nylic Year 10 that is Persisting Insurance at the end of Nylic Year 14.

*Nylic Year 16*. The base for Drawing Nylic Income payable in Nylic Year 16 is the Nylic Count Insurance obtained in Nylic Year 11 that is Persisting Insurance at the end of Nylic Year 15.

*Nylic Year 17*. The base for Drawing Nylic Income payable in Nylic Year 17 is the Nylic Count Insurance obtained in Nylic Year 12 that is Persisting Insurance at the end of Nylic Year 16.

*Nylic Year 18*. The base for Drawing Nylic Income payable in Nylic Year 18 is the Nylic Count Insurance obtained in Nylic Year 13 that is Persisting Insurance at the end of Nylic Year 17.

*Nylic Year 19*. The base for Drawing Nylic Income payable in Nylic Year 19 is the Nylic Count Insurance obtained in Nylic Year 14 that is Persisting Insurance at the end of Nylic Year 18.

*Nylic Year 20*. The base for Drawing Nylic Income payable in Nylic Year 20 is the Nylic Count Insurance obtained in Nylic Year 15 that is Persisting Insurance at the end of Nylic Year 19.

b.  *Rates*

The rates of monthly Drawing Nylic Income per $1,000 of Drawing Nylic Income base are as follows:

| For Monthly Drawing Nylic Income Payable In | Monthly Drawing Nylic Income Rate per $1,000 of Base |
|---|---|
| Nylic Years 3 through 5 | $.40 |
| Nylic Years 6 through 10 | .60 |
| Nylic Years 11 through 15 | .80 |
| Nylic Years 16 through 20 | 1.00 |

c.  *Method of Calculation*

The method of calculating the monthly Drawing Nylic Income payable in any Nylic Year is shown in Table I.

## 4.   Senior Nylic Income Beginning in the 21st Nylic Year

Senior Nylic Income is payable monthly to a Nylic member beginning in the member's 21st consecutive Nylic Year, and continuing in each of the member's Nylic Years after that. Senior Nylic Income will cease in any year with the last monthly payment due immediately prior to the time the Agent's membership in Nylic terminates, as provided in Subsection 1.b.

The amount of monthly Senior Nylic Income beginning in a member's 21st Nylic Year is determined by multiplying the income base by the monthly income rate, as follows:

a.  *Base*

Senior Nylic Income payable beginning in the 21st Nylic Year is based on the amount and persistency of the Nylic Count Insurance obtained during the prior 20 Nylic Years. To derive this income base, the three factors described below are averaged by totalling them and dividing by three.

*Factor A*

The Nylic Count Insurance obtained in each of Nylic Years 1 through 15, respectively, that was Persisting Insurance at the end of the 4th Nylic Year following the Nylic Year in which it was obtained is averaged by totalling these Persisting Insurance amounts and dividing by 15.

*Factor B*

The Nylic Count Insurance obtained in each of Nylic Years 1 through 15, respectively, that was Persisting Insurance at the end of the 9th Nylic Year following the Nylic Year in which it was obtained, or at the end of the 20th Nylic Year, if sooner, is averaged by totalling these Persisting Insurance amounts and dividing by 15.

NEW YORK LIFE          Fax:2125767421          Aug __ 2004  13:54    P. 11

*Factor C*

The amounts of Nylic Count Insurance obtained in each of Nylic Years 16 through 20 are averaged by totalling these amounts and dividing by 5. This average amount of Nylic Count Insurance is then multiplied by a persistency ratio equal to the proportion of all Nylic Count Insurance obtained in Nylic Years 11 through 19 that is Persisting Insurance at the end of the 20th Nylic Year.

b.    *Rate*

The monthly rate of Senior Nylic Income payable beginning in the 21st Nylic Year is $1.10 per $1,000 of base.

c.    *Method of Calculation*

The method of calculating the monthly Senior Nylic Income payable beginning in the 21st Nylic Year is shown in Table II.

**5.    Increases in Senior Nylic Income**

Monthly Senior Nylic Income will be increased at the beginning of a Nylic member's 26th consecutive Nylic Year and again at the beginning of each 5th consecutive year of Nylic membership after that. After it starts, each increase in Senior Nylic Income will be payable as long as the Agent is a member of Nylic, and will cease with the last monthly payment due immediately prior to the time the Agent's membership in Nylic terminates, as provided in Subsection 1.b.

The amount of each increase in monthly Senior Nylic Income is determined by multiplying an income base by the applicable monthly income rate, as follows:

a.    *Base*

Increases in Senior Nylic Income beginning in the 26th Nylic Year, and after each additional period of 5 Nylic Years, are based on the amount and persistency of the Nylic Count Insurance obtained during the 10 Nylic Years immediately preceding the Nylic Year in which the increase begins.

To determine the appropriate income base, the amounts of Nylic Count Insurance obtained during the prior 10 year period are averaged by totalling these amounts and dividing by 10. This average amount of Nylic Count Insurance is then multiplied by a persistency ratio equal to the proportion of all Nylic Count Insurance obtained during the first 9 of those Nylic Years that is Persisting Insurance at the end of that period of 10 Nylic Years.

