1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# BEFORE THE INSURANCE COMMISSIONER
## OF THE STATE OF CALIFORNIA
### SAN FRANCISCO

| | |
|---|---|
| In the Matter of the<br>Certificates of Authority of<br><br>UNUM LIFE INSURANCE COMPANY OF AMERICA,<br><br>PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY, and<br><br>THE PAUL REVERE LIFE INSURANCE COMPANY,<br><br><br>Respondents. | CALIFORNIA SETTLEMENT AGREEMENT<br><br>File No. DISP05045984<br><br>File No. DISP05045985<br><br>File No. DISP05045986 |

TO THE DEPARTMENT OF INSURANCE OF THE STATE OF CALIFORNIA:

## I.

## INTRODUCTION

Respondents UNUM LIFE INSURANCE COMPANY OF AMERICA ("Unum"),
PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY ("Provident"), and THE
PAUL REVERE LIFE INSURANCE COMPANY ("Paul Revere") (all three collectively,
"Respondents"), and the California Department of Insurance (the "Department") do hereby enter
into this California Settlement Agreement ("CSA") in the above-entitled consolidated matters
and stipulate as follows:

A.    The Insurance Commissioner of the State of California ("Insurance
Commissioner") has jurisdiction over the each of the Respondents, as insurers holding

#352455v1

EXHIBIT C

1   Certificates of Authority issued under the Laws of the State of California;

2       B.    The Department conducted examinations into Respondents' rating, underwriting

3   and claims practices, including one examination by its Field Rating and Underwriting Bureau

4   covering the period January 1, 2002 to December 15, 2003, and two examinations by its Field

5   Claims Bureau of Respondents' claim files as follows:  an initial, routine examination which

6   included a review of Respondents' claims handling practices during the period February 1, 2001

7   through January 31, 2002, and a targeted review of open and closed long term disability claim

8   files covering the period January 1, 2000 through June 30, 2003.  In addition, the Department

9   surveyed recent court cases, interviewed certain individuals, reviewed evidence and testimony in

10  civil cases, reviewed individual Requests for Assistance submitted to the Department by

11  Respondents' claimants, and conducted other investigative activities.  The CSA constitutes the

12  resolution of the Department's investigation, which includes all of the above;

13      C.    Respondents acknowledge receipt of a copy of the Accusation issued by the

14  Department ("Accusation") in the above entitled matter, but deny the allegations contained

15  therein;

16      D.    This CSA is made solely for the purpose of reaching a compromise settlement,

17  without litigating the issues, and it is the intent of the parties that any conduct or statements made

18  in negotiation hereof, including this CSA, shall be inadmissible for any purpose in any

19  proceeding unrelated to enforcement of the terms of this CSA;

20      E.    Respondents neither admit nor concede any actual or potential fault, wrongdoing

21  or liability in connection with allegations contained in the Accusation or any of the findings of

22  the Insurance Commissioner ("Findings") set forth in his Order of the Commissioner;

23      F.    Respondents acknowledge that certain of the allegations contained in the

24  Accusation, if heard and proved, could constitute grounds for the Insurance Commissioner to

25  suspend Respondents' certificates of authority and licenses pursuant to the Insurance Code of the

26  State of California ("Insurance Code");

27      G.    Respondents acknowledge that certain of the allegations contained in the

28  Accusation as to claims handling, if heard and proved, could constitute grounds for the Insurance

#352455v1

1  Commissioner to impose civil penalties and to issue an Order to Cease and Desist from engaging
2  in those methods, acts, or practices found to be unfair or deceptive pursuant to the provisions of
3  the Insurance Code, which are referred to in the *Public Report of the Market Conduct*
4  *Examination of the Department of Insurance, Market Conduct Division, Field Claims Bureau*
5  ("*Public Report*"), incorporated in its entirety by reference herein. (Please see link on
6  "Unum/Provident Settlement" page on CDI website.)

7      H.    Respondents agree that the imposition of civil penalties and the award of costs of
8  investigation and future enforcement provided for herein shall have the same force and effect as
9  if imposed after a hearing or hearings held pursuant to the relevant provisions of the Insurance
10  Code and Government Code of the State of California ("Government Code").

11      I.    By entering into this CSA, Respondents waive Notice of Hearing and hearing, and
12  all other rights which may be accorded pursuant to Chapter 5, Part 1, Division 3, Title 2
13  (Sections 15000-11528, inclusive) of the Government Code and by the Insurance Code with
14  regard to the matters agreed to and settled herein.

