1   J. Russell Stedman (117130), rstedman@barwol.com
    Jennifer N. Lee (230727), jlee@barwol.com
2   BARGER & WOLEN LLP
    650 California Street, 9th Floor
3   San Francisco, California  94108-2713
    Telephone:  (415) 434-2800
4   Facsimile:  (415) 434-2533

5   Attorneys for Defendant
    NEW YORK LIFE INSURANCE COMPANY only
6
    Thomas M. Herlihy (83615), herlihy@kelher.com
7   John C. Ferry (104411), jferry@kelher.com
    KELLY, HERLIHY & KLEIN LLP
8   44 Montgomery Street, Suite 2500
    San Francisco, California  94104-4798
9   Telephone:  (415) 951-0535
    Facsimile:  (415) 391-7808
10
    Attorneys for Defendants
11  UNUM GROUP (formerly known as
    UNUMPROVIDENT CORPORATION),
12  FIRST UNUM LIFE INSURANCE COMPANY
    (erroneously sued as UNUM CORPORATION) and
13  NEW YORK LIFE INSURANCE COMPANY

14

15                  **UNITED STATES DISTRICT COURT**

16                  **NORTHERN DISTRICT OF CALIFORNIA**

17

18  LYLE HUGHES,                              )   CASE NO.:  C07-4088 PJH
                                              )
19              Plaintiff,                     )   **DECLARATION OF ROBERT J. HYNES**
                                              )   **IN SUPPORT OF DEFENDANTS'**
20        vs.                                  )   **OPPOSITION TO MOTION TO REMAND**
                                              )
21  UNUMPROVIDENT CORPORATION;                 )   Date:     November 28, 2007
    UNUM CORPORATION; NEW YORK LIFE            )   Time:     9:00 a.m.
22  INSURANCE COMPANY; THE                     )
    COMMISSIONER OF THE CALIFORNIA             )   Complaint Filed:  June 28, 2007
23  DEPARTMENT OF INSURANCE; and               )
    DOES 1 through 20 inclusive,               )
24                                             )
                Defendants.                    )
25  _____ )

26

27

28

DECLARATION OF ROBERT J. HYNES IN SUPPORT OF UNUM AND NEW YORK LIFE'S
OPPOSITION TO MOTION TO REMAND
CASE NO.:  C07-4088 PJH

1    I, Robert J. Hynes, declare as follows:

2    1.    I am a Vice-President in the Agency Department at New York Life Insurance

3    Company ("New York Life"). I have been employed with New York Life for approximately 30

4    years and have held a variety of positions in the Agency Department since 1987. I am sufficiently

5    familiar with New York Life's agents' contracts, compensation and benefits, including Nylic

6    Contract No. QN6-82, to provide this declaration.

7    2.    I submit this declaration in support of New York Life's opposition to Plaintiff's

8    motion for remand. I either have personal knowledge of the matters set forth below, or have

9    sufficient information and belief based upon my general knowledge of New York Life agency

10    business and inquiry, and, if called as a witness, could and would testify competently thereto.

11    3.    New York Life is a mutual insurance company established in 1845 under the laws of

12    the State of New York, and maintains its principal place of business in that State. New York Life

13    has never been a wholly owned subsidiary of Unum Group (formerly known as UnumProvident

14    Corporation) or First Unum Life Insurance Company (which, upon information and belief was

15    erroneously sued as Unum Corporation).

16    4.    New York Life enters into contracts with insurance agents to sell its products.

17    Plaintiff Lyle Hughes contracted with New York Life in February 1984 to be an insurance agent.

18    5.    To summarize, in 2004 and through the present, Plaintiff's agency relationship with

19    New York Life was subject to various agreements, including without limitation: (a) his Agent's

20    Contract (Form QN6-82), (b) the Nylic Contract No. QN6-82 and (c) the Nylic Retirement Plan.

21    Each of these plays a different role in determining the compensation that Plaintiff might receive.

22    The Agent's Contract (Form QN6-82) governs commissions payable to Plaintiff on new products

23    sold on behalf of New York Life or its affiliates. The Nylic Contract No. QN6-82 provides for a

24    separate form of compensation known as "Nylic Income," the amount of which is based in part

25    upon the number of "Contract Years" Plaintiff has and the "persistency" of the eligible product

26    sales he has made over several years, *i.e.* how long the insurance policies or other products he sold

27    stay in force.

28

-2-

DECLARATION OF ROBERT J. HYNES IN SUPPORT OF UNUM AND NEW YORK LIFE'S
OPPOSITION TO MOTION TO REMAND
CASE NO.: C07-4088 PJH

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

6.    As explained more fully below, the Agent's Contract (Form QN6-82) (hereinafter referred to as "Agent's Contract") specifies that after completing up to three "training" years for certain junior agents, the agent serves as an independent contractor rather than as a common-law employee of New York Life.  The Agent's Contract further specifies that either party may terminate the contract, with or without cause, on 30 days' written notice.  A true and correct copy of the Agent's Contract for Lyle Hughes is attached hereto as Exhibit A to this Declaration.  Agents with this type of Agent's Contract are referred to as N6 Agents.

7.    Since 1896, New York Life has also made available to its agents who meet certain eligibility criteria a compensation arrangement known as the "Nylic Contract."  The name of the version of the "Nylic Contract" used during the period of 1982 to 1990 was "Nylic No. QN6-82" (hereinafter referred to as the "Nylic Contract").  A true and correct copy of the Nylic Contract is attached hereto as Exhibit B to this Declaration.  New York Life ceased offering the Nylic Contract to new agents who contracted with New York Life after December 31, 1990.

8.    The Nylic Retirement Plan provides income to Mr. Hughes upon his retirement from New York Life.  In 1982, New York Life established for the first time a tax-qualified defined benefit retirement plan for its agents, called the "Nylic Retirement Plan."  When an N6 agent retires, his or her Agent's Contract and Nylic Contract terminate.  Upon his or her retirement, an N6 agent is then eligible to receive income under the terms of the Nylic Retirement Plan.  The Nylic Retirement Plan is in writing and is governed by ERISA.  One benefit that participants in the Nylic Retirement Plan are eligible for is "Disability Retirement Income"; this is a type of income payable to qualified agents under the circumstances specified in the Nylic Retirement Plan.

9.    Plaintiff received a copy of the Nylic Contract on February 1, 2004.  A true and correct copy of the Statement and Agreement of Agent executed by Plaintiff is attached hereto as Exhibit C to this Declaration.

10.    Payments made by New York Life to an agent under the Nylic Contract are separate and in addition to the commissions that the agent receives pursuant to the terms of the Agent's Contract.  Payments under the Nylic Contract are based upon a specified formula that generally

-3-

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

1  depends upon the face amount of certain types of insurance sold that remain in force for a specified

2  term. *See* Ex. B.

3      11.    Amounts paid to an agent under the Nylic Contract also depend in part upon the

4  number of "Nylic Years" that an Eligible Agent has completed. The Nylic Contract defines a

5  "Nylic Year" as each "Contract Year in which an agent completes the necessary requirements to

6  qualify for membership in the Nylic program." Ex. B, § 2. Under the Agent's Contract, a "Contract

7  Year" is defined as twelve consecutive calendar months following the effective date of the Agent's

8  Contract and each successive twelve consecutive calendar months thereafter. Ex. A, § 20.

9      12.    The Nylic Contract states that beginning in the Nylic Year 3, an agent was eligible

10 for payments known as "Drawing Nylic Income." Ex. B, §§1, 3. Upon completing 20 Nylic Years

11 of service, an eligible agent could qualify for and begin receiving "Senior Nylic Income." Ex. B, §§

12 1, 4. Payment of Drawing Nylic Income and Senior Nylic Income under the Nylic Contract is

13 contingent upon, among other things, the Agent's Contract being in force and the sale of ongoing

14 minimum production of new business (Ex. B, §§ 1.a (1)(2)). The amount of Senior Nylic Income is

15 generally determined based on the face amount of certain types of insurance sold during the agent's

16 prior 20 Nylic Years that remained in force for specified terms of years. Ex. B, § 4 and Table II.

17 Lyle Hughes qualified for Senior Nylic Income in March 2004.

18     13.    The Nylic Contract is not an insurance policy. Agents pay no premiums to be

19 eligible to receive payments pursuant to the Nylic Contract. The purpose of the Nylic Contract is

20 not to provide disability insurance.

21     14.    The Nylic Contract is divided into eight sections: (1) Nylic Membership; (2)

22 Definitions; (3) Drawing Nylic Income; (4) Senior Nylic Income Beginning in the 21st Nylic Year;

23 (5) Increases in Senior Nylic Income; (6) Senior Nylic Income Reduced if Agent Has a

24 Survivorship Arrangement under the Nylic Retirement Plan; (7) Physical Incapacity Benefit; and

25 (8) General Rules Applicable to the Calculation and Payment of Nylic Income. Ex. B.

26     15.    Section 7 of the Nylic Contract regarding "Physical Incapacity Benefit" under the

27 Nylic Contract sets forth the terms and conditions under the Nylic Contract for continued receipt of

28

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

1   Nylic Income—or Senior Nylic Income in the case of Plaintiff--in the event of an agent's "total

2   disability and continuing total disability." *See* Ex. B, § 7.   The "Physical Incapacity Benefit"

3   provisions in Section 7 of the Nylic Contract also provide for different categories of eligible agents

4   depending on tenure: (1) an agent in Nylic years 6 through 15; (2) an agent in Nylic years 16

5   through 20; and (3) an agent in Nylic years 21 through 30.  Ex. B, § 7.  By March 2004, Lyle

6   Hughes was an agent in the last category, Nylic years 21-30.

7         16.     Section 7c of the Nylic Contract relating to the "Physical Incapacity Benefit" for

8   agents in Nylic years 21 through 30 sets forth the terms for payment of income related to a

9   "Physical Incapacity Benefit" under two circumstances: (1) if the agent is not eligible for Disability

10  Retirement Income; and (2) if the agent is eligible for Disability Retirement Income. Ex. B, §7c.

11  These references in §7c refer specifically to the Disability Retirement Income benefit provided to

12  qualifying agents under the Nylic Retirement Plan.

13        17.     Section 7c of the Nylic Contract does not provide for a disability payment, but

14  instead specifies two outcomes in the event of an agent's disability:

15              (1) If an agent is eligible for the Physical Incapacity Benefit under the Nylic Contract

16              but not for Disability Retirement Income under the Nylic Retirement Plan, the

17              Company will waive the agent's production requirements for each continuous Nylic

18              Year of disability and continue all other Nylic Contract payments of Nylic or Senior

19              Nylic Income as if there had never been a disability (Ex. B, § 7c); or

20              (2) If an agent is eligible for the Physical Incapacity Benefit under the Nylic Contract

21              and also for Disability Retirement Income under the Nylic Retirement Plan, then "the

22              Agent's Nylic membership terminates with the last day preceding the effective date

23              of the Agent's Disability Retirement," and no further Nylic or Senior Nylic Income

24              is paid pursuant to the Nylic Contract.  The agent's receipt of compensation pursuant

25              to the Nylic Contract terminates entirely under these circumstances.  Ex. B, § 7c.

26        18.     The Physical Incapacity Benefit under Section 7c of the Nylic Contract is not a

27  disability payment but rather a provision of an agreement which sets forth the manner in which

28

-5-

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

1   payments under the Nylic Contract continue if Nylic Income or Senior Nylic Income payments

2   become due on policies sold in earlier years when the agent is in a disability status.  Ex. B, § 7c.

3         19.    Certain agents requiring training were considered employees of New York Life for

4   the duration of the training period and signed agreements to this effect.  In 1964, these trainee

5   agreements were entitled "Apprentice Field Underwriter Assignment."  In 1983, they were entitled

6   "Training Allowance Subsidy Plan Agreement" ("TAS Agreement").  Plaintiff executed a TAS

7   Agreement.  A true and correct copy of the TAS Agreement executed by Plaintiff is attached hereto

8   as Exhibit D to this Declaration.  New York Life generally refers to an agent as a "TAS Agent"

9   during the initial three-year training period and as an "Established Agent" for periods thereafter.

10         20.    The TAS Agreement expressly states that TAS Agents are employees of New York

11   Life.

12         While this [TAS] Agreement is in effect, the Agent will be an employee of the
      Company, subject to its direction and control, and will devote the Agent's entire time

13         to the business of this employment.  Ex. D, § 2.