6

**b.  Rates**

The rates of monthly Senior Nylic Income increase per $1,000 of base are as follows:

| For Increase in Monthly Senior Nylic Income Starting In | Monthly Rate of Increase in Senior Nylic Income Per $1,000 of Base |
|---|---|
| Nylic Year 26 | $.50 |
| Nylic Year 31 | .60 |
| Nylic Year 36 | .70 |
| Nylic Year 41 | .75 |
| Nylic Year 46 | .80 |
| Nylic Year 51 | .85 |

**c.  Method of Calculation**

The method of calculating increases in monthly Senior Nylic Income is shown in Table III.

**6.  Senior Nylic Income Reduced if Agent Has a Survivorship Arrangement under the Nylic Retirement Plan**

The Senior Nylic Income formulas set forth in the preceding pages are used to calculate Senior Nylic Income payable to Nylic members who have a Single Life Arrangement under the Nylic Retirement Plan. Nylic members who have a Survivorship Arrangement under the Nylic Retirement Plan will have their Senior Nylic Income reduced in accordance with factors adopted by the Company for that purpose, as illustrated in Table IV.

Rules and other details concerning the Single Life and Survivorship Arrangements appear in the Nylic Retirement Plan.

**7.  Physical Incapacity Benefit**

A Nylic member who becomes totally disabled after having completed at least 5 Nylic Years, and as a result is totally incapacitated for work of any kind, will receive a Physical Incapacity Benefit under this Section.

To receive a Physical Incapacity Benefit, an Agent must furnish satisfactory proof of total disability and continuing total disability as required by the Company.

As described in Subsections a., b., and c. below, the benefit that an Agent receives will depend on the Nylic Year in which disability commences.

7

a.    *Physical Incapacity Benefit for Disabilities Commencing in Nylic Years 6 through 15*

Nylic members who become totally disabled in Nylic Years 6 through 15 will receive a monthly Physical Incapacity Income payment in accordance with Paragraphs (1) and (2) below, and Nylic membership will terminate on the last day of the month preceding the month in which the Physical Incapacity Income payments begin.

Physical Incapacity Income payments will begin one month after the due date of the last preceding Drawing Nylic Income payment provided under this Contract, and will be paid monthly during the continuance of total disability until the end of a period not exceeding 5 years in the aggregate, or if earlier, what would have been the Agent's latest possible retirement date under the Nylic Retirement Plan.

While Physical Incapacity Income is being paid, Drawing Nylic Income ceases, and no further Drawing Nylic Income is due.

(1)    *Agents Disabled in Nylic Years 6 through 10.* The amount of monthly Physical Incapacity Income will be the average of the monthly Drawing Nylic Income received in Nylic Years 6 through 10 and prior to disability, reduced by any Nylic Retirement Plan benefit received by the Agent under a Single Life Arrangement, or if received under a Survivorship Arrangement, the Single Life amount on which the Survivorship Arrangement amount is based.

(2)    *Agents Disabled in Nylic Years 11 through 15.* The amount of monthly Physical Incapacity Income will be the average of the monthly Drawing Nylic Income received in Nylic Years 11 through 15 and prior to disability, reduced by any Nylic Retirement Plan benefit received by the Agent under a Single Life Arrangement, or if received under a Survivorship Arrangement, the Single Life amount on which the Survivorship Arrangement amount is based.

b.    *Physical Incapacity Benefit for Disabilities Commencing in Nylic Years 16 through 20*

Nylic members who become totally disabled in Nylic Years 16 through 20 will receive a Physical Incapacity Benefit in accordance with Paragraphs (1) and (2) below:

(1)    *If the Agent is not eligible for a Disability Retirement Income* under the Nylic Retirement Plan because he or she is not totally and permanently disabled, the Company will waive the $250,000 production requirement in Paragraph (2) of Subsection 1.a. of his or her Nylic Contract for each continuous Nylic Year of disability, including the year of recovery.

If all other conditions of Nylic membership are met while the production requirement is being waived, the Agent will continue under this Nylic Contract and receive Nylic Income as if the disability had not occurred. Any Senior Nylic Income to which the Agent may become entitled will be determined on the basis of the Nylic Count Insurance actually obtained by the Agent. If the Agent obtains no Nylic Count Insurance in the year for which the production requirement is being waived, then zero will be the amount of Nylic Count Insurance obtained in that Nylic Year.

(2)    *If the Agent is eligible for a Disability Retirement Income* under the Nylic Retirement Plan because he or she is totally and permanently disabled, the Agent's Nylic membership will terminate on the last day preceding the effective date of the Agent's

Disability Retirement. The Agent will receive monthly Physical Incapacity Income in an amount equal to the Drawing Nylic Income that would have been payable had the Agent not become disabled, reduced by any Nylic Retirement Plan benefit received by the Agent under a Single Life Arrangement, or if received under a Survivorship Arrangement, the Single Life amount on which the Survivorship Arrangement amount is based.

Physical Incapacity Income payments will begin one month after the due date of the last preceding Drawing Nylic Income payment provided under this Contract, and will be paid during the continuance of total and permanent disability until the end of what would have been the Agent's 20th Nylic Year, or if earlier, what would have been the Agent's latest possible retirement date under the Nylic Retirement Plan.

While Physical Incapacity Income is being paid, Drawing Nylic Income ceases and no further Drawing Nylic Income is due.

c.  *Physical Incapacity Benefit for Disabilities Commencing in Nylic Years 21 through 30*

The following Paragraphs (1) and (2) apply to Nylic members who become totally disabled in Nylic Years 21 through 30:

(1)  *If the Agent is not eligible for a Disability Retirement Income* under the Nylic Retirement Plan because he or she is not totally and permanently disabled, the Company will waive the $250,000 production requirement in Paragraph (2) of Subsection 1.a. of his or her Nylic Contract for each continuous Nylic Year of disability, including the year of recovery.