15
16
17  <center>II.</center>
18  <center>DEFINITIONS</center>

    The following terms, for purposes of the CSA and as used herein, are defined as follows,
19  unless otherwise specifically defined herein. This CSA contains definitions other than these set
20  forth in this Section II.

21      A.    "California Claimant" for purposes of Section III of the CSA shall mean a
22  California Early Period Claimant or California Later Period Claimant; otherwise California
23  Claimant shall be an insured of a Respondent in circumstances where California law is the
24  applicable law governing the insurance policy covering the insured or the claims handling
25  standards and procedures with respect to the insured.

26      B.    "California Contract" for the purposes of Section IV and V of this CSA shall
27  mean a policy of disability income insurance issued by a Respondent which is subject to the
28  jurisdiction of and approved by the Department.

#352455v1

1    C.    "California Early Period Claimant" shall mean any California resident whose

2    individual or group long term disability income claim was denied or whose benefits was

3    terminated by any one of the Respondents on or after January 1, 1997 and before January 1,

4    2000.

5    D.    "California Later Period Claimant" shall mean any California resident whose

6    individual or group long term disability income claim was denied or whose benefits were

7    terminated by any one of the Respondents on or after January 1, 2000 and prior to September 30,

8    2005.  This shall include California residents who already have elected to participate in the RSA

9    Reassessment, and California residents who are eligible and elect to participate in the CSA

10   Reassessment.

11   E.    "CSA Effective Date" shall mean the date of the Order of the Commissioner

12   adopting the CSA and shall apply to all sections of this CSA except for the following sections

13   which shall be effective on November 1, 2005:

14           1. Section V.C.

15           2. Section V.D.

16   F.    "CSA Implementation Date" shall mean a date which is thirty (30) days after the

17   CSA Effective Date.

18   G.    "CSA Notice" shall mean the notice of availability of the CSA Reassessment that

19   is to be sent to California Claimants pursuant to the provisions of the CSA.

20   H.    "CSA Reassessment" shall mean the reassessment process as conducted under the

21   standards established in the CSA, and may include standards incorporated by reference to the

22   RSA and those established by Respondents when those non-CSA standards do not conflict with

23   the CSA standards.

24   I.    "Order of the Commissioner" shall mean the Decision and Order of the Insurance

25   Commissioner on Settlement relating to the CSA, which is attached hereto as Exhibit "A" and

26   which Order of the Commissioner is executed simultaneously with the execution of the CSA.

27   J.    "RSA Notice" shall mean the notice of availability of the RSA Reassessment  that

28   was sent on a nationwide basis to claimants in all states pursuant to the provisions of the

#352455v1

1    Multistate Regulatory Settlement Agreement ("RSA").

2        K.    "RSA Reassessment" shall mean the reassessment process as conducted solely

3    under the standards established by Respondents pursuant to the RSA.

4

5                                    III.

6        MULTISTATE REGULATORY SETTLEMENT AGREEMENT

7                      AND CSA REASSESSMENT

8        A.    Relation Between the RSA and CSA

9        On September 2, 2003,  Maine, Massachusetts, and Tennessee, the Respondents'

10    principal domiciliary states ("Domestic Regulators"), ordered a multistate targeted examination

11    of the Respondents' claims handling practices ("multistate exam") to determine if the individual

12    and group long term disability income claims handling practices of the companies reflected

13    systemic "unfair claims settlement practices," as defined in the National Association of

14    Insurance Commissioners (NAIC) *Unfair Methods of Competition and Unfair and Deceptive*

15    *Acts and Practices in the Business of Insurance Model Act (1972)* or *NAIC Claims Settlement*

16    *Practices Model Act* (1990).  Ultimately, the terms of the resolution thereof were documented in

17    a Regulatory Settlement Agreement (RSA) with each of the Respondents, dated November 18,

18    2004, each RSA identical to the other. A separate and virtually identical RSA was entered into

19    with First Unum Life Insurance Company, an insurance company subsidiary domiciled in New

20    York, and the New York Superintendent of Insurance.

21        Included in the RSA was a Plan of Corrective Action that included (1) changes in

22    corporate governance, (2) the RSA Reassessment, and (3) changes in claim organization and

23    procedures.  Also included in the RSA were provisions for immediate and contingent payment of

24    fines; certain administrative provisions regarding, among other things, participation in the RSA

25    by those non-domestic states electing to participate; and notice to certain claimants nationwide

26    that they may be eligible to have their claims reassessed.