14         21.    The TAS Agreement also provides that a TAS agent becomes an independent

15   contractor after the Third Contract Year:

16         After completion of the Third Contract Year, if the Agent continues thereafter to represent
      the Company as an Agent, the Agent's Contract will be in full force and effect, subject to its

17         terms, and the Agent's relation to the Company will be that of an independent contractor, as
      provided in said Agent's Contract, free to exercise the Agent's own discretion and judgment

18         with respect to the persons from whom the Agent will solicit applications, and with respect
      to the time, place, method and manner of solicitation or performance under said Agent's

19         Contract.  Ex. D, § 15.

20         22.    The Agent's Contract specifies that an Established Agent is an independent

21   contractor rather than a common-law employee of New York Life.  Among other things, it states in

22   relevant part that:

23         [n]either the term "Agent" . . . nor anything contained in this contract or in any of the rules
      or regulations of the Company shall be construed as creating the relationship of employer

24         and employee between the Company and the Agent.  Subject to the provisions of this
      contract, the Agent, as an independent contractor, shall be free to exercise the Agent's own

25         discretion and judgment, with respect to the persons from whom the Agent will solicit
      applications, and with respect to the time, place, method and manner of solicitation and of

26         performance under this contract.  Ex. A, § 5.

27

28

-6-

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

1

2          I declare under penalty of perjury under the laws of the United States of America that the

3  foregoing is true and correct.  Executed this _5th_ day of November 2007 in New York, New York.

4

5                                                    _Robit J Hynes_
                                                     Robert J. Hynes

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-7-

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

# Exhibit - A

New York Life Insurance Company
51 Madison Avenue, New York, N.Y. 10010

### AGENT'S CONTRACT
(Form QN6-82)

Agent: __Lyle H. Hughes__

Address: __1541 Bixton - Modesto__    __Stanislaus__    __California__    __95356__
(City)                           (County)           (State)

General Office: __Stockton General Office    S15__

Effective Date: __February 1, 1984__

NEW YORK LIFE INSURANCE COMPANY (hereinafter the Company) hereby authorizes the Agent, named above, to solicit applications for individual life insurance policies, individual annuity policies, individual health insurance policies, group insurance policies, Employee Protection Insurance Plans, franchise insurance plans and group annuity policies, all on such plans as are issued by the Company at the time and place such applications are obtained. It is mutually agreed that this authority to act as a soliciting agent of the Company is granted by the Company and accepted by the Agent upon the following limitations, terms, provisions and conditions:

1. The Agent shall conduct the Agent's business with the Company through the General Office named above until further written notice from the Company. The Agent shall have no authority to solicit applications or conduct business in any jurisdiction unless duly licensed under the laws of such jurisdiction to act as such soliciting agent. The Agent shall have no exclusive right to solicit applications in any territory.

2. The Agent shall have no authority for or on behalf of the Company to accept risks of any kind, to make, modify or discharge contracts, to extend the time for paying any premium, to bind the Company by any statement, promise or representation, to waive forfeitures or any of the Company's rights or requirements, or to place the Company under any legal obligation by any act which is not within the authority granted by the Company in this contract or otherwise in writing.

3. The Agent is authorized to collect first and single premiums on behalf of the Company only as follows:

    (a) In connection with each application, including any supplementary application, obtained by the Agent, the Agent may collect an amount not exceeding the full first premium for the policy applied for, or not exceeding the single premium if a single premium policy is applied for, but only if the Agent delivers to the applicant in exchange therefor the coupon receipt attached to the application and corresponding therewith in date and number, and

    (b) If the full first premium is not paid when the application is taken, the Agent shall collect any unpaid balance of all premiums due the Company as of the delivery date, and

    (c) In connection with a change of, or the conversion of, or the addition of a rider to, an in-force policy, the amount charged the policyowner by the Company for completing the change, conversion or addition.

Except as authorized above, the Agent shall have no authority to receive or collect for the Company any premiums or other moneys due or to become due to it.

4. All moneys received by the Agent for or on behalf of the Company shall be received by the Agent in a fiduciary capacity, and shall not be used for any personal or other purpose whatsoever but shall be immediately paid over to the Company. When requested by the Company to do so, the Agent shall advise the Company, in writing, with respect to the circumstances under which the Agent delivered any policy and, with respect to any policy given to the Agent for delivery on which the Company has not received any premium, whether the policy has been delivered or remains in the Agent's possession and whether the Agent has collected any premium on the policy.

—1—

5. Neither the term "Agent" (used in this contract solely for convenience in designating one of the parties) nor anything contained in this contract or in any of the rules or regulations of the Company shall be construed as creating the relationship of employer and employee between the Company and the Agent. Subject to the provisions of this contract and within the scope of the authority granted by this contract, the Agent, as an independent contractor, shall be free to exercise the Agent's own discretion and judgment with respect to the persons from whom the Agent will solicit applications, and with respect to the time, place, method and manner of solicitation and of performance under this contract. But the Agent agrees that the Agent will not engage in conduct which will affect adversely the good standing or reputation of the Company.

6. The Agent hereby (a) acknowledges receipt of the "Agent's Handbook" and agrees to observe and abide by the limitations of authority and the rules specified in or issued as supplements to the Handbook which apply generally to Agents of the Company; (b) agrees that the Agent's rights to receive commissions as provided in this contract shall be further subject to the rules relating to commissions as contained in the Agent's Handbook or other published Company rules; and (c) agrees that, under the circumstances stated in the Handbook, the Agent shall be liable for payment of the fees, charges and payments specified in the Handbook. The agreements contained in this Section 6 shall extend to any changes or additions to said limitations and rules, whether published in a new Handbook or otherwise given to the Agent by written notice, but no rule hereafter adopted shall be construed so as to restrict the Agent's right to direct and control the Agent's work in the performance of this contract.

7. The Agent agrees to reimburse the Company for all attorney's fees, costs, expenses and losses of every kind which the Company may at any time incur or pay on account of any garnishment, attachment or other legal process or order of any kind which may be served upon the Company by reason of the existence of this or any other agents contract by and between the Company and the Agent or on account of any assignment applicable to any such agents contract.

8. The Company is hereby given a paramount and prior lien upon any commissions payable under or as a result of this or any previous agents contract and under any and all agreements amendatory or supplementary to this contract as security for the payment of any claim or indebtedness or reimbursement whatsoever due or to become due to the Company from the Agent. Any sums becoming due to the Agent at any time may be applied, directly, by the Company to the liquidation of any indebtedness or obligation of the Agent to the Company, but the failure to so apply any sum shall not be deemed a waiver of the Company's lien on any other sums becoming due nor impair its rights to so apply such sums.

9. Either the Agent or the Company may, with or without cause, terminate this contract upon written notice, said termination to become effective thirty days after the day on which such notice is dated.

10. In addition to the right of the Company to terminate this contract as provided in Section 9 above, the Company shall have the right, at its option, to terminate this contract immediately upon giving written notice of such termination to the Agent, for any one or more of the following causes:

(a) The collection or receipt by the Agent of any moneys for or on behalf of, or due or to become due to, the Company except as authorized in Section 3 above.

(b) Any unauthorized appropriation to the Agent's own use and purpose of any money or other property received by the Agent for or on behalf of the Company or received by the Agent for the benefit of a person other than the Agent.

(c) The submission to the Company by the Agent of any document on which any required signature is not a genuine or duly authorized signature.

(d) Any withholding by the Agent of any policy or document after such policy or document shall have been demanded by the Company.

(e) Any act of the Agent by which the Agent, directly or indirectly, sells or offers to sell to any person or persons, policies issued by the Company at any deviation from the published rates of the Company as furnished to the Agent by the Company from time to time.

(f) A violation by the Agent of the anti-rebate or improper inducement laws of any state or jurisdiction.

(g) Revocation by any state or jurisdiction of the agent's license to act as a soliciting agent.

11.    Any failure of the Company in any instance to terminate this contract when cause for such termination exists, or to insist upon compliance with any of the limitations, terms, provisions and conditions of this contract, shall not be construed as a waiver of any of the Company's rights or of any such limitations, terms, provisions and conditions, or of the right of the Company to thereafter enforce its rights or insist upon such compliance.

12.    Except for the right to receive commissions, the rights, interests and claims of the Agent against the Company arising under or growing out of this contract are not assignable, and no assignee shall acquire any rights thereto, without the written consent of the Company. The right to receive commissions under this contract may be assigned without the written consent of the Company, but the Company must receive reasonable proof of such assignment before it commences payment to an assignee. The rights of an assignee under any assignment to which consent has been or may be given or to an assignment of the right to receive commissions shall be subject to the paramount and prior lien given to the Company by Section 8 above.

13.    **Commissions on Individual Life Insurance Policies and Individual Annuity Policies** – The Company shall pay to the Agent, *subject to all the limitations, terms, provisions and conditions of this contract*, commissions on premiums received by the Company under individual life insurance policies and individual annuity policies effected upon applications obtained by the Agent while this contract is in force, such commissions being at the applicable rates and for the policy years, or portions thereof, and under the rules and conditions as specified for agents operating under Agent's Contract (Form QN6-82) in the Company's "Schedules of First Year and Renewal Commission Rates on Individual Life Insurance and Annuity Policies" in force at the time the applications are obtained unless specified otherwise, in writing, by the Company. A copy of such Schedules will be available for the Agent's inspection at any reasonable time at the General Office named above.

The Company reserves the right to change such Schedules, in whole or in part, at any time by giving written notice to the Agent and the new rates, policy years, rules and conditions will apply as set forth in the Schedules.

On all types and plans of individual life insurance policies and individual annuity policies which the Company may issue and which are not included in the "Schedules of First Year and Renewal Commission Rates on Individual Life Insurance and Individual Annuity Policies", or although included in such Schedules are issued under special underwriting terms and conditions, the commissions shall be such as shall be designated in writing by an Executive Officer of the Company.

14.    **Commissions on Individual Health Insurance Policies** – The Company shall pay to the Agent, *subject to all the limitations, terms, provisions and conditions of this contract*, commissions on premiums received by the Company under individual health insurance policies effected upon applications obtained by the Agent while this contract is in force, such commissions being at the applicable rates and for the policy years, or portions thereof, and under the rules and conditions as specified for agents operating under Agent's Contract (Form QN6-82) in the Company's "Schedules of First Year and Renewal Commission Rates on Individual Health Insurance Policies" in force at the time the applications are obtained unless specified otherwise, in writing, by the Company. A copy of such Schedules will be available for the Agent's inspection at any reasonable time at the General Office named above.

The Company reserves the right to change such schedules, in whole or in part, at any time by giving written notice to the Agent and the new rates, policy years, rules and conditions will apply as set forth in the Schedules.

On all policies of individual health insurance which the Company may issue and which are not included in the "Schedules of First Year and Renewal Commission Rates on Individual Health Insurance Policies", or although included in such Schedules are issued under special underwriting terms and conditions, the commissions shall be such as shall be designated in writing by an Executive Officer of the Company.

15.    **Compensation on Group Policies, Employee Protection Insurance Plans, Franchise Insurance Plans, and Group Annuity Policies** – The Company shall pay to the Agent, *subject to all the limitations, terms, provisions and conditions of this contract*, compensation on premiums received by the Company under group insurance policies, Employee Protection Insurance Plans, and franchise insurance plans administered by the Company's Group Insurance Department and on considerations received by the Company under group annuity policies effected upon applications obtained through the solicitation of the

Agent while this contract is in force. The amount of such compensation will be determined in accordance with the Company's "Schedules of Group Compensation Rates and Rules" in force at the time such policy takes effect. A copy of such Schedules will be available for the Agent's inspection at any reasonable time at the General Office named above.

The Company reserves the right to change such Schedules, in whole or in part, at any time without notice to the Agent and the new rates, policy years, rules and conditions will apply to premiums received on coverage which becomes effective after any such change takes effect.

Compensation with respect to (a) group insurance additions, extensions, liberalizations, reinstatements or replacements, and (b) group insurance underwritten jointly by the Company and another insurer or reinsured, in whole or in part, by another insurer, or by the Company, shall be determined in accordance with the Company's rules and regulations, whether published or unpublished, which are in effect at the time of the addition, change or underwriting.

16.  Any commissions payable under this contract after the Agent's death shall be credited to the Agent's account, as they become due, and be payable to the Agent's executors, administrators or assigns after deduction therefrom of any indebtedness or obligation of the Agent to the Company.

17.  Nothing in this contract, or any amendment or supplement to this contract, nor in any of the printed literature or forms of the Company shall impair the Company's right to the full and free exercise of its judgment in acting upon any application for an insurance or annuity policy; and the Agent shall have no right to any commission for submitting any application upon which no insurance or annuity policy is effected with the Company.

18.  Written notice to the Agent under this contract or any amendment or supplement to this contract may be given by mail or by publication in any official Marketing Department publication or bulletin of the Company or by any other means, except that a notice under Section 9 or Section 10 above shall not be given by means of such publication. If the written notice to the Agent is given by mail, it shall be deemed to have been given when duly addressed and mailed to the last known post office address of the Agent, postage prepaid. If such notice is given by publication, it shall be deemed to have been given whenever published as above.