- If all other conditions of Nylic membership are met while the production requirement is being waived, the Agent will continue under this Nylic Contract and receive Senior Nylic Income as if the disability had not occurred. Any increases in Senior Nylic Income to which the Agent may become entitled will be determined on the basis of the Nylic Count Insurance actually obtained by the Agent. If the Agent obtains no Nylic Count Insurance in the year for which the production requirement is being waived then zero will be the amount of Nylic Count Insurance obtained in that Nylic Year.

(2)  *If the Agent is eligible for a Disability Retirement Income* under the Nylic Retirement Plan because he or she is totally and permanently disabled, the Agent's Nylic membership will terminate with the last day preceding the effective date of the Agent's Disability Retirement, and no further income will be due under this Contract.

8.  **General Rules Applicable to the Calculation and Payment of Nylic Income**

a.  *Date of Nylic Income Payments*

The first monthly Nylic Income payment in any Nylic Year is due on the last day of the first month after the preceding Nylic Year ends. Subsequent monthly payments are due on the last day of each succeeding month.

b.  *Nylic Count Insurance — Additional Rules*

The definition of Nylic Count Insurance in Subsection 2.b. of this Contract will be subject to the following additional rules:

(1)  *Rescission.* Rescinded policies will not be considered Nylic Count Insurance.

(2)  *Lapse and Reinstatement.* Policies that lapse and are later reinstated will be treated under this Contract as if there had been no lapse.

9

NEW YORK LIFE          Fax:2125767421          Aug  1 2004  13:35    P. 15

    (3)   *Shared Commissions.* If an Agent shares commissions on a policy with another Agent, the amount of any Nylic Count Insurance must be shared in the same proportion as are the commissions.

c.    *Health Policies — Special Rules*

    Nylic Income for health policies is calculated by determining a Commission Measure and then converting that Commission Measure into a face amount at a rate of $1,000 face amount for each $20 of Commission Measure. Commission Measure is derived by multiplying the policy's total yearly premium, as described below, by the first year commission rate.

    The total yearly premium used to determine Nylic Count Insurance is the total yearly premium in effect when the final portion of the first year's premium is paid.

    The total yearly premium used to determine Persisting Insurance at the end of any Nylic Year is the total yearly premium in effect at the end of that Nylic Year.

d.    *Nylic Year in Which Nylic Count Insurance Is Obtained*

    The Nylic Year in which Nylic Count Insurance will be considered to have been obtained is determined by the date of completion of the initial Part II (Medical or Non-Medical) of the Application, except as follows:

    (1)   If an additional policy requiring no new medical examination is applied for, the date of the Agent's request for issue, if later than the date of Part II, will determine the Nylic Year.

    (2)   Where term insurance is followed in the same policy by life or endowment insurance on an attained age basis, the effective date of the permanent insurance will determine the Nylic Year.

    (3)   Where term insurance is converted on an attained age basis, the Nylic Year will be determined by the date of the request to convert.

    (4)   Where term insurance is converted on an original age basis, the Nylic Year will be determined by the date of the request to convert; however, if all of the Agents effecting such a conversion are original Agents and are not retired under the Nylic Retirement Plan, and all elect to receive credit on an original age basis, the Nylic Year will instead be determined by the date of Part II of the application for the original term coverage.

    (5)   For a policy issued on a Guaranteed Issue Basis where a Part II is not required, the date of Part I will determine the Nylic Year.

    (6)   For a policy issued upon exercise of an option to purchase an additional policy where a Part II is not required, the policy date will determine the Nylic Year.

e.   *Agent's Indebtedness*

The Company has a paramount and prior lien upon all Drawing Nylic Income, Senior Nylic Income, and Physical Incapacity Income to satisfy any indebtedness of the Agent to the Company, and may apply any sums becoming due directly to the liquidation of such indebtedness.

The Company's failure to apply sums will not impair its right to do so, or be deemed a waiver of its lien on other sums becoming due.

f.   *Assignment of Nylic*

The right to receive Drawing Nylic Income, Senior Nylic Income and Physical Incapacity Income under this Contract may be assigned without the written consent of the Company, but the Company must receive reasonable proof of such assignment before it commences payment to an assignee. However, regardless of any assignment, no further payments of Drawing Nylic Income or Senior Nylic Income are due or payable when Nylic membership is terminated as provided in Subsection 1b. The amounts received by an Agent under the Nylic Retirement Plan are not assignable. Any amounts which are assigned under this contract are subject to the paramount and prior lien given to the Company by Subsection 8e, above.

g.   Amendment

The Company reserves the right to amend or repeal the terms and provisions of this Contract at any time. Any such amendment or repeal will affect future business only.

In addition, no change will be made that increases the amount of Nylic Count Insurance a member of Nylic must obtain to maintain membership, nor will any adverse change be made in the calculation of Nylic Income to such member.

h.   *Exceptions*

If the terms and provisions of this Contract would otherwise act unfairly on an Agent in an individual case, and if the facts and circumstances warrant, the Company may make appropriate exceptions to these terms and provisions. In no case shall an exception constitute a waiver of the terms and provisions of this Contract.