27        The RSA Reassessment is available on a nationwide basis to certain long term disability

28    insurance policyholders under individual policies and to certain long term disability insurance

1 certificate holders under group policies issued to their employers or organizations to which they

2 belong. In addition to the Domestic Regulators, the United States Department of Labor (DOL) is

3 a party to the RSA and has jurisdiction over the Respondents' group insurance plans pursuant to

4 the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. Section 114, which

5 applies to group long term disability income insurance policies that are sponsored or endorsed by

6 employers for their employees.

7      California elected not to participate in the RSA. However, in accordance with its terms

8 and ERISA, California residents are entitled to participate in the RSA Reassessment.

9      Notwithstanding that California did not participate in negotiating or settling the multistate

10 action, the RSA required nationwide notice to both group (employment- and non-employment-

11 related) and individual claimants, including those in California, for reassessment of claims under

12 standards set forth in the RSA. Thus when implementation of the provisions of the RSA began

13 on January 19, 2005, RSA Notices began to be mailed to individual and group California Later

14 Period Claimants. Many California Later Period Claimants responded by requesting

15 reassessment of their claims.

16      Respondents agree that all California Claimants who elect to participate in the CSA

17 Reassessment described below, and any California Later and Early Period Claimants who

18 previously elected to participate in the RSA Reassessment, will be reassessed under the rules and

19 procedures set forth in the CSA and the exhibits hereto.

20      Incorporated herein by reference is the RSA for Unum, which includes the regulatory

21 settlement agreement covering A. Recitals, B. Plan of Corrective Action, C. Other Provisions, D.

22 Remedies, and Signature Pages, and exhibits to the RSA. (Please see link on "UnumProvident

23 Settlement" page on CDI website.)

24   • Exhibit 1 – Claim Reassessment Process, Unit Structure and Operating Procedures

25   • Exhibit 2 – Changes in Claim Organization

26   • Exhibit 3 – Quality Compliance Consultant

27   • Exhibit 4 – Improved Procedures for Evaluating Multiple Conditions or Co-Morbid
      Conditions

28

#352455v1

1
2
- Exhibit 5 – UnumProvident Clinical, Vocational, and Medical Services Statement Regarding Professional Conduct

3
- Exhibit 6 – Guidelines for Independent Medical Evaluations

4
- Exhibit 7 – Proof of Loss – Disability Claims

5
6
7
8
Except as specified below, the provisions of the RSA are adopted, incorporated by reference and made applicable to all three Respondents herein. Respondents hereby agree that they will comply with the provisions of the RSA except as supplemented or modified by the CSA and the Order of the Commissioner with respect to California Claimants.

9
**B.    Eligibility and Notice**

10
1.    Eligibility.

11
12
13
a. Any California Early Period Claimant or any California Later Period Claimant shall be eligible to participate in the CSA Reassessment whose claim was denied or whose benefits were terminated *for reasons other than* the following:

14
(i)  death of the claimant,

15
(ii)  claim was withdrawn,

16
(iii)  claimant did not satisfy the elimination period,

17
(iv)  maximum benefits were paid,

18
(v)  claimant who had his or her claim resolved through litigation or settlement, or

19
20
21
22
23
(vi)  claimant who has pending litigation against a Respondent challenging the denial or termination of his or her claim, which lawsuit was filed after the date of receipt of notice of the CSA Reassessment or a claimant whose lawsuit was filed prior to the date of receipt of notice of the CSA Reassessment in which lawsuit there has been a verdict or judgment on the merits prior to completion of the reassessment on the claim.

24
25
26
27
Eligibility for CSA Reassessment includes California Later Period Claimants who have already elected to participate pursuant to an effective election under the RSA and California Claimants who are eligible to participate under this provision and who make their election within the time period set forth in the notice provided under the CSA as set forth below.

28

#352455v1

1   b. Any California Early Period Claimant who is otherwise eligible under Section

2   III.B.1.a. but is not entitled to receive notice from the Respondents under Section III.B., below,

3   may request to have his or her claim reassessed under the CSA Reassessment so long as such

4   request is made to the Respondents no later than June 30, 2006.