19.  This contract shall take effect as of the effective date stated on Page 1 hereof, if duly signed by the Agent and countersigned on behalf of the Company.

20.  The first Contract Year under this contract will commence on the effective date in the calendar month stated on Page 1 hereof and will end in the next succeeding year on the last day of the calendar month specified in said effective date. Each subsequent Contract Year shall be a period of twelve (12) consecutive calendar months ending in each succeeding year on the last day of the calendar month so specified.

IN WITNESS WHEREOF, the parties to this contract have subscribed their names hereto and to a duplicate hereof.

Witnessed by _____

Training Supervisor

_____ /Agent

NEW YORK LIFE INSURANCE COMPANY

Countersigned for New York Life
Insurance Company

On___    October 17,    19 84    by

By  _____

John H. Stimpson
Executive Vice President

Title:  Sales Manager

—4—

# Exhibit - B

# Nylic Contract

# Nylic
# NO. QN6
# '82

## New York Life Insurance
## Company, Jan. 1982

# CONTENTS

**Section** — **Page**

1. Nylic Membership — 1
   a. Conditions of Nylic Membership — 1
   b. Termination of Nylic Membership — 2

2. Definitions — 2
   a. Nylic Year — 2
   b. Nylic Count Insurance — 2
   c. Persisting Insurance — 3

3. Drawing Nylic Income — 3
   a. Base — 3
   b. Rates — 5
   c. Method of Calculation — 5

4. Senior Nylic Income Beginning in the 21st Nylic Year — 5
   a. Base — 5
   b. Rate — 6
   c. Method of Calculation — 6

5. Increases in Senior Nylic Income — 6
   a. Base — 6
   b. Rates — 7
   c. Method of Calculation — 7

6. Senior Nylic Income Reduced if Agent Has a Survivorship Arrangement under the Nylic Retirement Plan — 7

# CONTENTS (continued)

| Section | Page |
|---|---|
| 7.  Physical Incapacity Benefit | 7 |
|    a.  Physical Incapacity Benefit for Disabilities Commencing in Nylic Years 6 through 15 | 8 |
|    b.  Physical Incapacity Benefit for Disabilities Commencing, in Nylic Years 16 through 20 | 8 |
|    c.  Physical Incapacity Benefit for Disabilities Commencing in Nylic Years 21 through 30 | 9 |
| 8.  General Rules Applicable to the Calculation and Payment of Nylic Income | 9 |
|    a.  Date of Nylic Income Payments | 9 |
|    b.  Nylic Count Insurance — Additional Rules | 9 |
|    c.  Health Policies — Special Rules | 10 |
|    d.  Nylic Year in Which Nylic Count Insurance is Obtained | 10 |
|    e.  Agent's Indebtedness | 11 |
|    f.  Assignment of Nylic | 11 |
|    g.  Amendment | 11 |
|    h.  Exceptions | 11 |
| Table I — Method of Calculating Monthly Drawing Nylic Income | 12 |
| Table II — Method of Calculating Monthly Senior Nylic Income Beginning in the 21st Nylic Year | 13 |
| Table III — Method of Calculating Increases in Monthly Senior Nylic Income | 14 |
| Table IV — Illustrative Survivorship Arrangement Factors | 15 |
| Illustrations | 16 |
|    Method of Calculating Monthly Nylic Income | 17 |
|      Nylic Years 3 — 20 Inclusive | 17 |
|      Beginning in the 21st Nylic Year | 18 |
|      Beginning in the 26th Nylic Year | 19 |
|      Beginning in the 31st Nylic Year | 20 |
|      Beginning in the 36th Nylic Year | 21 |

## NYLIC NO. QN6-82

"Nylic" is derived from the initial letters of the words that make up the corporate name, New York Life Insurance Company (the Company). Nylic is not used here as a reference to the Company, but instead is a name for the contract under which an eligible Agent of the Company may become a member of a body of persistent and successful Agents and receive the benefits of that membership.

Agents of New York Life Insurance Company eligible to qualify for membership in Nylic are in business for themselves. The Agent is his or her own master. Within the authority granted by the Agent's Contract, and subject to its provisions, the Agent is free to operate without direction and control by the Company as to the persons from whom the Agent will obtain applications and as to the time, place, method and manner of obtaining applications and of performance under such contract.

The Agent's freedom of action and the Agent's earnings from the Nylic Contract are incentives for persistent and sustained production of new business. Nylic offers to each eligible Agent the opportunity, year after year, under specified conditions, to qualify for and to receive specified benefits based on the Agent's actual production results. These benefits are in addition to the commissions that are provided for in the Agent's Contract.

The Nylic Contract governs the payment of Nylic income, and consists of this Booklet and the Application for Membership in Nylic, QN6-82. The Application must be signed by the Agent and approved by New York Life. The countersigned copy of the completed and approved Application should be kept with this Booklet.

### 1. Nylic Membership

To apply for membership in Nylic, an Agent must operate under an Agent's Contract (Form QN6-82) for at least one year, and must submit to the Company a signed Application for Membership in Nylic No. QN6-82. If the Application for Membership in Nylic is approved by an Executive Officer of the Company, a copy of the countersigned and approved Application will be returned to the Agent, and membership in Nylic will begin with the effective date of the Agent's Contract (Form QN6-82).

#### a. *Conditions of Nylic Membership*

To qualify for and maintain membership in Nylic, an Agent must continuously comply with the following Conditions from the effective date of his or her Agent's Contract (Form QN6-82):

(1) Operate under an Agent's Contract (Form QN6-82, or any subsequent contract designated in writing by an Executive Officer of the Company as one under which the Agent will be eligible for a Nylic Contract) and comply with all its terms; and

(2) Obtain Nylic Count Insurance in each Nylic Year of not less than $250,000 (health policies and policies on the Agent's life will not count toward the $250,000 requirement, although they may count in determining Nylic income); and

(3) Not engage in any other business or occupation for remuneration or profit without the written consent of the Company; and

(4) Not represent any other insurance company.

1

b.   *Termination of Nylic Membership*

An Agent's Nylic membership will terminate when:

(1)  The Agent dies; or

(2)  His or her Agent's Contract (Form QN6-82) is terminated, whether with or without cause; or

(3)  The Agent retires or reaches his or her latest possible retirement date under the Nylic Retirement Plan; or

(4)  The Agent begins to receive monthly Physical Incapacity Income payments; or

(5)  The Agent fails to comply at any time with any of the Conditions of Subsection 1.a. above concerning Nylic membership (except that the $250,000 production requirement of Condition (2) will not apply after the Agent has completed 30 Nylic Years).

Nylic membership will also terminate upon written notice by the Company if the Agent fails to comply with any other terms or provisions of this Contract. Termination of Nylic membership will terminate the Nylic Contract and the Agent's rights and benefits under the Nylic Contract, and no further payments of any kind will be due under it (except as provided in Section 7 on Physical Incapacity Benefits).

2.   **Definitions**

"Nylic Year", "Nylic Count Insurance", and "Persisting Insurance" have the meanings set forth below. These terms are used in Sections 3, 4, 5, and 7, which describe the calculation of Nylic Income and Physical Incapacity Income, and are also used in other sections of this Contract.

a.   *Nylic Year*

A Nylic Year consists of 12 consecutive calendar months of an Agent's Nylic membership and coincides with each Contract Year as defined in his or her Agent's Contract (Form QN6-82).

An Agent's first Nylic Year begins, subject to the conditions in Section 1, on the effective date of his or her Agent's Contract and ends on the last day of the same calendar month in the following calendar year. Each Nylic Year thereafter consists of the following 12 consecutive calendar months.

b.   *Nylic Count Insurance*

Nylic Count Insurance is the basic face amount (except as otherwise designated in writing by an Executive Officer of the Company) of New York Life individual policies of life and endowment insurance issued on applications personally obtained by the Agent, on which at least one full year's premium has been paid to, and received by, the Company in due course. If a policy lapses, is cancelled, matures, or otherwise terminates before such payment and receipt have occurred, the policy will not count for Nylic.

The following policies are ineligible to count for Nylic: term insurance of whatever form, annuities, group insurance, single premium insurance, and other policies designated in writing by an Executive Officer of the Company as ineligible to count for Nylic.

2

Non-cancellable health policies and guaranteed renewable health policies issued on applications personally obtained by the Agent, on which at least one full year's premium has been paid to, and received by, the Company in due course, will also count for Nylic. The additional Nylic income payable with respect to health policies is calculated separately according to the formulas in Sections 3, 4, 5, and 7, after first applying a formula that converts health premiums into a face amount, as described in Subsection 8.c.

c.   *Persisting Insurance*

Persisting Insurance at the end of any Nylic Year is the Nylic Count Insurance remaining in force at the end of that Nylic Year. However, Nylic Count Insurance will not be considered in force for this purpose if it is under a nonforfeiture provision or has any premium in default.

## 3.   Drawing Nylic Income

Drawing Nylic Income is payable monthly to a Nylic member in the member's 3rd through 20th Nylic Years. Drawing Nylic Income will cease in any year with the last monthly payment due immediately prior to the time the Agent's membership in Nylic terminates, as provided in Subsection 1.b. Moreover, Drawing Nylic Income is not payable while the member is receiving Physical Incapacity Income under Subsection 7.a. or b.

The amount of monthly Drawing Nylic Income is determined by multiplying an income base by the applicable monthly income rate, as follows:

a.   *Base*

The base for Drawing Nylic Income payable in a particular Nylic Year is the amount of Nylic Count Insurance obtained in a specified earlier Nylic Year that is Persisting Insurance at the end of the Nylic Year immediately preceding payment, as follows:

*Nylic Year 3.* The base for Drawing Nylic Income payable in Nylic Year 3 is the Nylic Count Insurance obtained in Nylic Year 1 that is Persisting Insurance at the end of Nylic Year 2.

*Nylic Year 4.* The base for Drawing Nylic Income payable in Nylic Year 4 is the Nylic Count Insurance obtained in Nylic Year 2 that is Persisting Insurance at the end of Nylic Year 3.

*Nylic Year 5.* The base for Drawing Nylic Income payable in Nylic Year 5 is the Nylic Count Insurance obtained in Nylic Year 3 that is Persisting Insurance at the end of Nylic Year 4.

*Nylic Year 6.* The base for Drawing Nylic Income payable in Nylic Year 6 is the Nylic Count Insurance obtained in Nylic Year 1 that is Persisting Insurance at the end of Nylic Year 5.

*Nylic Year 7.* The base for Drawing Nylic Income payable in Nylic Year 7 is the Nylic Count Insurance obtained in Nylic Year 2 that is Persisting Insurance at the end of Nylic Year 6.

*Nylic Year 8.* The base for Drawing Nylic Income payable in Nylic Year 8 is the Nylic Count Insurance obtained in Nylic Year 3 that is Persisting Insurance at the end of Nylic Year 7.

3

*Nylic Year 9.* The base for Drawing Nylic Income payable in Nylic Year 9 is the Nylic Count Insurance obtained in Nylic Year 4 that is Persisting Insurance at the end of Nylic Year 8.

*Nylic Year 10.* The base for Drawing Nylic Income payable in Nylic Year 10 is the Nylic Count Insurance obtained in Nylic Year 5 that is Persisting Insurance at the end of Nylic Year 9.

*Nylic Year 11.* The base for Drawing Nylic Income payable in Nylic Year 11 is the Nylic Count Insurance obtained in Nylic Year 6 that is Persisting Insurance at the end of Nylic Year 10.

*Nylic Year 12.* The base for Drawing Nylic Income payable in Nylic Year 12 is the Nylic Count Insurance obtained in Nylic Year 7 that is Persisting Insurance at the end of Nylic Year 11.

*Nylic Year 13.* The base for Drawing Nylic Income payable in Nylic Year 13 is the Nylic Count Insurance obtained in Nylic Year 8 that is Persisting Insurance at the end of Nylic Year 12.

*Nylic Year 14.* The base for Drawing Nylic Income payable in Nylic Year 14 is the Nylic Count Insurance obtained in Nylic Year 9 that is Persisting Insurance at the end of Nylic Year 13.

*Nylic Year 15.* The base for Drawing Nylic Income payable in Nylic Year 15 is the Nylic Count Insurance obtained in Nylic Year 10 that is Persisting Insurance at the end of Nylic Year 14.

*Nylic Year 16.* The base for Drawing Nylic Income payable in Nylic Year 16 is the Nylic Count Insurance obtained in Nylic Year 11 that is Persisting Insurance at the end of Nylic Year 15.

*Nylic Year 17.* The base for Drawing Nylic Income payable in Nylic Year 17 is the Nylic Count Insurance obtained in Nylic Year 12 that is Persisting Insurance at the end of Nylic Year 16.