11

NEW YORK LIFE          Fax:2125767421          Aug 11 2004  13:35     P. 17

## TABLE I
## METHOD OF CALCULATING MONTHLY DRAWING NYLIC INCOME

| I | | II | | III |
|---|---|---|---|---|
| | | Drawing Nylic Income Base | | |
| Amount of Monthly Drawing Nylic Income Payable in Nylic Year | = | (a) Amount of Nylic Count Insurance Obtained in Nylic Year | (b) Persisting Insurance At End of Nylic Year | x | Monthly Rate of Drawing Nylic Income per $1,000 of Drawing Nylic Income Base |
| 3 | | 1 | 2 | $ .40 |
| 4 | | 2 | 3 | .40 |
| 5 | | 3 | 4 | .40 |
| 6 | | 1 | 5 | .60 |
| 7 | | 2 | 6 | .60 |
| 8 | | 3 | 7 | .60 |
| 9 | | 4 | 8 | .60 |
| 10 | | 5 | 9 | .60 |
| 11 | | 6 | 10 | .80 |
| 12 | | 7 | 11 | .80 |
| 13 | | 8 | 12 | .80 |
| 14 | | 9 | 13 | .80 |
| 15 | | 10 | 14 | .80 |
| 16 | | 11 | 15 | 1.00 |
| 17 | | 12 | 16 | 1.00 |
| 18 | | 13 | 17 | 1.00 |
| 19 | | 14 | 18 | 1.00 |
| 20 | | 15 | 19 | 1.00 |

Monthly Drawing Nylic Income payable in the Nylic Year in Column I equals the amount of Drawing Nylic Income base in Column II multiplied by the Drawing Nylic Income rate in Column III.

12

NEW YORK LIFE    Fax:2125767421    Aug 11 2004 13:56    P. 18

# TABLE II

## METHOD OF CALCULATING MONTHLY SENIOR NYLIC INCOME BEGINNING IN THE 21ST NYLIC YEAR

| Factor A | | Factor B | | Factor C | | |
|---|---|---|---|---|---|---|
| I | II | III | IV | V | VI | VII |
| Amount of Nylic Count Insurance Obtained in Nylic Year *that is* | Persisting Insurance At End of Nylic Year | Amount of Nylic Count Insurance Obtained in Nylic Year *that is* | Persisting Insurance At End of Nylic Year | Amount of Nylic Count Insurance Obtained in Nylic Year | Amount of Nylic Count Insurance Obtained in Nylic Year *that is* | Persisting Insurance At End of Nylic Year |
| 1 | 5 | 1 | 10 | 16 | 11 | 20 |
| 2 | 6 | 2 | 11 | 17 | 12 | 20 |
| 3 | 7 | 3 | 12 | 18 | 13 | 20 |
| 4 | 8 | 4 | 13 | 19 | 14 | 20 |
| 5 | 9 | 5 | 14 | 20 | 15 | 20 |
| 6 | 10 | 6 | 15 | | 16 | 20 |
| 7 | 11 | 7 | 16 | | 17 | 20 |
| 8 | 12 | 8 | 17 | | 18 | 20 |
| 9 | 13 | 9 | 18 | | 19 | 20 |
| 10 | 14 | 10 | 19 | | | |
| 11 | 15 | 11 | 20 | | | |
| 12 | 16 | 12 | 20 | | | |
| 13 | 17 | 13 | 20 | | | |
| 14 | 18 | 14 | 20 | | | |
| 15 | 19 | 15 | 20 | | | |
| | Total Col. II | | Total Col. IV | Total Col. V | Total Col. VI | Total Col. VII |

Factor A = Total of the amounts in Col. II divided by 15

Factor B = Total of the amounts in Col. IV divided by 15

Factor C = The total of the amounts in Col. V divided by 5, and multiplied by the total of the amounts in Col. VII divided by the total of the amounts in Col. VI

$$= \frac{\text{Total Amts. Col. II}}{15}$$

$$= \frac{\text{Total Amts. Col. IV}}{15}$$

$$= \frac{\text{Total Amts. Col. V}}{5} \times \frac{\text{Total Amts. Col. VII}}{\text{Total Amts. Col. VI}}$$

Monthly Senior Nylic Income beginning in Nylic Year 21 = $\frac{(\text{Factor A} + \text{Factor B} + \text{Factor C})}{3} \times \frac{(\$1.10)}{(\$1,000)}$

## TABLE III
## METHOD OF CALCULATING INCREASES IN MONTHLY SENIOR NYLIC INCOME

| I | | II | | | III |
|---|---|---|---|---|---|
| | | Base For Increase in Senior Nylic Income is determined by dividing the amount in Col. (a) below by 10, and then multiplying by a persistency ratio, which is equal to the amount in Col. (c) below divided by the amount in Col. (b) below. | | | |
| | | (a) | (b) | (c) | |
| The Amount of Increase in Monthly Senior Nylic Income Beginning in Nylic Year | = | The Total Amount of Nylic Count Insurance Obtained in Nylic Years *denom* | The Total Amount of Nylic Count Insurance Obtained in Nylic Years | *that is* | Persisting Insurance at the End of Nytic Year *numer.* | x | The Monthly Rate of Increase in Senior Nylic Income per $1,000 of Base |
| 26 | | 16-25 | 16-24 | | 25 | | $ .50 |
| 31 | | 21-30 | 21-29 | | 30 | | .60 |
| 36 | | 26-35 | 26-34 | | 35 | | .70 |
| 41 | | 31-40 | 31-39 | | 40 | | .75 |
| 46 | | 36-45 | 36-44 | | 45 | | .80 |
| 51 | | 41-50 | 41-49 | | 50 | | .85 |

The Monthly rate of increase in Senior Nylic Income that begins in the Nylic Year in Column I equals the Base for Senior Nylic Income determined in Column II multiplied by the Monthly Rate of Increase in Senior Nylic Income in Column III.