5   c. Any California Claimant who disputes on any rational basis a Respondent's

6   characterization that such denial or termination falls into any of the reasons set forth in Section

7   III.B.1.a. (i) through (iv) above may request to participate in the CSA Reassessment so long as

8   such request is made to the Respondents no later than June 30, 2006. A Respondent's upholding

9   of the characterization and consequent rejection of the claim from the CSA Reassessment shall be

10  subject to the Independent Review (IR) Process described in Section III.C. of the CSA and

11  Exhibit "B" hereto.

12      2.   Notice.  - Respondents shall mail a CSA Notice in the form of Exhibit "C"

13  regarding the CSA Reassessment no later than the CSA Implementation Date to any California

14  Claimant who is eligible under Section III.B.1., above and who is either:

15      a. a California Later Period Claimant except for those who have already made a valid

16  election to participate in the RSA Reassessment, in which case they shall not be sent a CSA

17  Notice, although their claims shall be reassessed under provisions applicable to the CSA

18  Reassessment, or

19      b. a California Early Period Claimant and such claimant's original claim was denied or

20  terminated based upon the Respondent's interpretation of certain of California judicial decisions

21  or Department positions impacting disability insurance benefits and the application of such

22  decisions and positions to claims eligible for reassessment under this CSA.

23      3.   CSA Reassessment.  Respondents will review the oldest claims of eligible

24  California Claimants who have elected to participate in the CSA Reassessment first, taking into

25  account the entire period from 1997 through September 30, 2005 as the appropriate period in

26  which to consider what is oldest but also considering that submission and receipt of information

27  necessary for the reassessment is an ongoing process so that the date when completed information

28  is received is a relevant consideration in putting a re-submitted claim into the sequence for

review. It is also recognized that the RSA Reassessment involves review of the 2000 and later
claims prior to review of any claims in the 1997-1999 period, whereas the schedule under this
CSA requires consideration of the oldest first from 1997 through September 30, 2005.
Administration of the CSA Reassessment will review what is deemed oldest first under the RSA
with what is deemed oldest first under this CSA for California Claimants by integrating the two
beginning dates and the subsequent periods in a fair and equitable manner with neither being
advantaged over the other while recognizing that the RSA Reassessment began several months
earlier than the CSA Reassessment.

C.    Independent Review

No later than one hundred and twenty (120) days of the CSA Effective Date, there shall
be implemented an Independent Review (IR) process for review, at the request of the claimant,
of any decision of Respondents' Claim Reassessment Unit (CRU) that upholds on reassessment,
in whole or in part, an original claim decision either denying the claim or terminating the
benefits of a California Claimant, as further documented in Exhibit "B", attached hereto.

The IR process also shall be available for appeal from a Respondent's decision upholding
an original claim denial or benefit termination on (i) through (iv) grounds contained in Section
III.B.1.(a) above, affecting availability of CSA Reassessment to a California Claimant.

An individual selected by mutual agreement by the Department and the Respondent shall
be the IR Director, with the duties and responsibilities set forth in Exhibit "B." All costs of the
IR process shall be paid by Respondents.

Respondents shall make the final decision in the CSA Reassessment as to whether the original
decision is upheld, modified or reversed. The California Claimant shall have access to the claim
file, including the Report of the Independent Reviewer, after the decision of the CRU is final, in
the event he or she is dissatisfied with the decision of the CRU.

D.    Attending Physician's Opinion

Respondent shall give significant weight to an attending physician's opinion, if the
attending physician is properly licensed and the claimed medical condition falls within the
attending physician's customary area of practice, unless the attending physician's opinion is not

#352455v1

9

1  well supported by medically acceptable clinical or diagnostic standards and is inconsistent with
2  other substantial evidence in the record.  In order for an attending physician's opinion to be
3  rejected, the claim file must include specific reasons why the opinion is not well supported by
4  medically acceptable clinical or diagnostic standards and is inconsistent with other substantial
5  evidence in the record.

6      E.    Claimants Informed of Right to Request IME

7      As part of the information advising a California Claimant how to submit a claim or early in
8  the process of reviewing an open claim and, in any event, prior to any decision being made to
9  deny a recently submitted claim or to close an open claim, California Claimants shall be
10 informed in writing that it is their right or the right of their attending physician (either directly or
11 through the claimant's representative) to request an "independent medical examination" ("IME")
12 of their medical condition, unless the decision is made to pay or continue to pay the claim.