*Nylic Year 18.* The base for Drawing Nylic Income payable in Nylic Year 18 is the Nylic Count Insurance obtained in Nylic Year 13 that is Persisting Insurance at the end of Nylic Year 17.

*Nylic Year 19.* The base for Drawing Nylic Income payable in Nylic Year 19 is the Nylic Count Insurance obtained in Nylic Year 14 that is Persisting Insurance at the end of Nylic Year 18.

*Nylic Year 20.* The base for Drawing Nylic Income payable in Nylic Year 20 is the Nylic Count Insurance obtained in Nylic Year 15 that is Persisting Insurance at the end of Nylic Year 19.

4

b.   *Rates*

The rates of monthly Drawing Nylic Income per $1,000 of Drawing Nylic Income base are as follows:

| For Monthly Drawing Nylic Income Payable In | Monthly Drawing Nylic Income Rate per $1,000 of Base |
|---|---|
| Nylic Years 3 through 5 | $.40 |
| Nylic Years 6 through 10 | .60 |
| Nylic Years 11 through 15 | .80 |
| Nylic Years 16 through 20 | 1.00 |

c.   *Method of Calculation*

The method of calculating the monthly Drawing Nylic Income payable in any Nylic Year is shown in Table I.

## 4.   Senior Nylic Income Beginning in the 21st Nylic Year

Senior Nylic Income is payable monthly to a Nylic member beginning in the member's 21st consecutive Nylic Year, and continuing in each of the member's Nylic Years after that. Senior Nylic Income will cease in any year with the last monthly payment due immediately prior to the time the Agent's membership in Nylic terminates, as provided in Subsection 1.b.

The amount of monthly Senior Nylic Income beginning in a member's 21st Nylic Year is determined by multiplying the income base by the monthly income rate, as follows:

a.   *Base*

Senior Nylic Income payable beginning in the 21st Nylic Year is based on the amount and persistency of the Nylic Count Insurance obtained during the prior 20 Nylic Years. To derive this income base, the three factors described below are averaged by totalling them and dividing by three.

*Factor A*

The Nylic Count Insurance obtained in each of Nylic Years 1 through 15, respectively, that was Persisting Insurance at the end of the 4th Nylic Year following the Nylic Year in which it was obtained is averaged by totalling these Persisting Insurance amounts and dividing by 15.

*Factor B*

The Nylic Count Insurance obtained in each of Nylic Years 1 through 15, respectively, that was Persisting Insurance at the end of the 9th Nylic Year following the Nylic Year in which it was obtained, or at the end of the 20th Nylic Year, if sooner, is averaged by totalling these Persisting Insurance amounts and dividing by 15.

5

*Factor C*

The amounts of Nylic Count Insurance obtained in each of Nylic Years 16 through 20 are averaged by totalling these amounts and dividing by 5. This average amount of Nylic Count Insurance is then multiplied by a persistency ratio equal to the proportion of all Nylic Count Insurance obtained in Nylic Years 11 through 19 that is Persisting Insurance at the end of the 20th Nylic Year.

b.   *Rate*

The monthly rate of Senior Nylic Income payable beginning in the 21st Nylic Year is $1.10 per $1,000 of base.

c.   *Method of Calculation*

The method of calculating the monthly Senior Nylic Income payable beginning in the 21st Nylic Year is shown in Table II.

**5.   Increases in Senior Nylic Income**

Monthly Senior Nylic Income will be increased at the beginning of a Nylic member's 26th consecutive Nylic Year and again at the beginning of each 5th consecutive year of Nylic membership after that. After it starts, each increase in Senior Nylic Income will be payable as long as the Agent is a member of Nylic, and will cease with the last monthly payment due immediately prior to the time the Agent's membership in Nylic terminates, as provided in Subsection 1.5.

The amount of each increase in monthly Senior Nylic Income is determined by multiplying an income base by the applicable monthly income rate, as follows:

a.   *Base*

Increases in Senior Nylic Income beginning in the 26th Nylic Year, and after each additional period of 5 Nylic Years, are based on the amount and persistency of the Nylic Count Insurance obtained during the 10 Nylic Years immediately preceding the Nylic Year in which the increase begins.

To determine the appropriate income base, the amounts of Nylic Count Insurance obtained during the prior 10 year period are averaged by totalling these amounts and dividing by 10. This average amount of Nylic Count Insurance is then multiplied by a persistency ratio equal to the proportion of all Nylic Count Insurance obtained during the first 9 of those Nylic Years that is Persisting Insurance at the end of that period of 10 Nylic Years.

6

b. *Rates*

The rates of monthly Senior Nylic Income increase per $1,000 of base are as follows:

| For Increase in Monthly Senior Nylic Income Starting In | Monthly Rate of Increase in Senior Nylic Income Per $1,000 of Base |
|---|---|
| Nylic Year 26 | $.50 |
| Nylic Year 31 | .60 |
| Nylic Year 36 | .70 |
| Nylic Year 41 | .75 |
| Nylic Year 46 | .80 |
| Nylic Year 51 | .85 |

c. *Method of Calculation*

The method of calculating increases in monthly Senior Nylic Income is shown in Table III.

### 6. Senior Nylic Income Reduced if Agent Has a Survivorship Arrangement under the Nylic Retirement Plan

The Senior Nylic Income formulas set forth in the preceding pages are used to calculate Senior Nylic Income payable to Nylic members who have a Single Life Arrangement under the Nylic Retirement Plan. Nylic members who have a Survivorship Arrangement under the Nylic Retirement Plan will have their Senior Nylic Income reduced in accordance with factors adopted by the Company for that purpose, as illustrated in Table IV.

Rules and other details concerning the Single Life and Survivorship Arrangements appear in the Nylic Retirement Plan.

### 7. Physical Incapacity Benefit

A Nylic member who becomes totally disabled after having completed at least 5 Nylic Years, and as a result is totally incapacitated for work of any kind, will receive a Physical Incapacity Benefit under this Section.

To receive a Physical Incapacity Benefit, an Agent must furnish satisfactory proof of total disability and continuing total disability as required by the Company.

As described in Subsections a., b., and c. below, the benefit that an Agent receives will depend on the Nylic Year in which disability commences.

a.   *Physical Incapacity Benefit for Disabilities Commencing in Nylic Years 6 through 15*

Nylic members who become totally disabled in Nylic Years 6 through 15 will receive a monthly Physical Incapacity Income payment in accordance with Paragraphs (1) and (2) below, and Nylic membership will terminate on the last day of the month preceding the month in which the Physical Incapacity Income payments begin.

Physical Incapacity Income payments will begin one month after the due date of the last preceding Drawing Nylic Income payment provided under this Contract, and will be paid monthly during the continuance of total disability until the end of a period not exceeding 5 years in the aggregate, or if earlier, what would have been the Agent's latest possible retirement date under the Nylic Retirement Plan.

While Physical Incapacity Income is being paid, Drawing Nylic Income ceases, and no further Drawing Nylic Income is due.

(1)   *Agents Disabled in Nylic Years 6 through 10.* The amount of monthly Physical Incapacity Income will be the average of the monthly Drawing Nylic Income received in Nylic Years 6 through 10 and prior to disability, reduced by any Nylic Retirement Plan benefit received by the Agent under a Single Life Arrangement, or if received under a Survivorship Arrangement, the Single Life amount on which the Survivorship Arrangement amount is based.

(2)   *Agents Disabled in Nylic Years 11 through 15.* The amount of monthly Physical Incapacity Income will be the average of the monthly Drawing Nylic Income received in Nylic Years 11 through 15 and prior to disability, reduced by any Nylic Retirement Plan benefit received by the Agent under a Single Life Arrangement, or if received under a Survivorship Arrangement, the Single Life amount on which the Survivorship Arrangement amount is based.

b.   *Physical Incapacity Benefit for Disabilities Commencing in Nylic Years 16 through 20*

Nylic members who become totally disabled in Nylic Years 16 through 20 will receive a Physical Incapacity Benefit in accordance with Paragraphs (1) and (2) below:

(1)   *If the Agent is not eligible for a Disability Retirement Income* under the Nylic Retirement Plan because he or she is not totally and permanently disabled, the Company will waive the $250,000 production requirement in Paragraph (2) of Subsection 1.a. of his or her Nylic Contract for each continuous Nylic Year of disability, including the year of recovery.

If all other conditions of Nylic membership are met while the production requirement is being waived, the Agent will continue under this Nylic Contract and receive Nylic Income as if the disability had not occurred. Any Senior Nylic Income to which the Agent may become entitled will be determined on the basis of the Nylic Count Insurance actually obtained by the Agent. If the Agent obtains no Nylic Count Insurance in the year for which the production requirement is being waived, then zero will the amount of Nylic Count Insurance obtained in that Nylic Year.

(2)   *If the Agent is eligible for a Disability Retirement Income* under the Nylic Retirement Plan because he or she is totally and permanently disabled, the Agent's Nylic membership will terminate on the last day preceding the effective date of the Agent's

Disability Retirement. The Agent will receive monthly Physical Incapacity Income in an amount equal to the Drawing Nylic Income that would have been payable had the Agent not become disabled, reduced by any Nylic Retirement Plan benefit received by the Agent under a Single Life Arrangement, or if received under a Survivorship Arrangement, the Single Life amount on which the Survivorship Arrangement amount is based.

Physical Incapacity Income payments will begin one month after the due date of the last preceding Drawing Nylic Income payment provided under this Contract, and will be paid during the continuance of total and permanent disability until the end of what would have been the Agent's 20th Nylic Year, or if earlier, what would have been the Agent's latest possible retirement date under the Nylic Retirement Plan.

While Physical Incapacity Income is being paid, Drawing Nylic Income ceases and no further Drawing Nylic Income is due.

    c.   *Physical Incapacity Benefit for Disabilities Commencing in Nylic Years 21 through 30*

The following Paragraphs (1) and (2) apply to Nylic members who become totally disabled in Nylic Years 21 through 30:

    (1)   *If the Agent is not eligible for a Disability Retirement Income* under the Nylic Retirement Plan because he or she is not totally and permanently disabled, the Company will waive the $250,000 production requirement in Paragraph (2) of Subsection 1.a. of his or her Nylic Contract for each continuous Nylic Year of disability, including the year of recovery.

If all other conditions of Nylic membership are met while the production requirement is being waived, the Agent will continue under this Nylic Contract and receive Senior Nylic Income as if the disability had not occurred. Any increases in Senior Nylic Income to which the Agent may become entitled will be determined on the basis of the Nylic Count Insurance actually obtained by the Agent. If the Agent obtains no Nylic Count Insurance in the year for which the production requirement is being waived then zero will be the amount of Nylic Count Insurance obtained in that Nylic Year.

    (2)   *If the Agent is eligible for a Disability Retirement Income* under the Nylic Retirement Plan because he or she is totally and permanently disabled, the Agent's Nylic membership will terminate with the last day preceding the effective date of the Agent's Disability Retirement, and no further income will be due under this Contract.

**8.   General Rules Applicable to the Calculation and Payment of Nylic Income**

    a.   *Date of Nylic Income Payments*

The first monthly Nylic Income payment in any Nylic Year is due on the last day of the first month after the preceding Nylic Year ends. Subsequent monthly payments are due on the last day of each succeeding month.

    b.   *Nylic Count Insurance — Additional Rules*

The definition of Nylic Count Insurance in Subsection 2.b. of this Contract will be subject to the following additional rules:

    (1)   *Rescission.* Rescinded policies will not be considered Nylic Count Insurance.

    (2)   *Lapse and Reinstatement.* Policies that lapse and are later reinstated will be treated under this Contract as if there had been no lapse.

9

(3)  *Shared Commissions.* If an Agent shares commissions on a policy with another Agent, the amount of any Nylic Count Insurance must be shared in the same proportion as are the commissions.

c.  *Health Policies — Special Rules*

Nylic Income for health policies is calculated by determining a Commission Measure and then converting that Commission Measure into a face amount at a rate of $1,000 face amount for each $20 of Commission Measure. Commission Measure is derived by multiplying the policy's total yearly premium, as described below, by the first year commission rate.

The total yearly premium used to determine Nylic Count Insurance is the total yearly premium in effect when the final portion of the first year's premium is paid.

The total yearly premium used to determine Persisting Insurance at the end of any Nylic Year is the total yearly premium in effect at the end of that Nylic Year.

d.  *Nylic Year in Which Nylic Count Insurance is Obtained*

The Nylic Year in which Nylic Count Insurance will be considered to have been obtained is determined by the date of completion of the initial Part II (Medical or Non-Medical) of the Application, except as follows:

(1)  If an additional policy requiring no new medical examination is applied for, the date of the Agent's request for issue, if later than the date of Part II, will determine the Nylic Year.