14

NEW YORK LIFE          Fax:2125767421                Aug   2004  13:36   P. 20

## TABLE IV

## ILLUSTRATIVE SURVIVORSHIP ARRANGEMENT FACTORS

| Age Last Birthday As Of the Effective Date of the Survivorship Arrangement or Any Subsequent Increase in Senior Nylic Income, as Applicable | | Monthly Senior Nylic Income for an Agent Under a Survivorship Arrangement (per $100 of Monthly Senior Nylic Income, or Increase in Senior Nylic Income, Otherwise Payable to an Agent Under a Single Life Arrangement) |
|---|---|---|
| **Agent** | **Spouse** | |
| 45 | 40 | $88.24 |
|  | 45 | 90.44 |
| 50 | 45 | 86.76 |
|  | 50 | 89.34 |
| 55 | 50 | 85.16 |
|  | 55 | 88.18 |
| 60 | 55 | 83.48 |
|  | 60 | 87.02 |
| 65 | 60 | 81.78 |
|  | 65 | 85.92 |

Corresponding figures for other combinations of ages will be furnished upon request.

NEW YORK LIFE          Fax:2125767421          Aug . 2004  13:38    P.21

## ILLUSTRATIONS OF NYLIC INCOME
### BASED ON 35 YEARS OF
### ACTIVE PRODUCTION UNDER NYLIC NO. QN6-82

The illustrations that follow are solely for the purpose of illustrating the METHOD of calculating monthly income benefits and for such purpose are based on the indicated assumptions as to (1) yearly amounts of Nylic Count Insurance and (2) the persistency of that insurance. In actual practice, the amounts of Nylic Count Insurance and the persistency thereof applicable to each individual Agent, would, of course, be used to calculate the amount of income applicable to that individual Agent.

16

NEW YORK LIF     Fax:2125767421     3 11 2004  13:56     P.22

# ILLUSTRATION OF METHOD OF CALCULATING MONTHLY NYLIC INCOME IN NYLIC YEARS 3-20 INCLUSIVE

| Assumed "Nylic Count Insurance" During Indicated Nylic Year | Assumed Persistency | "Persisting Insurance" at the end of Indicated Nylic Year = (1) × (2) | MONTHLY NYLIC INCOME Rate per $1,000 to be applied to "Persisting Insurance" in Col. (3) | Payable in Indicated Nylic Year = (3) × (4) |
|---|---|---|---|---|
| (1) | (2) | (3) | (4) | (5) |
| 1st Year .... $2,000,000 | .894 | 2nd Year .... $1,788,000 | $ .40 | 3rd Year ...... $ 715.20 |
| 2nd Year ... 2,000,000 | .894 | 3rd Year .... 1,788,000 | .40 | 4th Year ...... 715.20 |
| 3rd Year.... 2,000,000 | .894 | 4th Year.... 1,788,000 | .40 | 5th Year ...... 715.20 |
| 1st Year .... $2,000,000 | .748 | 5th Year .... $1,496,000 | $ .60 | 6th Year ...... $ 897.60 |
| 2nd Year ... 2,000,000 | .748 | 6th Year .... 1,496,000 | .60 | 7th Year ...... 897.60 |
| 3rd Year.... 2,000,000 | .748 | 7th Year .... 1,496,000 | .60 | 8th Year ...... 897.60 |
| 4th Year.... 2,000,000 | .748 | 8th Year .... 1,496,000 | .60 | 9th Year ...... 897.60 |
| 5th Year.... 2,000,000 | .748 | 9th Year .... 1,496,000 | .60 | 10th Year ...... 897.60 |
| 6th Year.... $2,000,000 | .748 | 10th Year.... $1,496,000 | $ .80 | 11th Year ...... $1,196.80 |
| 7th Year.... 2,000,000 | .748 | 11th Year.... 1,496,000 | .80 | 12th Year ..... 1,196.80 |
| 8th Year.... 2,000,000 | .748 | 12th Year.... 1,496,000 | .80 | 13th Year ..... 1,196.80 |
| 9th Year.... 2,000,000 | .748 | 13th Year.... 1,496,000 | .80 | 14th Year ..... 1,196.80 |
| 10th Year.... 2,000,000 | .748 | 14th Year.... 1,496,000 | .80 | 15th Year ..... 1,196.80 |
| 11th Year.... $2,000,000 | .748 | 15th Year.... $1,496,000 | $1.00 | 16th Year ..... $1,496.00 |
| 12th Year.... 2,000,000 | .748 | 16th Year.... 1,496,000 | 1.00 | 17th Year ..... 1,496.00 |
| 13th Year.... 2,000,000 | .748 | 17th Year.... 1,496,000 | 1.00 | 18th Year ..... 1,496.00 |
| 14th Year.... 2,000,000 | .748 | 18th Year.... 1,496,000 | 1.00 | 19th Year ..... 1,496.00 |
| 15th Year.... 2,000,000 | .748 | 19th Year.... 1,496,000 | 1.00 | 20th Year ..... 1,496.00 |