13     F.    Monitoring Compliance with the CSA

14         1.    Examinations. The Insurance Commissioner shall conduct examinations of the
15 Claim Reassessment Unit's claim decisions and compliance with the other terms of the CSA,
16 including changes made in claim handling practices and procedures contemplated by the CSA,
17 all in the manner and at such intervals as he or she deems appropriate in accordance with the
18 Insurance Code and Regulations. In connection with such examinations, the Insurance
19 Commissioner shall have access to claim files and other paper and electronic records as
20 authorized pursuant to Insurance Code and Regulations.

21         2.    Information.   Respondents shall provide the Insurance Commissioner on a
22 quarterly basis with reports relating to the status of California Claimants who are eligible to
23 participate and have elected to participate in the CSA and RSA Reassessments, including
24 information concerning the results of reviews of the Claim Reassessment Unit and the use and
25 results of the IR process.
26 //
27 //
28

#352455v1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV.

## CHANGES IN CLAIMS HANDLING POLICIES

In an effort to resolve disagreements between the Respondents and the Department concerning certain provisions in California Contracts or their interpretation as applied in handling claim decisions, which disagreements were not able to be resolved based upon usual sources of statutory, regulatory or decisional authority, Respondents have agreed to make the following changes in certain claims handling policies and in the terms of their California Contracts, in accordance with the effective date of the provisions in Section V.

### A.    Discretionary Authority

Respondents shall discontinue use of a provision that has the effect of conferring unlimited discretion on the Respondent or other plan administrator to interpret policy language, or requires an "abuse of discretion" standard of review if a lawsuit ensues unless the reviewing court determines otherwise ("discretionary authority provision") in any California Contract sold after the date set forth in Section V.

### B.    Mental and Nervous Conditions

Respondents shall interpret the "mental and nervous conditions" benefit in a California Contract and its limitation to twenty-four (24) months to apply after the termination of any physiological-based disabling condition covered by the policy and not concurrent with such physiological condition and shall amend policy language in future California Contracts to better reflect this interpretation of the provision.

### C.    Self-Reported Conditions

Respondents shall discontinue application of the "self-reported condition" provisions in California Contracts, which has permitted Respondent to characterize certain disabling conditions as "self-reported" (e.g., pain, limited range of motion, weakness), while the Respondent accepted only objective test results to support disability, thus limiting payment of certain benefits under the "self-reported conditions" policy provision, and discontinue inclusion of "self-reported conditions" provisions in any California Contract issued after the date set forth in Section V.

#3524455v1

11

V.

## STIPULATIONS REGARDING CHANGES TO
## POLICY LANGUAGE AND CLAIMS HANDLING

A.    Respondents agree that they shall not target short term and long term disability claims for denial or termination of benefits on the basis of economic advantage to themselves.

B.    Respondents agree that they shall promptly, fairly, and objectively investigate each short term and long term disability claim, considering the interests of the claimant at least as much as their own, pursuant to California statutory and case law and in accordance with the terms of the applicable insurance policy, so long as such terms are consistent with applicable California statutory and case law.

C.  Respondents agree that as of the CSA Effective Date, except for new forms that might be submitted to and approved by the Commissioner in the future,  the Respondents will no longer market, offer, issue or deliver (1) an individual disability policy form other than Forms 650-CA and 651-CA to California residents, or (2) group disability policy or certificate forms other than Forms C.FP-I-CA and CC.FP-I-CA to California groups,  as approved pursuant to the Order of the Commissioner issued as part of this CSA.  However, policy forms for which quotes have been offered or applications have been taken by the CSA Effective Date may be delivered to the purchasers after the CSA Effective Date if they are sold before November 1, 2005.  For business initiated and sold between October 3, 2005 and November 1, 2005, the Respondents may use existing policy forms so long as the provisions are interpreted to conform with the requirements of Section V.D. hereof.  Respondents agree that, as of the CSA Effective Date, they shall comply with California Insurance Code Section 10270.507.

D.    Policy Language Changes

Individual Policy Forms 650-CA and 651-CA and Group Policy Form C.FP-1 – CA, as noted above in section V.C., contain language that is in compliance with the laws of the State of California, and each of which has been approved for sale in the State of California.  The most important policy language changes are as follows:

1.  "Total Disability" Definitions.