(2)  Where term insurance is followed in the same policy by life or endowment insurance on an attained age basis, the effective date of the permanent insurance will determine the Nylic Year.

(3)  Where term insurance is converted on an attained age basis, the Nylic Year will be determined by the date of the request to convert.

(4)  Where term insurance is converted on an original age basis, the Nylic Year will be determined by the date of the request to convert; however, if all of the Agents effecting such a conversion are original Agents and are not retired under the Nylic Retirement Plan, and all elect to receive credit on an original age basis, the Nylic Year will instead be determined by the date of Part II of the application for the original term coverage.

(5)  For a policy issued on a Guaranteed Issue Basis where a Part II is not required, the date of Part I will determine the Nylic Year.

(6)  For a policy issued upon exercise of an option to purchase an additional policy where a Part II is not required, the policy date will determine the Nylic Year.

10

e.    *Agent's Indebtedness*

The Company has a paramount and prior lien upon all Drawing Nylic Income, Senior Nylic Income, and Physical Incapacity Income to satisfy any indebtedness of the Agent to the Company, and may apply any sums becoming due directly to the liquidation of such indebtedness.

The Company's failure to apply sums will not impair its right to do so, or be deemed a waiver of its lien on other sums becoming due.

f.    *Assignment of Nylic*

The right to receive Drawing Nylic Income, Senior Nylic Income and Physical Incapacity Income under this Contract may be assigned without the written consent of the Company, but the Company must receive reasonable proof of such assignment before it commences payment to an assignee. However, regardless of any assignment, no further payments of Drawing Nylic Income or Senior Nylic Income are due or payable when Nylic membership is terminated as provided in Subsection 1b. The amounts received by an Agent under the Nylic Retirement Plan are not assignable. Any amounts which are assigned under this contract are subject to the paramount and prior lien given to the Company by Subsection 8e. above.

g.    *Amendment*

The Company reserves the right to amend or repeal the terms and provisions of this Contract at any time. Any such amendment or repeal will affect future business only.

In addition, no change will be made that increases the amount of Nylic Count Insurance a member of Nylic must obtain to maintain membership, nor will any adverse change be made in the calculation of Nylic Income to such member.

h.    *Exceptions*

If the terms and provisions of this Contract would otherwise act unfairly on an Agent in an individual case, and if the facts and circumstances warrant, the Company may make appropriate exceptions to these terms and provisions. In no case shall an exception constitute a waiver of the terms and provisions of this Contract.

11

## TABLE I
## METHOD OF CALCULATING MONTHLY DRAWING NYLIC INCOME

| I | | II | | III |
|---|---|---|---|---|
| | | Drawing Nylic Income Base | | |
| | | (a) | (b) | |
| Amount of Monthly Drawing Nylic Income Payable in Nylic Year | = | Amount of Nylic Count Insurance Obtained in Nylic Year *that is* | Persisting Insurance At End of Nylic Year | x  Monthly Rate of Drawing Nylic Income per $1,000 of Drawing Nylic Income Base |
| 3 | | 1 | 2 | $.40 |
| 4 | | 2 | 3 | .40 |
| 5 | | 3 | 4 | .40 |
| 6 | | 1 | 5 | .60 |
| 7 | | 2 | 6 | .60 |
| 8 | | 3 | 7 | .60 |
| 9 | | 4 | 8 | .60 |
| 10 | | 5 | 9 | .60 |
| 11 | | 6 | 10 | .80 |
| 12 | | 7 | 11 | .80 |
| 13 | | 8 | 12 | .80 |
| 14 | | 9 | 13 | .80 |
| 15 | | 10 | 14 | .80 |
| 16 | | 11 | 15 | 1.00 |
| 17 | | 12 | 16 | 1.00 |
| 18 | | 13 | 17 | 1.00 |
| 19 | | 14 | 18 | 1.00 |
| 20 | | 15 | 19 | 1.00 |

Monthly Drawing Nylic Income payable in the Nylic Year in Column I equals the amount of Drawing Nylic Income base in Column II multiplied by the Drawing Nylic Income rate in Column III.

12

## TABLE II

### METHOD OF CALCULATING MONTHLY SENIOR NYLIC INCOME BEGINNING IN THE 21ST NYLIC YEAR

| Factor A | | Factor B | | Factor C | | |
|---|---|---|---|---|---|---|
| I | II | III | IV | V | VI | VII |
| Amount of Nylic Count Insurance Obtained in *that* *is* Nylic Year | Persisting Insurance At End of Nylic Year | Amount of Nylic Count Insurance Obtained in *that* *is* Nylic Year | Persisting Insurance At End of Nylic Year | Amount of Nylic Count Insurance Obtained in Nylic Year | Amount of Nylic Count Insurance Obtained in *that* *is* Nylic Year | Persisting Insurance At End of Nylic Year |
| 1 | 5 | 1 | 10 | 16 | 11 | 20 |
| 2 | 6 | 2 | 11 | 17 | 12 | 20 |
| 3 | 7 | 3 | 12 | 18 | 13 | 20 |
| 4 | 8 | 4 | 13 | 19 | 14 | 20 |
| 5 | 9 | 5 | 14 | 20 | 15 | 20 |
| 6 | 10 | 6 | 15 | | 16 | 20 |
| 7 | 11 | 7 | 16 | | 17 | 20 |
| 8 | 12 | 8 | 17 | | 18 | 20 |
| 9 | 13 | 9 | 18 | | 19 | 20 |
| 10 | 14 | 10 | 19 | | | |
| 11 | 15 | 11 | 20 | | | |
| 12 | 16 | 12 | 20 | | | |
| 13 | 17 | 13 | 20 | | | |
| 14 | 18 | 14 | 20 | | | |
| 15 | 19 | 15 | 20 | | | |
| | Total Col. II | | Total Col. IV | Total Col. V | Total Col. VI | Total Col. VII |

Factor A = Total of the amounts in Col. II divided by 15

Factor B = Total of the amounts in Col. IV divided by 15

Factor C = The total of the amounts in Col. V divided by 5, and multiplied by the total of the amounts in Col. VII divided by the total of the amounts in Col. VI

$$= \frac{\text{Total Amts. Col. II}}{15}$$

$$= \frac{\text{Total Amts. Col. IV}}{15}$$

$$= \frac{\text{Total Amts. Col. V}}{5} \times \frac{\text{Total Amts. Col. VII}}{\text{Total Amts. Col. VI}}$$

Monthly Senior Nylic Income beginning in Nylic Year 21 $= \frac{[\text{Factor A} + \text{Factor B} + \text{Factor C}]}{3} \times \frac{(\$1.10)}{(\$1,000)}$

## TABLE III
## METHOD OF CALCULATING INCREASES IN MONTHLY SENIOR NYLIC INCOME

| I | II | | | III |
|---|---|---|---|---|
| | Base For Increase in Senior Nylic Income is determined by dividing the amount in Col. (a) below by 10, and then multiplying by a persistency ratio, which is equal to the amount in Col. (c) below divided by the amount in Col. (b) below. | | | |
| | (a) | (b) | (c) | |
| The Amount of Increase in Monthly Senior Nylic Income Beginning In Nylic Year | The Total Amount of Nylic Count Insurance Obtained in Nylic Years | The Total Amount of Nylic Count Insurance Obtained in Nylic Years | Persisting Insurance at the End of Nylic Year | The Monthly Rate of Increase in Senior Nylic Income per $1,000 of Base |
| | | *denon* | *numer.* | |
| 26 | 16-25 | 16-24 | 25 | $ .50 |
| 31 | 21-30 | 21-29 | 30 | .60 |
| 36 | 26-35 | 26-34 | 35 | .70 |
| 41 | 31-40 | 31-39 | 40 | .75 |
| 46 | 36-45 | 36-44 | 45 | .80 |
| 51 | 41-50 | 41-49 | 50 | .85 |

The Monthly rate of Increase in Senior Nylic Income that begins in the Nylic Year in Column I equals the Base for Senior Nylic Income determined in Column II multiplied by the Monthly Rate of Increase in Senior Nylic Income in Column III.

14

## TABLE IV

## ILLUSTRATIVE SURVIVORSHIP ARRANGEMENT FACTORS

| Age Last Birthday As Of the Effective Date of the Survivorship Arrangement or Any Subsequent Increase in Senior Nylic Income, as Applicable | | Monthly Senior Nylic Income for an Agent Under a Survivorship Arrangement (per $100 of Monthly Senior Nylic Income, or Increase in Senior Nylic Income, Otherwise Payable to an Agent Under a Single Life Arrangement) |
|---|---|---|
| Agent | Spouse | |
| 45 | 40 | $88.24 |
|  | 45 | 90.44 |
| 50 | 45 | 86.76 |
|  | 50 | 89.34 |
| 55 | 50 | 85.16 |
|  | 55 | 88.18 |
| 60 | 55 | 83.48 |
|  | 60 | 87.02 |
| 65 | 60 | 81.78 |
|  | 65 | 85.92 |

Corresponding figures for other combinations of ages will be furnished upon request.

15

## ILLUSTRATIONS OF NYLIC INCOME
### BASED ON 35 YEARS OF
## ACTIVE PRODUCTION UNDER NYLIC NO. QN6-82

The illustrations that follow are solely for the
purpose of illustrating the METHOD of
calculating monthly income benefits and for
such purpose are based on the indicated
assumptions as to (1) yearly amounts of Nylic
Count Insurance and (2) the persistency of
that insurance. In actual practice, the
amounts of Nylic Count Insurance and the per-
sistency thereof applicable to each individual
Agent, would, of course, be used to calculate
the amount of income applicable to that in-
dividual Agent.

16

## ILLUSTRATION OF METHOD OF CALCULATING MONTHLY NYLIC INCOME IN NYLIC YEARS 3-20 INCLUSIVE

| Assumed "Nylic Count Insurance" During Indicated Nylic Year | Assumed Persistency | "Persisting Insurance" at the end of Indicated Nylic Year = (1)×(2) | MONTHLY NYLIC INCOME | |
|---|---|---|---|---|
| | | | Rate per $1,000 to be applied to "Persisting Insurance" in Col. (3) | Payable in Indicated Nylic Year = (3)×(4) |
| (1) | (2) | (3) | (4) | (5) |
| 1st Year .... $2,000,000 | .894 | 2nd Year ... $1,788,000 | $ .40 | 3rd Year ..... $   715.20 |
| 2nd Year ....  2,000,000 | .894 | 3rd Year ....  1,788,000 |   .40 | 4th Year .....      715.20 |
| 3rd Year ....  2,000,000 | .894 | 4th Year ....  1,788,000 |   .40 | 5th Year .....      715.20 |
| 1st Year .... $2,000,000 | .748 | 5th Year .... $1,496,000 | $ .60 | 6th Year ..... $   897.60 |
| 2nd Year ...  2,000,000 | .748 | 6th Year ....  1,496,000 |   .60 | 7th Year .....      897.60 |
| 3rd Year ....  2,000,000 | .748 | 7th Year ....  1,496,000 |   .60 | 8th Year .....      897.60 |
| 4th Year ....  2,000,000 | .748 | 8th Year ....  1,496,000 |   .66 | 9th Year .....      897.60 |
| 5th Year ....  2,000,000 | .748 | 9th Year ....  1,496,000 |   .60 | 10th Year .....      897.60 |
| 6th Year .... $2,000,000 | .748 | 10th Year .... $1,496,000 | $ .80 | 11th Year ..... $1,196.80 |
| 7th Year ....  2,000,000 | .748 | 11th Year ....  1,496,000 |   .80 | 12th Year .....  1,196.80 |
| 8th Year ....  2,000,000 | .748 | 12th Year ....  1,496,000 |   .60 | 13th Year .....  1,196.80 |
| 9th Year ....  2,000,000 | .748 | 13th Year ....  1,496,000 |   .80 | 14th Year .....  1,196.80 |
| 10th Year ....  2,000,000 | .748 | 14th Year ....  1,496,000 |   .80 | 15th Year .....  1,196.80 |
| 11th Year .... $2,000,000 | .748 | 15th Year .... $1,496,000 | $1.00 | 16th Year ..... $1,496.00 |
| 12th Year ....  2,000,000 | .748 | 16th Year ....  1,496,000 |  1.00 | 17th Year .....  1,496.00 |
| 13th Year ....  2,000,000 | .748 | 17th Year ....  1,496,000 |  1.00 | 18th Year .....  1,496.00 |
| 14th Year ....  2,000,000 | .748 | 18th Year ....  1,496,000 |  1.00 | 19th Year .....  1,496.00 |
| 15th Year ....  2,000,000 | .748 | 19th Year ....  1,496,000 |  1.00 | 20th Year .....  1,496.00 |