NEW YORK LIFE    Fax:2125767421    Aug 2004 13:36   P.23

# ILLUSTRATION OF METHOD OF CALCULATING
## MONTHLY SENIOR NYLIC INCOME BEGINNING IN 21ST
## CONSECUTIVE YEAR OF QUALIFIED NYLIC MEMBERSHIP

| Assumed "Nylic Count Insurance" During Indicated Nylic Year | Factor A | | | Factor B | |
|---|---|---|---|---|---|
| | Assumed Persistency | "Persisting Insurance" at the end of Indicated Nylic Year = (1) × (2) | | Assumed Persistency | "Persisting Insurance" at the end of Indicated Nylic Year = (1) × (4) |
| (1) | (2) | (3) | | (4) | (5) |
| 1st Year .... $2,000,000 | .748 | 5th Year ... $1,496,000 | | .604 | 10th Year ... $1,208,000 |
| 2nd Year ... 2,000,000 | .748 | 6th Year ... 1,496,000 | | .604 | 11th Year ... 1,208,000 |
| 3rd Year ... 2,000,000 | .748 | 7th Year ... 1,496,000 | | .604 | 12th Year ... 1,208,000 |
| 4th Year ... 2,000,000 | .748 | 8th Year ... 1,496,000 | | .604 | 13th Year ... 1,208,000 |
| 5th Year ... 2,000,000 | .748 | 9th Year ... 1,496,000 | | .604 | 14th Year ... 1,208,000 |
| 6th Year ... 2,000,000 | .748 | 10th Year ... 1,496,000 | | .604 | 15th Year ... 1,208,000 |
| 7th Year ... 2,000,000 | .748 | 11th Year ... 1,496,000 | | .604 | 16th Year ... 1,208,000 |
| 8th Year ... 2,000,000 | .748 | 12th Year ... 1,496,000 | | .604 | 17th Year ... 1,208,000 |
| 9th Year ... 2,000,000 | .748 | 13th Year ... 1,496,000 | | .604 | 18th Year ... 1,208,000 |
| 10th Year ... 2,000,000 | .748 | 14th Year ... 1,496,000 | | .604 | 19th Year ... 1,208,000 |
| 11th Year ... 2,000,000 | .748 | 15th Year ... 1,496,000 | | .604 | 20th Year ... 1,208,000 |
| 12th Year ... 2,000,000 | .748 | 16th Year ... 1,496,000 | | .628 | 20th Year ... 1,256,000 |
| 13th Year ... 2,000,000 | .748 | 17th Year ... 1,496,000 | | .653 | 20th Year ... 1,306,000 |
| 14th Year ... 2,000,000 | .748 | 18th Year ... 1,496,000 | | .681 | 20th Year ... 1,362,000 |
| 15th Year ... 2,000,000 | .748 | 19th Year ... 1,496,000 | | .713 | 20th Year ... 1,426,000 |

Total = $22,440,000
Total divided by 15 =
FACTOR A = $ 1,496,000

Total = $18,636,000
Total divided by 15 =
FACTOR B = $ 1,242,533

### Factor C

| Assumed "Nylic Count Insurance" During Indicated Nylic Year | Assumed "Nylic Count Insurance" During Indicated Nylic Year | Assumed Persistency | "Persisting Insurance" at the end of Indicated Nylic Year = (7) × (8) |
|---|---|---|---|
| (6) | (7) | (8) | (9) |
| 16th Year .... $ 2,000,000 | 11th Year .... $ 2,000,000 | .604 | 20th Year .... $ 1,208,000 |
| 17th Year .... 2,000,000 | 12th Year .... 2,000,000 | .628 | 20th Year .... 1,256,000 |
| 18th Year .... 2,000,000 | 13th Year .... 2,000,000 | .653 | 20th Year .... 1,306,000 |
| 19th Year .... 2,000,000 | 14th Year .... 2,000,000 | .681 | 20th Year .... 1,362,000 |
| 20th Year .... 2,000,000 | 15th Year .... 2,000,000 | .713 | 20th Year .... 1,426,000 |
| | 16th Year .... 2,000,000 | .748 | 20th Year .... 1,496,000 |
| Total = $10,000,000 | 17th Year .... 2,000,000 | .788 | 20th Year .... 1,576,000 |
| | 18th Year .... 2,000,000 | .835 | 20th Year .... 1,670,000 |
| | 19th Year .... 2,000,000 | .894 | 20th Year .... 1,788,000 |

(b) Total = $18,000,000        (a) Total = $13,088,000

Percentage of (a) to (b) = $\frac{\$13,088,000}{\$18,000,000}$ = 72.71%

$10,000,000 multiplied by 72.71%, divided by 5 = FACTOR C = $1,454,200

Base for Monthly Senior Nylic Income beginning in 21st consecutive Nylic Year:

| FACTOR A | $1,496,000 |
|---|---|
| FACTOR B | 1,242,533 |
| FACTOR C | 1,454,200 |
| Total | = $4,192,733 |

Total divided by 3 = Base = $1,397,578

MONTHLY SENIOR NYLIC INCOME BEGINNING IN 21ST CONSECUTIVE NYLIC YEAR
is $1.10 per $1,000 of the $1,397,578 base, namely ............................ $1,537.34 monthly