"Total disability" shall be defined in California Contracts during the usual or own-occupation period as:

a disability that renders one unable to perform with reasonable continuity the substantial and material acts necessary to pursue his or her usual occupation in the usual and customary way

and during the another or any-occupation period shall be defined as:

a disability that renders one unable to perform with reasonable continuity the substantial and material acts necessary to pursue his or her usual occupation in the usual and customary way and to engage with reasonable continuity in another occupation in which he or she could reasonably be expected to perform satisfactorily in light of his or her age, education, training, experience, station in life, physical and mental capacity.

This change shall be made in all new California Contracts issued after the CSA Effective Date and in in-force policies upon renewal after the CSA Effective Date.

2.  Discretionary Authority.

Respondents agree to withdraw from the administrative mandamus action (the appeal from the administrative hearing and Insurance Commissioner's Order) regarding discretionary authority policy language. Any language having the effect of a "discretionary authority provision" as set forth in Section IV.A. shall not be applied to any California Contract sold after the CSA Effective Date. A "discretionary authority provision" shall not be included in any new policies issued as California Contracts or included in Summary Plan Descriptions (SPDs) in ERISA-related Plans generated or issued by the Company, after the CSA Effective Date so long as its omission from the policy form or SPD is consistent with what is permitted by applicable California statutory and case law. Discretionary authority provisions in existing California Contracts that were issued prior to the date of the Order of the Commissioner are not affected by the CSA.

3.  Self-Reported Conditions.

Policy language regarding limitations on benefits for self-reported conditions as set forth in Section IV.C shall not be applied in existing California Contracts after the earlier of the date of their first renewal following the CSA Effective Date or December 31, 2007. Self-reported

1  conditions provisions shall not be included in any new policies issued as California Contracts
2  after the CSA Effective Date.

3      4.    Mental and Nervous Conditions.

4      Policy language limiting the duration of payment on disability caused by mental and
5  nervous conditions shall be interpreted as set forth in Section IV.B, so as not to run concurrently
6  with benefits for physiologically-based conditions in California Contracts after the earlier of the
7  date of their first renewal following the CSA Effective Date or December 31, 2007, and the
8  language in all new policies issued as California Contracts after the CSA Effective Date shall be
9  changed to better reflect the interpretation of this provision set forth in Section IV.B. As a
10 matter of clarification and current interpretation in all applicable policies, in circumstances in
11 which a physiological disability exists and is followed by a mental and nervous disability, the 24
12 month limitation in the mental and nervous disability provision starts at the onset of the mental
13 and nervous disability and does not relate back to the period of the physiological disability with
14 the result of limiting the disability period for the physiological disability to 24 months.

15     5.    Pre-Existing Conditions.

16     Policy language excluding conditions "contributed [to] by" the pre-existing condition
17 shall not be applied in existing California Contracts after the CSA Effective Date. This change
18 shall be made in all new policies issued as California Contracts after the CSA Effective Date and
19 in in-force policies upon renewal after the CSA Effective Date.

20     6.    Offsets.

21     Policy language regarding offsets for Social Security Disability Income (SSDI) benefits
22 shall be interpreted to mean that only SSDI benefits actually received by the claimant shall be
23 offset in California Contracts after the CSA Effective Date. This change shall be made in all
24 new policies issued as California Contracts after the CSA Effective Date and in in-force policies
25 upon renewal after the CSA Effective Date.

26     7.    Mandatory Rehabilitation.

27     Policy language requiring participation in a mandatory rehabilitation program will no
28 longer be included in California Contracts after the CSA Effective Date.

#352455.1

14

8.    Survivor Benefit.

The definition of "Eligible Survivor" shall be interpreted in California Contracts after the CSA Effective Date to delete an age limitation for surviving children, and shall provide that if no estate is formed, the benefits will escheat to the State of California. This change shall be made in new policies issued as California Contracts after the CSA Effective Date.

E.    **Claims Handling Change Implementation Dates**

The policy language changes reflected in Section V.D. above shall be applicable to consideration of claim decisions of California Claimants in accordance with the following provisions:

1.    "Total Disability" Definitions.

The change described above in Section V.D.1. shall be applied to (1) claims open at CSA Effective Date that were submitted to Respondents on or after June 24, 2004; (2) claims participating in CSA Reassessment; and (3) new claims submitted after the CSA Effective Date. That is, the claims will be handled as if this change were in place at the specified time.