17

## ILLUSTRATION OF METHOD OF CALCULATING MONTHLY SENIOR NYLIC INCOME BEGINNING IN 21ST CONSECUTIVE YEAR OF QUALIFIED NYLIC MEMBERSHIP

| | Factor A | | | Factor B | |
| Assumed "Nylic Count Insurance" During Indicated Nylic Year | Assumed Persistency | "Persisting Insurance" at the end of Indicated Nylic Year = (1) × (2) | Assumed Persistency | "Persisting Insurance" at the end of Indicated Nylic Year = (1) × (4) |
| (1) | (2) | (3) | (4) | (5) |
|---|---|---|---|---|
| 1st Year.... $2,000,000 | .748 | 5th Year ... $1,496,000 | .604 | 10th Year ... $1,208,000 |
| 2nd Year ... 2,000,000 | .748 | 6th Year ... 1,496,000 | .604 | 11th Year ... 1,208,000 |
| 3rd Year ... 2,000,000 | .748 | 7th Year ... 1,496,000 | .604 | 12th Year ... 1,208,000 |
| 4th Year ... 2,000,000 | .748 | 8th Year ... 1,496,000 | .604 | 13th Year ... 1,208,000 |
| 5th Year ... 2,000,000 | .748 | 9th Year ... 1,496,000 | .604 | 14th Year ... 1,208,000 |
| 6th Year ... 2,000,000 | .748 | 10th Year ... 1,496,000 | .604 | 15th Year ... 1,208,000 |
| 7th Year ... 2,000,000 | .748 | 11th Year ... 1,496,000 | .604 | 16th Year ... 1,208,000 |
| 8th Year ... 2,000,000 | .748 | 12th Year ... 1,496,000 | .604 | 17th Year ... 1,208,000 |
| 9th Year ... 2,000,000 | .748 | 13th Year ... 1,496,000 | .604 | 18th Year ... 1,208,000 |
| 10th Year ... 2,000,000 | .748 | 14th Year ... 1,496,000 | .604 | 19th Year ... 1,208,000 |
| 11th Year ... 2,000,000 | .748 | 15th Year ... 1,496,000 | .604 | 20th Year ... 1,208,000 |
| 12th Year ... 2,000,000 | .748 | 16th Year ... 1,496,000 | .628 | 20th Year ... 1,256,000 |
| 13th Year ... 2,000,000 | .748 | 17th Year ... 1,496,000 | .653 | 20th Year ... 1,306,000 |
| 14th Year ... 2,000,000 | .748 | 18th Year ... 1,496,000 | .681 | 20th Year ... 1,362,000 |
| 15th Year ... 2,000,000 | .748 | 19th Year ... 1,496,000 | .713 | 20th Year ... 1,426,000 |

Total = $22,440,000
Total divided by 15 =
FACTOR A = $ 1,496,000

Total = $18,638,000
Total divided by 15 =
FACTOR B = $ 1,242,533

**Factor C**

| Assumed "Nylic Count Insurance" During Indicated Nylic Year | Assumed "Nylic Count Insurance" During Indicated Nylic Year | Assumed Persistency | "Persisting Insurance" at the end of Indicated Nylic Year = (7) × (8) |
| (6) | (7) | (8) | (9) |
|---|---|---|---|
| 16th Year .... $ 2,000,000 | 11th Year .... $ 2,000,000 | .604 | 20th Year .... $ 1,208,000 |
| 17th Year .... 2,000,000 | 12th Year .... 2,000,000 | .628 | 20th Year .... 1,256,000 |
| 18th Year .... 2,000,000 | 13th Year .... 2,000,000 | .653 | 20th Year .... 1,306,000 |
| 19th Year .... 2,000,000 | 14th Year .... 2,000,000 | .681 | 20th Year .... 1,362,000 |
| 20th Year .... 2,000,000 | 15th Year .... 2,000,000 | .713 | 20th Year .... 1,426,000 |
| Total = $10,000,000 | 16th Year .... 2,000,000 | .748 | 20th Year .... 1,496,000 |
| | 17th Year .... 2,000,000 | .788 | 20th Year .... 1,576,000 |
| | 18th Year .... 2,000,000 | .835 | 20th Year .... 1,670,000 |
| | 19th Year .... 2,000,000 | .894 | 20th Year .... 1,788,000 |

(b) Total = $18,000,000

(a) Total = $13,088,000

Percentage of (a) to (b) = $\frac{\$13,088,000}{\$18,000,000}$ = 72.71%

$10,000,000 multiplied by 72.71%, divided by 5 = FACTOR C = $1,454,200

Base for Monthly Senior Nylic Income beginning in 21st consecutive Nylic Year:

FACTOR A    $1,496,000
FACTOR B     1,242,533
FACTOR C     1,454,200
Total    = $4,192,733

Total divided by 3 = Base = $1,397,578

MONTHLY SENIOR NYLIC INCOME BEGINNING IN 21ST CONSECUTIVE NYLIC YEAR
is $1.10 per $1,000 of the $1,397,578 base, namely .............................. $1,537.34 monthly

## ILLUSTRATION OF METHOD OF CALCULATING INCREASE IN MONTHLY SENIOR NYLIC INCOME BEGINNING IN 26TH CONSECUTIVE YEAR OF QUALIFIED NYLIC MEMBERSHIP

| Assumed "Nylic Count Insurance" During Indicated Nylic Year (1) | | Assumed "Nylic Count Insurance" During Indicated Nylic Year (2) | | Assumed Persistency (3) | "Persisting Insurance" at the end of Indicated Nylic Year = (2) × (3) (4) | |
|---|---|---|---|---|---|---|
| 16th Year .... | $ 2,000,000 | 16th Year .... | $ 2,000,000 | .604 | 25th Year .... | $ 1,208,000 |
| 17th Year .... | 2,000,000 | 17th Year .... | 2,000,000 | .628 | 25th Year .... | 1,256,000 |
| 18th Year .... | 2,000,000 | 18th Year .... | 2,000,000 | .653 | 25th Year .... | 1,306,000 |
| 19th Year .... | 2,000,000 | 19th Year .... | 2,000,000 | .681 | 25th Year .... | 1,362,000 |
| 20th Year .... | 2,000,000 | 20th Year .... | 2,000,000 | .713 | 25th Year .... | 1,426,000 |
| 21st Year .... | 2,000,000 | 21st Year .... | 2,000,000 | .748 | 25th Year .... | 1,496,000 |
| 22nd Year .... | 2,000,000 | 22nd Year .... | 2,000,000 | .788 | 25th Year .... | 1,576,000 |
| 23rd Year .... | 2,000,000 | 23rd Year .... | 2,000,000 | .835 | 25th Year .... | 1,670,000 |
| 24th Year .... | 2,000,000 | 24th Year .... | 2,000,000 | .894 | 25th Year .... | 1,788,000 |
| 25th Year .... | 2,000,000 | | | | | |
| Total | = $20,000,000 | [b] Total | = $18,000,000 | | (a) Total | = $13,088,000 |

Percentage of (a) to (b) = $\dfrac{13,088,000}{18,000,000}$ = 72.71%

Base for Increase in Monthly Senior Nylic Income beginning in 26th consecutive Nylic Year = $20,000,000 multiplied by 72.71%, divided by 10 = $1,454,200.

INCREASE IN MONTHLY SENIOR NYLIC INCOME BEGINNING IN 26TH CONSECUTIVE NYLIC YEAR
is $.50 per $1,000 of the $1,454,200 base, namely ................................................ $727.10 monthly

TOTAL MONTHLY SENIOR NYLIC INCOME BEGINNING IN 26TH CONSECUTIVE NYLIC YEAR is the sum of:
  (i) Monthly Senior Nylic Income beginning in the 21st consecutive Nylic Year,
      as illustrated ............................................................ $1,537.34 monthly
  (ii) Increase in Monthly Senior Nylic Income beginning in 26th consecutive Nylic Year,
      as above ................................................................. 727.10 monthly

Total = $2,264.44 monthly

19

## ILLUSTRATION OF METHOD OF CALCULATING ADDITIONAL INCREASE IN MONTHLY SENIOR NYLIC INCOME BEGINNING IN 31ST CONSECUTIVE YEAR OF QUALIFIED NYLIC MEMBERSHIP

| Assumed "Nylic Count Insurance" During Indicated Nylic Year | | Assumed "Nylic Count Insurance" During Indicated Nylic Year | | Assumed Persistency | "Persisting Insurance" at the end of Indicated Nylic Year = (2) × (3) | |
|---|---|---|---|---|---|---|
| (1) | | (2) | | (3) | (4) | |
| 21st Year | $ 2,000,000 | 21st Year | $ 2,000,000 | .604 | 30th Year | $ 1,208,000 |
| 22nd Year | 2,000,000 | 22nd Year | 2,000,000 | .628 | 30th Year | 1,256,000 |
| 23rd Year | 2,000,000 | 23rd Year | 2,000,000 | .653 | 30th Year | 1,306,000 |
| 24th Year | 2,000,000 | 24th Year | 2,000,000 | .681 | 30th Year | 1,362,000 |
| 25th Year | 2,000,000 | 25th Year | 2,000,000 | .713 | 30th Year | 1,426,000 |
| 26th Year | 2,000,000 | 26th Year | 2,000,000 | .748 | 30th Year | 1,496,000 |
| 27th Year | 2,000,000 | 27th Year | 2,000,000 | .788 | 30th Year | 1,576,000 |
| 28th Year | 2,000,000 | 28th Year | 2,000,000 | .835 | 30th Year | 1,670,000 |
| 29th Year | 2,000,000 | 29th Year | 2,000,000 | .894 | 30th Year | 1,788,000 |
| 30th Year | 2,000,000 | | | | | |
| Total | = $20,000,000 | (b) Total | = $18,000,000 | | (a) Total | = $13,088,000 |

Percentage of (a) to (b) = $\frac{\$13,088,000}{\$18,000,000}$ = 72.71 %

Base for Increase in Monthly Senior Nylic Income beginning in 31st consecutive Nylic Year = $20,000,000 multiplied by 72.71%, divided by 10 = $1,454,200.

INCREASE IN MONTHLY SENIOR NYLIC INCOME BEGINNING IN 31ST CONSECUTIVE NYLIC YEAR

is $.60 per $1,000 of the $1,454,200 base, namely . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $872.52 monthly

TOTAL MONTHLY SENIOR NYLIC INCOME BEGINNING IN 31ST CONSECUTIVE NYLIC YEAR is the sum of:

(i)   Monthly Senior Nylic Income beginning in 21st consecutive Nylic Year, as illustrated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $1,537.34 monthly

(ii)   Increase in Monthly Senior Nylic Income beginning in 26th consecutive Nylic Year, as illustrated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 727.10 monthly

(iii)   Increase in Monthly Senior Nylic Income beginning in 31st consecutive Nylic Year, as above . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 872.52 monthly

Total = $3,136.96 monthly

## ILLUSTRATION OF METHOD OF CALCULATING ADDITIONAL INCREASE IN MONTHLY SENIOR NYLIC INCOME BEGINNING IN 36TH CONSECUTIVE YEAR OF QUALIFIED NYLIC MEMBERSHIP

| Assumed "Nylic Count Insurance" During Indicated Nylic Year | | Assumed "Nylic Count Insurance" During Indicated Nylic Year | | Assumed Persistency | "Persisting Insurance" at the end of Indicated Nylic Year = (2) x (3) | |
|---|---|---|---|---|---|---|
| (1) | | (2) | | (3) | (4) | |
| 26th Year .... $ | 2,000,000 | 26th Year .... $ | 2,000,000 | .604 | 35th Year .... $ | 1,208,000 |
| 27th Year .... | 2,000,000 | 27th Year .... | 2,000,000 | .628 | 35th Year .... | 1,256,000 |
| 28th Year .... | 2,000,000 | 28th Year .... | 2,000,000 | .653 | 35th Year .... | 1,306,000 |
| 29th Year .... | 2,000,000 | 29th Year .... | 2,000,000 | .681 | 35th Year .... | 1,362,000 |
| 30th Year .... | 2,000,000 | 30th Year .... | 2,000,000 | .713 | 35th Year .... | 1,426,000 |
| 31st Year..... | 2,000,000 | 31st Year .... | 2,000,000 | .748 | 35th Year .... | 1,496,000 |
| 32nd Year .... | 2,000,000 | 32nd Year .... | 2,000,000 | .788 | 35th Year .... | 1,576,000 |
| 33rd Year .... | 2,000,000 | 33rd Year .... | 2,000,000 | .835 | 35th Year .... | 1,670,000 |
| 34th Year .... | 2,000,000 | 34th Year .... | 2,000,000 | .894 | 35th Year .... | 1,788,000 |

Total        = $20,000,000

(b) Total    = $18,000,000          (a) Total    = $13,088,000

Percentage of (a) to (b) = $\frac{\$13,088,000}{\$18,000,000}$ = 72.71%

Base for increase in Monthly Senior Nylic Income beginning in 36th consecutive Nylic Year = $20,000,000 multiplied by 72.71%, divided by 10 = $1,454,200.