## ILLUSTRATION OF METHOD OF CALCULATING
## INCREASE IN MONTHLY SENIOR NYLIC INCOME BEGINNING
## IN 26TH CONSECUTIVE YEAR OF QUALIFIED NYLIC MEMBERSHIP

| Assumed "Nylic Count Insurance" During Indicated Nylic Year (1) | | Assumed "Nylic Count Insurance" During Indicated Nylic Year (2) | | Assumed Persistency (3) | "Persisting Insurance" at the end of Indicated Nylic Year = (2) × (3) (4) | |
|---|---|---|---|---|---|---|
| 16th Year .... | $ 2,000,000 | 16th Year .... | $ 2,000,000 | .604 | 25th Year .... | $ 1,208,000 |
| 17th Year .... | 2,000,000 | 17th Year .... | 2,000,000 | .628 | 25th Year .... | 1,256,000 |
| 18th Year .... | 2,000,000 | 18th Year .... | 2,000,000 | .653 | 25th Year .... | 1,306,000 |
| 19th Year .... | 2,000,000 | 19th Year .... | 2,000,000 | .681 | 25th Year .... | 1,362,000 |
| 20th Year .... | 2,000,000 | 20th Year .... | 2,000,000 | .713 | 25th Year .... | 1,426,000 |
| 21st Year .... | 2,000,000 | 21st Year .... | 2,000,000 | .748 | 25th Year .... | 1,496,000 |
| 22nd Year .... | 2,000,000 | 22nd Year .... | 2,000,000 | .788 | 25th Year .... | 1,576,000 |
| 23rd Year .... | 2,000,000 | 23rd Year .... | 2,000,000 | .835 | 25th Year .... | 1,670,000 |
| 24th Year .... | 2,000,000 | 24th Year .... | 2,000,000 | .894 | 25th Year .... | 1,788,000 |
| 25th Year .... | 2,000,000 | | | | | |
| Total = $20,000,000 | | (b) Total = $18,000,000 | | | (a) Total = $13,088,000 | |

Percentage of (a) to (b) = $\frac{\$13,088,000}{\$18,000,000}$ = 72.71%

Base for Increase in Monthly Senior Nylic Income beginning in 26th consecutive Nylic Year = $20,000,000 multiplied by 72.71%, divided by 10 = $1,454,200.

INCREASE IN MONTHLY SENIOR NYLIC INCOME BEGINNING IN 26TH CONSECUTIVE NYLIC YEAR

is $5.00 per $1,000 of the $1,454,200 base, namely ..................................... $727.10 monthly

TOTAL MONTHLY SENIOR NYLIC INCOME BEGINNING IN 26TH CONSECUTIVE NYLIC YEAR is the sum of:

(i) Monthly Senior Nylic Income beginning in the 21st consecutive Nylic Year,
   as illustrated .................................................... $1,537.34 monthly

(ii) Increase in Monthly Senior Nylic Income beginning in 26th consecutive Nylic Year,
   as above ......................................................... 727.10 monthly

Total = $2,264.44 monthly

19

NEW YORK LIFE    FAX:2125767421    A  1' 2004  13:57    P. 25

## ILLUSTRATION OF METHOD OF CALCULATING ADDITIONAL INCREASE IN MONTHLY SENIOR NYLIC INCOME BEGINNING IN 31ST CONSECUTIVE YEAR OF QUALIFIED NYLIC MEMBERSHIP

| Assumed "Nylic Count Insurance" During Indicated Nylic Year (1) | | Assumed "Nylic Count Insurance" During Indicated Nylic Year (2) | | Assumed Persistency (3) | "Persisting Insurance" at the end of Indicated Nylic Year = (2) × (3) (4) | |
|---|---|---|---|---|---|---|
| 21st Year.....$ | 2,000,000 | 21st Year...$ | 2,000,000 | .604 | 30th Year ....$ | 1,208,000 |
| 22nd Year.... | 2,000,000 | 22nd Year.... | 2,000,000 | .628 | 30th Year .... | 1,256,000 |
| 23rd Year .... | 2,000,000 | 23rd Year.... | 2,000,000 | .653 | 30th Year .... | 1,306,000 |
| 24th Year .... | 2,000,000 | 24th Year.... | 2,000,000 | .681 | 30th Year .... | 1,362,000 |
| 25th Year .... | 2,000,000 | 25th Year.... | 2,000,000 | .713 | 30th Year .... | 1,426,000 |
| 26th Year .... | 2,000,000 | 26th Year.... | 2,000,000 | .748 | 30th Year .... | 1,496,000 |
| 27th Year .... | 2,000,000 | 27th Year.... | 2,000,000 | .788 | 30th Year .... | 1,576,000 |
| 28th Year .... | 2,000,000 | 28th Year.... | 2,000,000 | .835 | 30th Year .... | 1,670,000 |
| 29th Year .... | 2,000,000 | 29th Year.... | 2,000,000 | .894 | 30th Year .... | 1,788,000 |
| 30th Year .... | 2,000,000 | | | | | |
| Total | =$20,000,000 | (b) Total | =$18,000,000 | | (a) Total | =$13,088,000 |

Percentage of (a) to (b) $= \frac{\$13,088,000}{\$18,000,000} = 72.71\%$

Base for increase in Monthly Senior Nylic Income beginning in 31st consecutive Nylic Year = $20,000,000 multiplied by 72.71%, divided by 10 = $1,454,200.