2.    Discretionary Authority.

The change described above in Section V.D.2. shall be applied to (1) policies sold after the CSA Effective Date; and (2) claims participating in CSA Reassessment.

3.    Self-Reported Conditions.

The change described above in Section V.D.3. shall be applied to (1) new claims submitted after the earlier of the first renewal date of the group policy to which they relate following the CSA Effective Date or December 31, 2007; and (2) claims participating in the CSA Reassessment. In addition, Respondents shall enhance training for claims staff regarding subjective conditions, augmenting the criteria to be used in evaluating subjective complaints.

4.    Mental and Nervous Conditions.

The change described above in Section V.D.4. shall be applied to (1) new claims submitted after the earlier of the first renewal date of the group policy to which they relate following the CSA Effective Date or December 31, 2007; and (2) claims participating in the CSA Reassessment.

1    5.    Pre-Existing Conditions.

2    The change described above in Section V.D.5. shall be applied to (1) new claims
3    submitted after the CSA Effective Date, and (2) claims participating in the CSA Reassessment.

4    6.    Offsets.

5    The change described above in Section V.D.6. shall be applied to (1) claims open as of
6    the CSA Effective Date; (2) claims participating in the CSA Reassessment; and (3) new claims
7    submitted after the CSA Effective Date.

8    7.    Mandatory Vocational Rehabilitation.

9    The change described above in Section V.D.7. shall be applied to (1) claims open as of
10   the CSA Effective Date; (2) claims participating in the CSA Reassessment; and (3) new claims
11   submitted after the CSA Effective Date.  In processing the claims covered by this change,
12   Respondents shall consider participation in vocational rehabilitation to be voluntary.

13   8.    Survivor Benefit.

14   The change described above in Section V.D.8. shall be applied to (1) claims open as of
15   the CSA Effective Date; (2) claims participating in the CSA Reassessment; and (3) new claims
16   submitted after the CSA Effective Date.  In addition, Respondents will inform survivors who are
17   not eligible survivors under the policy definitions of the necessity of forming an estate in the
18   event there are no eligible survivors.

19   9.    Additional Review.

20   In processing the claims covered by the changes set forth in Sections IV and V, an
21   additional level of internal review by a Quality Compliance Consultant (or its equivalent) will
22   occur prior to a claim denial.

23

24   **VI.**

25   **FINAL STIPULATIONS**

26   A.    Respondents and the Department agree that, in lieu of other disciplinary action,
27   the Insurance Commissioner may, by his written Decision and Order to be made and filed herein,
28   without further notice to Respondents, issue an order prohibiting Respondents from engaging in

#352455v1

16

the conduct set forth in the Accusation (without any admission by Respondents of having engaged in such conduct) and requiring Respondents to pay a civil penalty in the amount of $3,000,000.00;

B.     Respondents agree to pay to the Department all attorney's fees and cost of the Department in bringing this enforcement action, in the amount of $598,503.00, pursuant to Insurance Code, section 12921(b)(4);

C.     Respondents agree to pay all reasonable future costs of the Department to ensure compliance with the CSA, pursuant to Insurance Code, section 12921(b)(4);

D.     Respondents agree to pay the civil penalty, attorney's fees and costs enumerated above upon receipt of invoice(s) from the Department, payments to be directed to the California Department of Insurance; Division of Accounting; 300 Capitol Mall, 13th Floor; Sacramento, CA 95814;

E.     Respondents acknowledge that the CSA is freely and voluntarily executed by Respondents, with a full realization of the legal rights set forth in the Insurance Code;

F.     Respondents and the Department agree that the CSA is the full and final settlement of the Department's investigation, scheduled and targeted Field Claims examinations, and Field Rating and Underwriting examination, and the Accusation;

G.     Neither the CSA nor any related negotiations, statements, or documents shall be offered by the Department as evidence of an admission or concession of any liability or wrongdoing whatsoever on the part of the Respondents;

H.     Neither the CSA nor any of the obligations agreed to by the Respondents shall be interpreted to constitute a novation or alter the terms of any policy, except as specifically stated herein. Neither the CSA nor any of the obligations agreed to by the Respondents shall be interpreted to reduce or increase any rights of participants in ERISA-covered plans, except as specifically stated herein, including but not limited to rights to which they may be entitled pursuant to 29 U.S.C. 1133 and 29 CFR 2560.503-1 of ERISA, including any appeal or review rights under the plan. Other than those rights afforded under the CSA, it is the intention of the parties that no additional rights are provided to the extent that any California Claimants have