INCREASE IN MONTHLY SENIOR NYLIC INCOME BEGINNING IN 36TH CONSECUTIVE NYLIC YEAR
is $.70 per $1,000 of the $1,454,200 base, namely................................................$1,017.94 monthly

TOTAL MONTHLY SENIOR NYLIC INCOME BEGINNING IN 36TH CONSECUTIVE NYLIC YEAR is the sum of:
(i)   Monthly Senior Nylic Income beginning in the 21st consecutive Nylic Year,
      as illustrated ......................................................................$1,537.34 monthly
(ii)  Increase in Monthly Senior Nylic Income beginning in 26th consecutive Nylic Year,
      as illustrated ........................................................................727.10 monthly
(iii) Increase in Monthly Senior Nylic Income beginning in 31st consecutive Nylic Year,
      as illustrated ........................................................................872.52 monthly
(iv)  Increase in Monthly Senior Nylic Income beginning in 36th consecutive Nylic Year,
      as above ............................................................................1,017.94 monthly

Total = $4,154.90 monthly

21

NYLIC NO. QN6-82

Copyright © 1982
New York Life Insurance Company

# Exhibit - C

## STATEMENT AND AGREEMENT OF AGENT

**To NEW YORK LIFE INSURANCE COMPANY**
51 Madison Avenue
New York, New York 10010

I, the undersigned Agent, hereby represent and declare that I have received a copy of New York Life Insurance Company's booklet entitled "Nylic No. QN6-82" edition of January 1982, which sets forth all of the terms, provisions, conditions and rules of Nylic No. QN6-82.

I understand and agree that I may qualify for membership in Nylic No. QN6-82 but that I have no rights under Nylic except in accordance with Nylic No. QN6-82.

Date Signed By Agent:
February 1,                                    19 84

_____
Agent's Signature

Witness: _____
Sales Manager

My date of birth is:
    April 14, 1961

    1020 15th Street - Suite "D"
Address Modesto, Ca.   95354

    Lyle H. Hughes #633299
Print Name and Code Number

    Stockton G.O.   S15
General Office

7690C 1-82

# Exhibit - D



**NEW YORK LIFE INSURANCE COMPANY**
**51 MADISON AVENUE, NEW YORK, N.Y. 10010**

# TRAINING ALLOWANCE SUBSIDY PLAN AGREEMENT

(FORM TAS 11-83)

Agent:____**Lyle H. Hughes**_____

Address:__**1541 Bixton Lane**_____**Modesto**____**Stanislaus**____**Califonia**_____**95356**__
                    (City)                 (County)              (State)        (Zip)

Effective Date:_____**February 1, 1984**_____

New York Life Insurance Company (the Company) and the Agent named above (the Agent) hereby agree as follows:

1. This Agreement is a supplement to and modifies the Agent's Contract executed simultaneously by the parties to this Agreement and bearing the same effective date as this Agreement, and any provisions contained in the Agent's Contract which are contrary to the provisions of this Agreement will be ineffective and inapplicable, and the provisions of this Agreement will be controlling.

2. This Agreement will commence on the effective date stated above and will terminate at the end of the Third Contract Year, as defined in this Agreement, or earlier in accordance with its provisions. While this Agreement is in effect, the Agent will be an employee of the Company, subject to its direction and control, and will devote the Agent's entire time to the business of this employment. The Agent will diligently study the Company's training courses, fulfill the Company's requirements in connection therewith, comply with any other educational and training requirements of the Company, and keep such records and make such reports as may be required. The Agent will endeavor to become and be a successful Agent capable of directing and controlling the Agent's own time and efforts.

3. The First Contract Year under this Agreement will commence on the effective date in the calendar month stated above and will end in the next succeeding year on the last day of the calendar month specified in said effective date. The Second Contract Year will be a period of 12 consecutive months ending in the next succeeding year on the last day of the calendar month so specified. The Third Contract Year will be a period of 12 consecutive months ending in the next succeeding year on the last day of the calendar month so specified.

4. In the First Contract Year, that period of time from the effective date of this Agreement until the end of the calendar month stated above will be the "starting contract month" for all purposes of this Agreement. The next twelve consecutive calendar months, which occur in the First Contract Year, will be contract months number one through and including number twelve, respectively, for all purposes of this Agreement. The next twelve consecutive calendar months, which occur in the Second Contract Year, will be contract months number thirteen through and including number twenty-four, respectively, for all purposes of this Agreement. The next twelve consecutive calendar months, which occur in the Third Contract Year, will be contract months number twenty-five through and including number thirty-six, respectively, for all purposes of this Agreement.

5. This Agreement may be terminated by either the Agent or the Company, with or without cause, upon written notice to the other, said termination to be effective immediately.

6. In addition to the commissions payable under the compensation provisions of the Agent's Contract, Training Allowances are payable under the terms of this Agreement as provided in Section 8 below, entitled Training Allowance Payments.

7. For purposes of crediting commissions to the Agent's ledger, and determining the amount of "Net Eligible First Year Commissions" (as defined in Section 8 below) to be used in calculating the amount of a Training Allowance payment, the following annualization of commission rules will apply:

1

First Year commissions will be based on premiums received by the Company for the first policy year of all policies (for the first premium year of periodic premium annuities) effected upon applications obtained by the Agent while this Agreement is in effect. The full annualized amount of such commissions will be equal in amount to the total first year commissions which, except for this Agreement, would have been payable on such premiums under the Agent's Contract. For individual life insurance (other than Employee Protection Insurance), individual annuity, pension trust and individual health insurance policies, commissions will be allowed when the policy is delivered and the premiums indicated in the table below have been received and applied at the Company's Home Office as follows:

| Premium Mode | Percentage of Total First Year Commissions Allowed on Receipt of Indicated Premium or Allotment |
|---|---|
| Annual | 100% on 1st premium |
| Semi-Annual | 100% on 1st premium |
| Quarterly | 50% on 1st premium; 50% on 3rd premium |
| Regular Monthly | 50% on 1st premium; 50% on 7th premium |
| Check-O-Matic | 100% on 1st premium |
| Nyl-A-Plan | 100% on 1st premium |
| Government Allotment | 50% on 1st premium; 50% on 1st allotment |

When any policy referred to above terminates prior to its first anniversary, the commissions previously allowed with respect to such policy will be debited to the Agent's ledger and the amount of the commissions applicable with respect to the premiums actually received by the Company will be credited to the Agent's ledger, except that, upon the termination of a policy having a regular monthly, Check-O-Matic, Nyl-A-Plan, or Government Allotment premium mode on which fewer than three premiums have been paid, no commissions will be allowed for the premium or premiums actually received and applied by the Company unless termination of the policy is on account of the death of the insured or unless the total paid premiums amount to at least $300, in either of which case such applicable commissions will be credited. For Employee Protection Insurance, group insurance policies, franchise insurance plans and group annuity policies, commissions will be allowed on premiums received by the Company in accordance with the group commission rules.

When the Company, for any reason, rescinds or cancels a policy and refunds or tenders a refund of a premium, in whole or in part, the Company will debit the Agent's ledger by the amount of any commission refund applicable because of the premiums so refunded or tendered for refund.

No commissions, where payable, will be entered on the Agent's ledger with respect to premiums for any policy on the life of the Agent or any other Agent, or on the life of their family members (parent, brother, sister, spouse or child) unless and until the full first year's premium has been paid.

8. **Training Allowance Payments**

   (a) **Period of Training Allowance Payments**—During the first Three Contract Years as defined in Section 3 above, the Agent may qualify for Training Allowance payments.

   (b) **Training Allowance**—Subject to the terms of this Agreement, the Agent may be eligible to receive one Training Allowance payment as of the last day of each contract month. Any Training Allowance payment with respect to a contract month will be determined in accordance with the terms of this Agreement. The amount of any Training Allowance payment for which the Agent qualifies is determined in accordance with the Tables below, on the basis of:

   (i) the Net Eligible First Year Commissions (as defined below) credited to the Agent's ledger with respect to the contract month, on applicable policies effected upon applications procured by the Agent, and

   (ii) the number of contract months following the month of the effective date of this Agreement, and

   (iii) the Training Allowance Factor applicable to the Net Eligible First Year Commissions with respect to such contract month.

2

**Net Eligible First Year Commissions,** for purposes of this Agreement, are solely net first year Ordinary life and annuity and individual disability income, income insurance and overhead expense commissions exclusive of those on single and preliminary term premiums and exclusive of those on policies on the life of the Agent or any other Agent, or on the life of any of their family members (parent, brother, sister, spouse or child). First year commissions other than those included as "Net Eligible First Year Commissions" (for example, commissions on group business and on health business other than individual disability income, income insurance and overhead expense insurance) will produce no Training Allowance and will not count for the purpose of qualifying for Training Allowance.

A ledger account, herein referred to as the Agent's ledger, will be established for the Agent. Appropriate credits and debits will be entered on the Agent's ledger in accordance with this Agreement and with the Company's rules and procedures concerning the administration of an Agent's ledger. For purposes of this Agreement, commissions are credited to an Agent's ledger only after the required premiums have been received and applied at the Company's Home Office.

(c) **Payment of Training Allowance**—If the Agent qualifies under the terms of this Agreement, a Training Allowance will be payable as of the last day of a contract month. In order to qualify for, and to receive, a Training Allowance payment as of the last day of a contract month:

  (i) the Agent's Contract and this Agreement must be in full force and effect on the last day of such contract month, and

  (ii) the Agent's Net Eligible First Year Commissions, credited to the Agent's ledger with respect to the contract month, must total not less than the minimum qualifying amount specified in the Minimum Training Allowance Table for such month, except as provided under the Catch-Up provision of this Agreement, set forth in section (e)(i) below.

A Training Allowance will be payable as of the last day of a contract month only if the above requirements have been satisfied. The amount of such Training Allowance payment will be credited to the Agent's ledger. If, as of the last day of a contract month, the Agent fails to meet the requirements set forth above, no Training Allowance is payable, or will be paid with respect to that month.

(d) **Calculation of Training Allowance**—The Training Allowance which may be payable with respect to a contract month will be equal to:

  (i) 90% of the Net Eligible First Year Commissions, credited to the Agent's ledger with respect to the starting contract month, and/or credited to the Agent's ledger with respect to each of the next twelve contract months, numbered one through and including twelve, respectively, and

  (ii) 50% of the Net Eligible First Year Commissions, credited to the Agent's ledger with respect to each of the next twelve contract months, numbered thirteen through and including twenty-four, respectively, and

  (iii) 20% of the Net Eligible First Year Commissions, credited to the Agent's ledger with respect to each of the next twelve contract months, numbered twenty-five through and including thirty-six, respectively,

all subject to the minimum qualifications specified in the Minimum Training Allowance Table below and subject to the Maximum Training Allowance, specified in the Maximum Training Allowance Table below.

**Qualification Requirement for Minimum Training Allowance**— The Minimum Training Allowance Table below sets forth the Minimum Net Eligible First Year Commissions required to be credited to the Agent's ledger with respect to each contract month in order for the Agent to qualify for a Training Allowance payment with respect to such contract month. If the Agent has less than the Minimum Net Eligible First Year Commissions credited to the ledger with respect to the contract month, the Agent will not receive a Training Allowance payment with respect to such contract month, unless the Agent is eligible to receive a Training Allowance payment under the Catch-Up provision of this Agreement, as set forth in section (e)(i) below.