INCREASE IN MONTHLY SENIOR NYLIC INCOME BEGINNING IN 31ST CONSECUTIVE NYLIC YEAR is $.60 per $1,000 of the $1,454,200 base, namely .......................................$872.52 monthly

TOTAL MONTHLY SENIOR NYLIC INCOME BEGINNING IN 31ST CONSECUTIVE NYLIC YEAR is the sum of:
(i)  Monthly Senior Nylic Income beginning in 21st consecutive Nylic Year, as illustrated ......................................................$1,537.34 monthly
(ii)  Increase in Monthly Senior Nylic Income beginning in 26th consecutive Nylic Year, as illustrated ......................................................727.10 monthly
(iii)  Increase in Monthly Senior Nylic Income beginning in 31st consecutive Nylic Year, as above ......................................................872.52 monthly

Total = $3,136.96 monthly

## ILLUSTRATION OF METHOD OF CALCULATING ADDITIONAL INCREASE IN MONTHLY SENIOR NYLIC INCOME BEGINNING IN 36TH CONSECUTIVE YEAR OF QUALIFIED NYLIC MEMBERSHIP

| Assumed "Nylic Count Insurance" During Indicated Nylic Year (1) | | Assumed "Nylic Count Insurance" During Indicated Nylic Year (2) | | Assumed Persistency (3) | "Persisting Insurance" at the end of Indicated Nylic Year = (2) × (3) (4) | |
|---|---|---|---|---|---|---|
| 26th Year .... | $ 2,000,000 | 26th Year .... | $ 2,000,000 | .604 | 35th Year .... | $ 1,208,000 |
| 27th Year .... | 2,000,000 | 27th Year .... | 2,000,000 | .628 | 35th Year .... | 1,256,000 |
| 28th Year .... | 2,000,000 | 28th Year .... | 2,000,000 | .653 | 35th Year .... | 1,306,000 |
| 29th Year .... | 2,000,000 | 29th Year .... | 2,000,000 | .681 | 35th Year .... | 1,362,000 |
| 30th Year .... | 2,000,000 | 30th Year .... | 2,000,000 | .713 | 35th Year .... | 1,426,000 |
| 31st Year .... | 2,000,000 | 31st Year .... | 2,000,000 | .748 | 35th Year .... | 1,496,000 |
| 32nd Year .... | 2,000,000 | 32nd Year .... | 2,000,000 | .788 | 35th Year .... | 1,576,000 |
| 33rd Year .... | 2,000,000 | 33rd Year .... | 2,000,000 | .835 | 35th Year .... | 1,670,000 |
| 34th Year .... | 2,000,000 | 34th Year .... | 2,000,000 | .894 | 35th Year .... | 1,788,000 |
| 35th Year .... | 2,000,000 | | | | | |
| Total | = $20,000,000 | (b) Total | = $18,000,000 | | (a) Total | = $13,088,000 |

Percentage of (a) to (b) = $\frac{\$13,088,000}{\$18,000,000}$ = 72.71%

Base for increase in Monthly Senior Nylic Income beginning in 36th consecutive Nylic Year = $20,000,000 multiplied by 72.71%, divided by 10 = $1,454,200.

INCREASE IN MONTHLY SENIOR NYLIC INCOME BEGINNING IN 36TH CONSECUTIVE NYLIC YEAR

is $.70 per $1,000 of the $1,454,200 base, namely........................................$1,017.94 monthly

TOTAL MONTHLY SENIOR NYLIC INCOME BEGINNING IN 36TH CONSECUTIVE NYLIC YEAR is the sum of:

(i) Monthly Senior Nylic Income beginning in the 21st consecutive Nylic Year,
as illustrated ........................................................$1,537.34 monthly

(ii) Increase in Monthly Senior Nylic Income beginning in 26th consecutive Nylic Year,
as illustrated ........................................................727.10 monthly

(iii) Increase in Monthly Senior Nylic Income beginning in 31st consecutive Nylic Year,
as illustrated ........................................................872.52 monthly

(iv) Increase in Monthly Senior Nylic Income beginning in 36th consecutive Nylic Year,
as above ........................................................1,017.94 monthly

Total = $4,154.90 monthly

21

**NYLIC NO. QN6-82**

Copyright © 1982
New York Life Insurance Company

Arrow

FROM: Jere Keprios (213)337-4616
CT - Los Angeles SOP Team
818 West Seventh Street

Los Angeles, CA 90017

TO:  **Polly Buck (423)294-4410**
**Unum Group**
**One Fountain Square**

**Chattanooga, TN 37402**
Ref: SOP/0413900/512383181/Jere Keprios



FedEx Revenue Barcode

CAD#: 8318649
SHIP DATE: 09JUL07
WEIGHT: 1 LB

RECEIVED

JUL 1 1 2007

LAW DEPT.

DELIVERY ADDRESS (FedEx-EDR)

TRK # 7902 8734 4540    FORM 0201

37402    -TN-US

** 2DAY **        CHA

**WED**
**A1**
Deliver by:
**11JUL07**

# SA CHAA



CLS052907

# 7S730

For questions or concerns, call
Trecia Smith @ 423-755-7237

## Pauline S Buck

EMP ID:      31677
PHONE:      423-294-4410
DATE/TIME:  7/11/2007 10:07:27 AM
OVERRIDE:   No
EXTTRK:     Fed-790287344540

12814082





LO78956

Michelle Lafond

Portland