#352455v1

1    previously exercised their rights and therefore, as provided for under ERISA, have permitted

2    those rights to lapse;

3         I.    Respondents agree that, in the event of a material noncompliance with its terms

4    of the CSA, the Insurance Commissioner may, after notice and hearing, order the suspension for

5    up to one (1) year of the Certificate of Authority of the noncompliant Respondent(s);

6         J.    Section III. of the CSA will terminate upon completion of Respondents' review of

7    claims for which California Claimants have chosen to participate or requested review under the

8    CSA Reassessment, except that the following provisions of Section III. shall continue in effect:

9              1. Subsection III.D. - Attending Physician's Opinion,

10             2. Subsection III.E. - Claimants Informed of Right to Request IME, and

11             3. Subsection III.F.1. - Monitoring Compliance with the CSA;

12        K.    Section IV. and Section V. of the CSA shall be subject to change as follows:

13             1. Respondent's agreements as to Changes in Claims Handling Policies, set forth

14   in Section IV., shall each remain in effect until such time as a change in Section IV.A., IV.B. or

15   IV.C.is either (i) required by a change in applicable statute, regulation or court decision, or (ii)

16   permitted by such authorities and the Respondent provides the Department with 30 days prior

17   written notice of the proposed change, the reason therefor, and the specific source of authority

18   (applicable statute, regulation or court decision) permitting such change, and the change is

19   agreed to by the Department and such agreement by the Department shall not unreasonably be

20   withheld. The provisions of Section IV. that are not affected by the specific change shall

21   continue in effect;

22             2. Respondent's agreements as to Changes to Policy Language and Claims

23   Handling, set forth in Section V., shall each remain in effect until the earlier of (i) such time as a

24   change in one of the agreements set forth in Sections V.D. or V.E. is required by a change in the

25   applicable statute, regulation or relevant court decision; (ii) alternative policy language for

26   disability insurance policies affecting one of such designated Sections is approved by the

27   Department for Respondent or for other insurers writing disability insurance in California; (iii)

28   approval for a specific change to policy language affecting one of such designated Sections is

#152455v1

1  authorized by the Department; or (iv) a change to policy language or claims handling is

2  permitted by such authorities affecting one of such designated Sections and the Respondent

3  provides the Department with 30 days prior written notice of the proposed change, the reason

4  therefor, and the specific source of authority (applicable statute, regulation or court decision)

5  permitting such change, and the change is agreed to by the Department, and such agreement by

6  the Department shall not unreasonably be withheld.  The provisions of Sections V.D. or V.E. that

7  are not affected by the specific change shall continue in effect;

8      L.      Respondents agree to use their best efforts to complete the CSA Reassessment by

9  June 30, 2007, although, for good cause shown, the Insurance Commissioner may agree to

10  extend the time for completing that process;

11      M.      Respondents acknowledge that Insurance Code, section 12921(b)(1), requires the

12  Insurance Commissioner to approve the final settlement of this matter, and that both the

13  settlement terms and conditions contained herein and the acceptance of those terms and

14  conditions are contingent upon the Insurance Commissioner's approval, which approval is

15  provided in the Order of the Commissioner, issued simultaneously with the execution of this

16  CSA and made a part hereof.

17  //

18  //

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28

#352455v1

19

Respondents and the Department hereby execute this document at Chattanooga State of Tennessee, on the ___ day of October, 2005, and San Francisco, State of California, on the ___ day of October, 2005, respectively.

UNUM LIFE INSURANCE COMPANY OF AMERICA

PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY

THE PAUL REVERE LIFE INSURANCE COMPANY

By:

_____
Signature

Thomas R. Watjen
Printed name

President and Chief Executive Officer
Title

UnumProvident Corporation
Company

1 Fountain Square
Address

Chattanooga, Tennessee 37402

CALIFORNIA DEPARTMENT OF INSURANCE

By:

_____
Signature

Richard D. Baum
Printed name

Chief Deputy Commissioner
Title

45 Fremont St., 23rd Floor
Address

San Francisco, California 94105-2204

#352455v1

20