3

## MINIMUM TRAINING ALLOWANCE TABLE

| Contract Month | Minimum Net Eligible First Year Commissions Required in Contract Month to Qualify for Training Allowance With Respect To Such Month | Training Allowance Factor | Training Allowance Payment for Contract Month on Required Minimum Net Eligible First Year Commissions With Respect To Such Month |
|---|---|---|---|
| Starting Contract Month | $    0 | 90% | $    0 |
| Contract Month No.  1 | 650 | 90% | 585 |
| Contract Month No.  2 | 650 | 90% | 585 |
| Contract Month No.  3 | 650 | 90% | 585 |
| Contract Month No.  4 | 650 | 90% | 585 |
| Contract Month No.  5 | 650 | 90% | 585 |
| Contract Month No.  6 | 650 | 90% | 585 |
| Contract Month No.  7 | 650 | 90% | 585 |
| Contract Month No.  8 | 650 | 90% | 585 |
| Contract Month No.  9 | 650 | 90% | 585 |
| Contract Month No. 10 | 650 | 90% | 585 |
| Contract Month No. 11 | 650 | 90% | 585 |
| Contract Month No. 12 | 650 | 90% | 585 |
| TOTAL — FIRST CONTRACT YEAR* | | | $ 7,020 |
| Contract Month No. 13 | $  700 | 50% | $  350 |
| Contract Month No. 14 | 700 | 50% | 350 |
| Contract Month No. 15 | 700 | 50% | 350 |
| Contract Month No. 16 | 700 | 50% | 350 |
| Contract Month No. 17 | 700 | 50% | 350 |
| Contract Month No. 18 | 700 | 50% | 350 |
| Contract Month No. 19 | 700 | 50% | 350 |
| Contract Month No. 20 | 700 | 50% | 350 |
| Contract Month No. 21 | 700 | 50% | 350 |
| Contract Month No. 22 | 700 | 50% | 350 |
| Contract Month No. 23 | 700 | 50% | 350 |
| Contract Month No. 24 | 700 | 50% | 350 |
| TOTAL — SECOND CONTRACT YEAR* | | | $ 4,200 |
| Contract Month No. 25 | $  750 | 20% | $  150 |
| Contract Month No. 26 | 750 | 20% | 150 |
| Contract Month No. 27 | 750 | 20% | 150 |
| Contract Month No. 28 | 750 | 20% | 150 |
| Contract Month No. 29 | 750 | 20% | 150 |
| Contract Month No. 30 | 750 | 20% | 150 |
| Contract Month No. 31 | 750 | 20% | 150 |
| Contract Month No. 32 | 750 | 20% | 150 |
| Contract Month No. 33 | 750 | 20% | 150 |
| Contract Month No. 34 | 750 | 20% | 150 |
| Contract Month No. 35 | 750 | 20% | 150 |
| Contract Month No. 36 | 750 | 20% | 150 |
| TOTAL — THIRD CONTRACT YEAR* | | | $ 1,800 |
| MINIMUM TOTAL FOR THREE CONTRACT YEARS* | | | $13,020 |

*Solely if all requirements of this Agreement are complied with in each and every contract month or if the requirements of the Catch-Up provision are complied with where applicable.

4

**Qualification Requirement for Maximum Training Allowance** — The Maximum Training Allowance Table below sets forth the Maximum Training Allowance which may be payable with respect to each contract month and the Net Eligible First Year Commissions required to be credited to the Agent's ledger with respect to each contract month in order for the Agent to qualify for the Maximum Training Allowance payment with respect to such contract month. Net Eligible First Year Commissions credited to an Agent's ledger with respect to the contract month which are in excess of those set forth in the table will produce no additional Training Allowance, except as specified in the Catch-Up provision of this Agreement, set forth in section (e)(ii) below or in the Carry-Over provision of this Agreement, set forth in section (f) below.

## MAXIMUM TRAINING ALLOWANCE TABLE

| Contract Month | Net Eligible First Year Commissions Required in Contract Month to Produce the Maximum Training Allowance With Respect To Such Month | Training Allowance Factor | Maximum Training Allowance Payment With Respect To Such Contract Month |
|---|---|---|---|
| Starting Contract Month | $ 1,450 | 90% | $ 1,305 |
| Contract Month No.  1 | 1,450 | 90% | 1,305 |
| Contract Month No.  2 | 1,450 | 90% | 1,305 |
| Contract Month No.  3 | 1,450 | 90% | 1,305 |
| Contract Month No.  4 | 1,450 | 90% | 1,305 |
| Contract Month No.  5 | 1,450 | 90% | 1,305 |
| Contract Month No.  6 | 1,450 | 90% | 1,305 |
| Contract Month No.  7 | 1,450 | 90% | 1,305 |
| Contract Month No.  8 | 1,450 | 90% | 1,305 |
| Contract Month No.  9 | 1,450 | 90% | 1,305 |
| Contract Month No. 10 | 1,450 | 90% | 1,305 |
| Contract Month No. 11 | 1,450 | 90% | 1,305 |
| Contract Month No. 12 | 1,450 | 90% | 1,305 |
| TOTAL — FIRST CONTRACT YEAR* | | | $16,965 |
| Contract Month No. 13 | $ 1,550 | 50% | $   775 |
| Contract Month No. 14 | 1,550 | 50% | 775 |
| Contract Month No. 15 | 1,550 | 50% | 775 |
| Contract Month No. 16 | 1,550 | 50% | 775 |
| Contract Month No. 17 | 1,550 | 50% | 775 |
| Contract Month No. 18 | 1,550 | 50% | 775 |
| Contract Month No. 19 | 1,550 | 50% | 775 |
| Contract Month No. 20 | 1,550 | 50% | 775 |
| Contract Month No. 21 | 1,550 | 50% | 775 |
| Contract Month No. 22 | 1,550 | 50% | 775 |
| Contract Month No. 23 | 1,550 | 50% | 775 |
| Contract Month No. 24 | 1,550 | 50% | 775 |
| TOTAL — SECOND CONTRACT YEAR* | | | $ 9,300 |
| Contract Month No. 25 | $ 1,650 | 20% | $   330 |
| Contract Month No. 26 | 1,650 | 20% | 330 |
| Contract Month No. 27 | 1,650 | 20% | 330 |
| Contract Month No. 28 | 1,650 | 20% | 330 |
| Contract Month No. 29 | 1,650 | 20% | 330 |
| Contract Month No. 30 | 1,650 | 20% | 330 |
| Contract Month No. 31 | 1,650 | 20% | 330 |
| Contract Month No. 32 | 1,650 | 20% | 330 |
| Contract Month No. 33 | 1,650 | 20% | 330 |

MAXIMUM TRAINING ALLOWANCE TABLE—continued

| Contract Month | Net Eligible First Year Commissions Required in Contract Month to Produce the Maximum Training Allowance With Respect To Such Month | Training Allowance Factor | Maximum Training Allowance Payment With Respect To Such Contract Month |
|---|---|---|---|
| Contract Month No. 34 | $ 1,650 | 20% | $ 330 |
| Contract Month No. 35 | 1,650 | 20% | 330 |
| Contract Month No. 36 | 1,650 | 20% | 330 |
| | TOTAL — THIRD CONTRACT YEAR* | | $ 3,960 |
| | MAXIMUM TOTAL FOR THREE CONTRACT YEARS* | | $30,225 |

*Solely if all requirements of this Agreement up to the maximum levels are complied with in each and every contract month or if the requirements of the Catch-Up and/or Carry-Over provisions are complied with where applicable.

(e) **Catch-Up Provisions —**

(i) If the Agent does not otherwise qualify for a Training Allowance payment as of the last day of a contract month (other than any installment Training Allowance payable as provided in Section 13(b) of the Part Time Introductory Contract, if applicable), a Training Allowance based on the Net Eligible First Year Commissions credited to the ledger with respect to such contract month will be allowed and paid if the total Net Eligible First Year Commissions with respect to such contract month and with respect to the immediately preceding contract month is at least equal to 150% of the total Minimum Net Eligible First Year Commissions for both contract months combined.

(ii) Beginning in contract month 6 and continuing through contract month 36, if the Agent qualifies for a Training Allowance payment with respect to a contract month which is less than the Maximum Training Allowance payable with respect to that contract month, the Maximum Training Allowance with respect to that contract month will be allowed and paid if the Net Eligible First Year Commissions with respect to each of the two immediately preceding contract months were at least equal to 150% of the Net Eligible First Year Commissions required to produce the Maximum Training Allowance with respect to each of those two contract months.

(f) **Carry-Over Provision —**

(i) If the Agent does not qualify for the Maximum Training Allowance of $16,965 which can be payable with respect to the First Contract Year, the difference between such maximum and the actual Training Allowance allowed and paid with respect to the First Contract Year will be added to the potential Maximum Training Allowance payable with respect to the Second Contract Year by dividing such difference by 12 and (a) adding the result to the Maximum Monthly Training Allowance found in the Maximum Training Allowance Table for each of the contract months 13 through 24, and (b) at the same time multiplying the result by 2 and adding that amount each contract month to the Net Eligible First Year Commissions required to qualify for the Maximum Training Allowance found in the Maximum Training Allowance Table for each of the contract months 13 through 24.

(ii) If the Agent does not qualify for the increased Maximum Training Allowance (including any carry-over from the First Contract Year) with respect to the Second Contract Year, the difference between such increased maximum and the actual Training Allowance allowed and paid with respect to the Second Contract Year will be added to the potential Maximum Training Allowance payable with respect to the Third Contract Year by dividing such difference by 12 and (a) adding the result to the Maximum Monthly Training Allowance found in the Maximum Training Allowance Table for each of the contract months 25 through 36, and (b) at the same time multiplying the result by 5 and adding that amount each contract month to the Net Eligible First Year Commissions required to qualify for the Maximum Training Allowance found in the Maximum Training Allowance Table for each of the contract months 25 through 36.

(iii) There will be no carry-over beyond the amount determined at the end of the Second Contract Year. The Agent must qualify for the final increased Maximum Training Allowance (including any carry-over from the first two contract years) in each contract month of the Third Contract Year in order to receive the Maximum Training Allowance of $30,225 which is potentially payable for the total of Three Contract Years.

6

9. The Company may prescribe such rules, regulations and procedures as it may deem appropriate to administer the provisions governing the compensation set forth in Sections 7 and 8, above, and such rules, regulations and procedures shall be deemed a part of this Agreement, as though their complete terms were set out herein, and it reserves and shall have the right to amend, change or modify the Agreement including the Tables at any time, by giving written notice of any such amendment, change or modification to the Agent. Any such amendment, change or modification will be effective as of the date of the written notice or when such notice so specifies, and any Training Allowance payments thereafter will be made in accordance with such amendment, change or modification.

10. **Automatic Termination of this Agreement** — Notwithstanding the provisions of Section 5 above, this Agreement will automatically terminate:

    (a) if the Agent does not qualify for any Training Allowance payment for 3 consecutive contract months beginning after the starting contract month, except that this Agreement shall not automatically terminate if the total net first year commissions credited to the Agent's ledger with respect to any one of such 3 consecutive contract months exceed $750 a month with respect to any such month in the Agent's First Contract Year, $800 a month with respect to any such month in the Agent's Second Contract Year and $850 a month with respect to any such month in the Agent's Third Contract Year; or

    (b) if the Agent's Contract which this Agreement supplements is terminated; or

    (c) if the Agent engages in any other business or occupation for remuneration or profit; or

    (d) on the last day of the Agent's Third Contract Year unless sooner terminated by the Agent or the Company.

11. Notwithstanding any provision to the contrary in the Agent's Contract which this Agreement supplements, said Agent's Contract shall terminate immediately if this Agreement is terminated prior to the completion of the Period of Training Allowance Payments.

12. Notwithstanding any provision to the contrary in the Agent's Contract which this Agreement supplements, if the services of the Agent are terminated for any reason, before or after the completion of the Period of Training Allowance Payments, no further payments of any kind, either under this Agreement or under the Agent's Contract, will be made on account of policies effected upon applications obtained by the Agent while this Agreement is in force, or while any Part Time Introductory Contract was in force if applicable, except with respect to commissions on premiums received by the Company prior to the termination of this Agreement or the Agent's Contract.

13. The Company is hereby given a paramount and prior lien upon any Training Allowance and/or commissions payable under this Agreement as security for the payment of any claim or indebtedness or reimbursement whatsoever due or to become due to the Company from the Agent. Any sums becoming due the Agent at any time may be applied directly by the Company to the liquidation of any indebtedness or obligation of the Agent to the Company, but the failure to so apply any sum shall not be deemed a waiver of the Company's lien on any other sums becoming due or impair its right to so apply such sums.

14. Any failure of the Company in any instance to insist upon compliance with any of the limitations, terms, provisions and conditions of this Agreement shall not be construed as a waiver of any of the Company's rights or of such limitations, terms, provisions and conditions, or of the right to the Company to thereafter enforce its rights or insist upon such compliance.

15. After completion of the Third Contract Year, if the Agent continues thereafter to represent the Company as an Agent, the Agent's Contract will be in full force and effect, subject to its terms, and the Agent's relation to the Company will be that of an independent contractor, as provided in said Agent's Contract, free to exercise the Agent's own discretion and judgment with respect to the persons from whom the Agent will solicit applications, and with respect to the time, place, method and manner of solicitation or performance under said Agent's Contract.

16. This Agreement will take effect as of the effective date stated above, if duly signed by the Agent and countersigned on behalf of the Company.

IN WITNESS WHEREOF, the parties to this Agreement have subscribed their names hereto and to a duplicate copy hereof.

Countersigned for New York Life Insurance Company

_____
                                   Agent

on  October 17,                    , 19  84

NEW YORK LIFE INSURANCE COMPANY

by: _____

by: _____

Title  Sales Manager

      *John H. Stimpson*
      Executive Vice President