Ray Bourhis, Esq. SBN 53196
Lawrence Mann, Esq. SBN 83698
Bennett M. Cohen, Esq. SBN 98065
**BOURHIS & MANN**
1050 Battery Street
San Francisco, CA 94111
Tel: (415) 392-4660; Fax: (415) 421-0259

Attorneys for Plaintiff LYLE HUGHES

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYLE HUGHES, | ) Case No.: C 07-4088 PJH **(E-FILING)** |
| | ) |
| Plaintiff, | ) PLAINTIFF LYLE HUGHES' |
| | ) MEMORANDUM OF POINTS AND |
| v. | ) AUTHORITIES IN OPPOSITION TO |
| | ) MOTION FOR PARTIAL SUMMARY |
| UNUMPROVIDENT CORPORATION; UNUM | ) JUDGMENT, OR IN THE |
| CORPORATION, NEW YORK LIFE | ) ALTERNATIVE, MOTION FOR |
| INSURANCE COMPANY, THE | ) JUDGMENT UNDER RULE 52 |
| COMMISSIONER OF THE CALIFORNIA | ) |
| DEPARTMENT OF INSURANCE and DOES 1 | ) [Filed concurrently with Declarations of |
| through 20, inclusive | ) Bennett M. Cohen and John Sargent and |
| | ) Request For Judicial Notice] |
| Defendants. | ) |
| | ) DATE: |
| | ) TIME:  9:00 A.M. |
| | ) DEPT:  Courtroom 3, 17th Floor |
| | ) |
| | ) TRIAL DATE:  Not Yet Set |
| | ) |

Plaintiff LYLE HUGHES (hereafter "Hughes") respectfully opposes the motion for partial summary judgment and motion for judgment under Rule 52 brought by Defendants THE UNUM GROUP and NEW YORK LIFE INSURANCE COMPANY (hereafter referred to collectively as "Unum").

///

0

## I.  INTRODUCTION

The "de novo" standard of judicial review applies based on the unclear and confusing language in the Plan relating to whether Unum has the right to make the final determination on disability benefits decisions.  However, even were the Court to find that the Plan language is sufficient to confer discretion, a triable issue of fact exists as to whether Unum's conflict of interest (as both the insurer and Plan administrator) affected its decision to deny Hughes's disability claim.

A triable issue of fact exists as to whether Unum's conflict of interest affected its decision Unum because, as testified to in the Declaration of John Sargent, a former top level Unum claims evaluator, Unum violated numerous and important industry standards in evaluating  Mr. Hughes' claim -- all to its financial advantage.  The claims file, in fact, is replete with evidence of a selective and self-serving reading of the medical evidence and vocational information and Unum's failure to conduct a claims analysis in conformity with the standard of care.  As there is substantial evidence that Unum acted in its own self-interest in the denial of this claim and as critical factual findings were never made, the "deferential" standard of review does not apply.

Even, *assuming arguendo*, that the "arbitrary and capricious" standard does apply -- and Plaintiff asserts it does not, granting summary judgment is improper as a triable issue of fact exists as to the reasonableness of Unum's claims denial in light of its serious breaches of the standard of care and its failure to make key factual findings.

## II.  LAW GOVERNING AN MOTION FOR SUMMARY JUDGMENT IN ERISA CASE

In an ERISA case, summary judgment is improper where the Plan has left "contested issues of fact unresolved" if that issue is material.  *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938, 942 (9th Cir. 1995) citing *Casey v. Uddeholm Corp.*, 32 F.3d 1094, 1098 (7th Cir. 1994).

> **However, in considering motions for summary judgment, the district court must decide whether there are genuine issues of material fact, not whether there was substantial or ample evidence to support the plan administrator's decision**. See *Casey v. Uddeholm Corp.*, 32 F.3d 1094, 1098 (7th Cir. 1994) ("Where the plan administrator has left contested issues of fact unresolved, the district court's review under Rule 56(c) should have been limited to determining whether any of the facts in dispute were material."). *Mongeluzo v. Baxter Travenol Long Term Disability Benefit*

1

1    *Plan,* supra at 942

2        Under the de novo standard of review, the plaintiff only needs to present more than a "mere

3    scintilla" of evidence in support of continuing the LTD benefits to avoid summary judgment."

4    *Ingram v. Martin Marietta Long Term Disability Income Plan,* 244 F.3d 1109, 1114 (9th Cir. 2001).

5    As set forth below, there is overwhelming evidence that Unum's denial was unreasonable;

6    accordingly, there is a triable issue of fact (or facts) more than sufficient to defeat this motion.

7        Under FRCP 52, the evidence offered by Hughes establishes his right to a judgment in his

8    favor. Moreover, assuming that the "de novo" standard of review applies, it may be necessary for

9    the court to defer judgment in order to properly evaluate the evidence -- as Unum failed to make

10    essential factual findings relative to Hughes' claim.

11                    **III.  LEGAL ARGUMENT**

12    **A.    THE "DE NOVO" STANDARD OF JUDICIAL REVIEW APPLIES
         BECAUSE THE UNUM PLAN LANGUAGE FAILS TO CLEARLY AND
13        UNAMBIGUOUSLY STATE THAT UNUM HAS DISCRETION TO DECIDE
         HUGHES'S CLAIM**
14
15        Unless an ERISA plan grants discretion to the administrator to determine entitlement to

16    benefits, the court will review the administrator's decision "de novo." *Firestone Tire & Rubber Co.*

17    *v. Bruch* 489 U.S. 101 (1989); *Mongeluzo v. Baxter Travelol Long Term Disability Benefit Plan,*

18    supra at 942 (9th Cir. 1995).  In order to confer discretion, the plan language must **clearly** and

19    **unambiguously** grant the administrator discretion to decide the claim.   *Bogue v. Ampex*

20    *Corporation* 976 F. 2d 1319, 1325 (9th Cir. 1992).

21        In the instant case, the language in the Plan is unclear and confusing.

22        In this case, the purported grant of discretionary authority in the Plan commences with the

23    lengthy opening sentence, "In exercising its discretionary powers under the Plan, the Plan

24    Administrator, with regard to eligibility to participate in the plan, and any designee (which shall

25    include Unum as a claims fiduciary) **will have the broadest discretion permissible under the**

26    **ERISA and any other applicable laws,** and its decision will constitute final review of your claim

27    by the Plan."   (Emphasis Added.)  Accordingly, the Plan refers the insured -- a layperson, who

28    almost certainly lacks schooling in the state and federal law applicable to ERISA -- to unspecified

2

Case No.: C 07-4088 PJH (E-FILING)
PLAINTIFF'S MEMO. OF POINTS AND AUTH. IN OPP. TO MOTION FOR PARTIAL SUMMARY
JUDGMENT, OR IN THE ALTERNATIVE, MOTION FOR JUDGMENT UNDER RULE 52

1    state and federal law.  As the Plan refers the insured to secondary sources to which the insured

2    would realistically neither have access nor the ability to interpret, its meaning is unclear.

3         Unum places great emphasis on the second sentence of the purported grant of discretionary

4    authority which reads, "Benefits under this Plan will be paid only if Unum, as claims fiduciary,

5    decides in its discretion that the applicant is entitled to them." **This sentence, however, must be**

6    **read in conjunction with the previous sentence referring an insured to unexplained secondary**

7    **sources.**

8         An insured likely has the reasonable expectation that evidence which his doctor provides

9    supporting the payment of the claim will stand on equal footing with evidence which might support

10   its denial.  Stated differently, an insured likely could never imagine that, under the Plan, Unum

11   could create evidence upon which to sustain a denial even where the evidence from his treating

12   physicians strongly supports a finding of disability.  In other words, by referring the insured to

13   federal and state law, Unum, in fact, is reassuring an insured that a court, if necessary, will be able

14   to fairly review Unum's decision on the merits rather than being compelled to defer to Unum's

15   denial if Unum has found (or manufactured) a reasonable basis on which to deny the claim

16   notwithstanding strong evidence supporting its payment.  Accordingly, the Plan does not "clearly"

17   and "unambiguously" confer discretionary authority and the "de novo" standard therefore applies.

18       B.    **ASSUMING SOLELY FOR THE SAKE OF ARGUMENT THAT THE PLAN
              DOES SUFFICIENTLY GRANT UNUM DISCRETIONARY AUTHORITY,**
19            **SUBSTANTIAL EVIDENCE EXISTS THAT UNUM'S CONFLICT OF
              INTEREST AFFECTED ITS DECISION TO DENY HUGHES' DISABILITY**
20            **CLAIM; ACCORDINGLY, A TRIABLE ISSUE EXISTS AS TO WHETHER
              THE "DE NOVO" STANDARD OF JUDICIAL REVIEW APPLIES WHICH**
21            **PREVENTS THE GRANTING OF SUMMARY JUDGMENT CLAIM**

22

23            1.    **The de novo standard of review applies where substantial evidence
                    exists that the insurer's own financial self-interest affected its benefits**
24                  **decision**

25       A conflict of interest exists where the plan administrator has a pecuniary interest in the

26   benefit decisions which it makes. *Atwood v. Newmont Gold Co., Inc.,* 45 F.3d 1317, 1322 (9th Cir.

27   1995) (overruled on other grounds in *Abatie v. Alto Health & Life Insurance*, 458 F.3d 955 (9th Cir.

28   2006).

---

3

1       In this case, there is no dispute that Unum was both the entity funding the plan and the plan

2    administrator.

3       If there is any substantial evidence tending to show that a conflicted plan administrator

4    allowed its own economic self-interest to effect its benefits decision, the court must apply the "de

5    novo" standard." *Atwood v. Newmont Gold Co., Inc., supra* at 1323.   As set forth in *Atwood v.*

6    *Newmont Gold Co., Inc, supra* at 1323:

> 7       The "less deferential" standard under which we review apparently conflicted
> fiduciaries has two steps.  **First, we must determine whether the affected**
> 8       **beneficiary has provided material, probative evidence, beyond the mere fact of**
> **the apparent conflict,** ***tending to show*** **that the fiduciary's self interest caused a**
> 9       **breach of the administrator's fiduciary obligations to the beneficiary.  If not, we**
> 10      **apply our traditional abuse of discretion review...**

> 11      Where the affected beneficiary has come forward with material evidence of a
> violation of the administrator's fiduciary obligation, we should not defer to the
> 12      administrator's preemptively void decision.  **In that circumstance, the plan bears**
> **the burden of producing evidence that the conflict of interest did not affect the**
> 13      **decision to deny benefits.  If the plan cannot carry that burden, we will review**
> **the decision** ***de novo*** **without deference to the administrator's tainted exercise of**
> 14      **discretion."** (Emphasis Added.)
> 15

16      The ERISA, 29 U.S.C. § 1104(a)(1), defines the legal duty of Unum, as a fiduciary, with

17   respect to reviewing and deciding Hughes' claim.  It provides in relevant part:

18      [A] fiduciary shall discharge his duties with respect to a plan **solely in the**

19      **interest of the participants and beneficiaries** and--

20      (A) **for the exclusive purpose of:**

21      (i) **providing benefits to participants and their beneficiaries**...

22      Accordingly, Unum must discharge its duties "solely" in the interest of plan participants

23   such as Hughes -- and not in its own financial self-interest.

24           **2.      Unum's history of violating industry standards for claims handling is a**
             **highly relevant factor in determining whether its financial self-interest**
25           **affected its claim decision**

26      In *Metropolitan Life Ins. Co. v. Glenn* (2008) 128 S. Ct. 2343, 2351, wherein the U.S.

27   Supreme Court affirmed the propriety of the conflict of interest analysis in an ERISA case

28   where an insurer has a financial interest in its own claims decision, Court stated:

4

Case No.: C 07-4088 PJH (E-FILING)
PLAINTIFF'S MEMO. OF POINTS AND AUTH. IN OPP. TO MOTION FOR PARTIAL SUMMARY
JUDGMENT, OR IN THE ALTERNATIVE, MOTION FOR JUDGMENT UNDER RULE 52

1   **The conflict of interest at issue here, for example, should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration.** See Langbein, supra, at 1317-1321 (*detailing such a history for one large insurer*) Metro. Life Ins. Co. v. Glenn, *supra* at 2351. (Emphasis Added.)

**The "one large insurer" to which the U.S. Supreme Court expressly refers as an example of an insurer with "a history of biased claims administration" is UnumProvident.** The citation the U.S. Supreme Court makes is to a law review article, *Langbein, Trust Law as Regulatory Law*, 101 Nw. U. L. Rev. 1315, 1323-1324 (2007). The full title of the article is, "*Trust Law As Regulatory Law: The Unum/Provident Scandal And Judicial Review Of Benefit Denials Under ERISA.*" (Emphasis Added.)

In the instant case, the conflict of interest analysis takes on particular importance, as stated above in *Metropolitan Life Ins. Co. v. Glenn, supra,* due to Unum's dramatic history of biased claims practices -- practices which became so widespread that they were addressed and condemned by all 50 states in an negotiated settlement agreement with Unum.

Less than four months prior to making the claims decision in the instant case, Unum was fined $15,000,000 and compelled by the Insurance Commissioners of 49 States of the United States, as part of a negotiated agreement known as the "**Multistate Market Conduct Examination**" (issued on 11/18/2004), to refrain from pursuing a litany of former claims practice; additionally, by reason of this agreement, Unum was required to revise its claims practices and reassess thousands of claims it had previously denied. (See Unum's **News Release** posted on its own website, "UNUM.COM," announcing the issuance of the agreement -- attached to Plaintiff's Request For Judicial Notice as Exhibit A.)

As Unum itself says it the above-mentioned News Release with respect to the "Targeted Multistate Market Conduct Examination" -- in which Unum puts its best "spin" on the $15,000,000 fine and commands by the insurance commissioners of 49 states to revise its claims practices:

UnumProvident Corporation (NYSEE:UNM) today announced that certain of its insurance subsidiaries had entered into settlement agreements with state insurance regulators upon conclusion of a multistate market conduct examination led by Maine, Massachusetts and Tennessee relating to disability claims handling practices. In

5

addition, the U.S. Department of Labor, which has been conducting an inquiry relating to certain ERISA plans, has joined the settlement agreements, and the New York Attorney General's Office, which had engaged in its own investigation of the Company's claims handling practices, has notified the Company that it is in support of the settlement and is, therefore, closing its investigation on this issue. The insurance authorities of the 47 remaining states and two other jurisdictions also participated in the examination. The agreements are conditioned upon obtaining the consent of two-thirds of these 47 states and two jurisdictions.

**The examination report did not make any findings of violations of law or market conduct regulations. However, the exam report did identify areas of concern. These became the focus of specific changes and enhancements to the Company's disability claims handling operations which were designed to assure each claim decision is made in a consistently high quality manner.**

**The primary components of the settlement agreement include: enhancements to the Company's claims handling procedures; a reassessment of certain previously denied or closed claims; additional corporate and board governance to support the oversight of the reassessment process and general claims handling practices; and payment of a fine in the amount of $15 million to be allocated among the states and jurisdictions that join the agreement.** (See *http://www.unum.com/newsroom/news/corporate/2004/11032004_settlement.aspx* where this Announcement attached as Exhibit A to Plaintiff's Request For Judicial Notice appears.)

(See also the summary of the Multistate Market Conduct Examination on the Website of the State of Maine, *http://maine.gov/pfr/insurance/unum/UNUM_information.htm*). (The page of the Maine state government Website relative to the settlement is attached as Exhibit B to Plaintiff's Request For Judicial Notice.)

The findings of the Targeted Multistate Market Conduct Examination and the itemization of forbidden claims practices form part of the basis of the opinion of John Sargent, the claims expert who has provided a declaration commenting on Unum's claims decision-making -- wherein Mr. Sargent discusses the document in some length. (See Paragraphs 6, 11, 12 and 13 of Mr. Stewart's Declaration.) More particularly, Mr. Sargent finds that Unum's conduct toward Hughes fits a pattern of unfair claims handling practices which violate industry standard.

*[**PLEASE NOTE THAT ALL REFERENCES HEREIN TO THE CLAIMS FILE ARE REFERENCES TO THE EXHIBITS ATTACHED TO UNUM'S MOVING PAPERS – AND AS BATES-STAMPED THEREIN.**]*

6

Case No.: C 07-4088 PJH (E-FILING)
PLAINTIFF'S MEMO. OF POINTS AND AUTH. IN OPP. TO MOTION FOR PARTIAL SUMMARY
JUDGMENT, OR IN THE ALTERNATIVE, MOTION FOR JUDGMENT UNDER RULE 52

1          **3.    Unum Breached Industry Standards in Numerous And Significant
                 Ways, the Effect Of Which Was To Further Unum's Own Economic
2                Self Interest**

3          Prior to offering any opinions, John Sargent describes his qualifications in pertinent part

4    as follows:

5          3.    I have been an employee for two disability insurance companies in
                 management positions for a total of 15 years. My last salaried position in the
6                insurance industry was with UnumProvident Insurance Company where I
                 held several positions of increasing responsibility including Head of
7                Operations for Disability Claims. In this capacity, I was responsible for the
8                adjudication of group and individual disability claims. I had signature
                 authority of one million dollars and was one of four Senior Managers who
9                had claim-settling authority. I had supervisory responsibility for two Claim
10               Directors who reported directly to me. The Directors had Claim Managers
                 who reported to them. I functioned as a company representative in
11               depositions and was involved in the development and implementation of
                 claim handling policies and procedures. As my resume indicates, I
12               frequently speak on matters pertaining to disability claims. I have a Masters
                 of Science degree from Syracuse University and a Bachelors of Arts degree
13               from St. Lawrence University. I have been involved in the field of disability
14               management my entire career of 31 years. My experience in disability
                 insurance claims and practices qualifies me as an expert to express the
15               following opinions regarding the handling of Lyle Hughes' disability claim
16               by Unum. Attached to this declaration is my C.V. which accurately describes
                 my training and professional experience.
17
18         **4.    I am familiar with the standard of care governing the evaluation
           and determination of disability claims. My familiarity with industry
19         standards for claims handling is based on, among other things, my own
           claims experience, my conversations with claims persons employed by
20         other insurance companies, my participation seminars and talks relative
           to claims and the content of the Multi-State Market Conduct
21         Examination described below.**

22         (Declaration of John Sargent, paragraphs 3 and 4, pages 0-1.) (Emphasis
23         Added.)

24         According to Mr. Sargent, Unum violated the commands of the Multi-State Market

25   Conduct Examination in its handling of Hughes' claim. As Mr. Sargent states in his

26   Declaration:

27         11.    Unum's handling of Mr. Hughes' disability claim is inconsistent with
                 the industry standard for claims handling and, more particularly, the
28               mandates of the *Report of the Targeted Multistate Market Conduct*

                                              7

*Examination* issued on 11/18/2004. The mandates stated in the *Report of the Targeted Multistate Market Conduct Examination,* in my opinion, correctly reflect the industry standard of care for claims handling.

12. The purpose of the Multistate Market Conduct Examination by the Insurance Commissioner's of all 50 states was to determine if the disability income claim handling practices of the UnumProvident Companies (Unum, Paul Revere, Provident Life and Accident) reflected systemic "unfair claim settlement practices" as defined in the NAIC *Unfair Methods of Competition and Unfair and Deceptive Acts and Practices in the Business of Insurance Model Act* (1972) or NAIC *Claims Settlement Practices Model Act* (1990). Claims reviewed were selected from claims closed in 2002. The issues identified by the Multistate Examination were judged to represent claim practices common to all three UnumProvident Companies.

Areas of concern identified in the initial claim review included:

1. Excessive reliance upon-in-house medical professionals

2. Unfair construction of attending physician or IME records

3. Failure to evaluate the totality of the claimant's medical condition

4. Inappropriate burden placed on claimants to justify eligibility for benefits.

(Declaration of John Sargent, paragraphs, 11 12, pages 21-24.)

> **a.    In This Case, Unum breached industry standards governing claims handling by failing to perform a vocational analysis of Hughes' occupation as an insurance agent before denying his claim**

In this case, Unum's breaches of industry standards included its failure to perform a vocational analysis to determine the true demands of Hughes' job as an insurance agent and the extent to which such demands may have exceeded his functional capacity due to his fatigue, pain and inability to tolerate stress. As noted by Mr. Sargent, even a Unum employee wrote in the claims file that Unum needed to perform a vocational analysis to "confirm occ duties" -- an analysis which, in fact, was never made.

As Mr. Sargent states in part (in paragraph 13 of his Declaration):

8

i.**Unum violated numerous industry standards which it was required to follow in order to arrive at a fair and balanced claim decision. As a result Unum's violations of the standard of care, critical factual findings were never made which, in my opinion, must be made in order to arrive at a fair and objective claims decision.**

ii.**More particularly, Unum never determined Mr. Hughes' actual job duties and particular demands of his job as an insurance agent. As reflected on page UACL000671 of the claims file, on January 10, 2005, Unum's own employee states, "Medical info support needed and confirm occ duties."** Although Dr. Donna J. Carr, Unum's Medical Director, determined that Mr. Hughes was able to work as a agent during those times when he was not fatigued or sleepy, she is not a vocational expert and never develops a factual basis on which to base her opinion that working in this manner, in fact, was feasible. **More specifically, Dr. Carr and the other Unum employees working on Mr. Hughes' claim failed to determine the particular demands of his occupation -- for example, how often Mr. Hughes would have to be on the phone or interact in person with clients and over what time period during the day, whether it is practical or even possible for Mr. Hughes to schedule his important job duties when he was not fatigued or sleepy or in too much pain, whether he realistically could even predict in advance when he would not be too fatigued, sleepy or suffering from pain to work.** Dr. Carr, as stated, is not a vocational expert and is not competent to determine that Mr. Hughes' profession as an insurance agent is such that he can work successfully if he limits his work only to those time periods when he is not too fatigued, sleepy or in pain -- which is what she determined. It appears that Dr. Carr's vocational determination was adopted as a key part of Unum's rationale for the denial of the claim despite the fact that Unum never conducted an adequate vocational analysis.

iii.In my opinion, had Unum performed the type of occupational analysis which is required by the standard of care, Unum would have clearly understood that Mr. Hughes' job is stressful due to intensive competition in insurance sales and would then have arrived at a realistic and fair evaluation of the demands of his job. **Without such an evaluation, as stated, Unum failed to make critical factual findings on which to base a fair and objective claims decision.**

(See Declaration of Sargent, paragraph 13, pages 24-26.) (Emphasis Added.)

1

2

3

4

          **b.**      **Unum violated industry standard by exhibiting a clear bias against finding that fibromyalgia is a genuine illness and potentially disabling notwithstanding court decisions acknowledging fibromyalgia as such as well as medical literature and the statement of the American College of Rheumatology**

5          Notwithstanding that, in its denial letter (UACL00730-734), Unum arguably gave lip-

6   service to fibromyalgia as a genuine illness, an important entry in the claims file reveals a clear

7   bias by Unum against finding that fibromyalgia can be a cause of disability.

8          Unum's bias against finding that fibromyalgia exists or is verifiable is particularly

9   egregious in light of the fact that courts have expressly recognized it as a disabling illness --

10   including in a 1999 published federal case to which Unum was a party -- in which the court

11   cited to a 9th Circuit opinion to support its ruling that fibromyalgia is real and potentially

12   disabling.

13          In *Russell v. UNUM Life Ins. Co. of Am.*, 40 F. Supp. 2d 747 (E.D. South Carolina 1999)

14   wherein the court granted the plaintiff summary judgment on the grounds that Unum had abused

15   its discretion in denying disability benefits, the court rejected Unum's argument that

16   fibromyalgia cannot be the basis for a finding of disability because it is not an objectively

17   diagnosable condition.  As the court stated:

18

19

20

21

22

23

24

25

26

27

28

> **The essence of UNUM's argument is that fibromyalgia is not an objectively diagnosable disease. See (Def.'s Cross-Mot. Summ. J. at 10.) The courts disagree.** "Fibromyalgia is a type of muscular or soft-tissue rheumatism that affects principally muscles and their attachment to bones, but which is also commonly accompanied by fatigue, sleep disturbances, lack of concentration, changes in mood or thinking, anxiety and depression." Lang v. Long-term Disability Plan of Sponsor Applied Remote Tech., Inc., 125 F.3d 794, 796 (9th Cir. 1997) (citing The Arthritis Foundation, Fibromyalgia, Arthritis Foundation Pamphlet at 1, 5 (1992**)). Recognizing the ability to detect and diagnose the condition, several courts have awarded disability benefits under ERISA for fibromyalgia**. See e.g., Lang, 125 F.3d at 799; Godfrey v. BellSouth Telecomm., Inc., 89 F.3d 755, 759-60 (11th Cir. 1996). **The Godfrey court noted that "fibromyalgia can be severely disabling and can only be diagnosed by an examination of the patient."** Godfrey, 89 F.3d at 758. Hence, courts often affirm an administrator's denial of benefits when that decision is supported by one or more independent medical examinations. See e.g., Robinson v. Phoenix Home Life Mut. Ins. Co., 7 F. Supp. 2d 623, 632-33 (D. Md. 1998) (denying benefits to fibromyalgia

10

1   claimant based on two separate medical opinions); Bremer v. Hartford Life &

2   Accident Ins. Co., 16 F. Supp. 2d 1057, 1061-1062 (D. Minn. 1997) (same).
    **Therefore, courts are aware that fibromyalgia is a diagnosable condition.**

3   **More importantly, the medical community also recognizes this fact.** *Id.*

4   at 750.)   (Emphasis Added.) *Russell v. UNUM Life Ins. Co. of Am.*, supra at
    751.

5       In the instant case, the claims file reflects a similar attitude by Unum to that condemned

6   by the court in *Russell v. UNUM Life Ins. Co. of Am.*, *supra*. More particularly, approximately

7   5 years after *Russell v. UNUM Life Ins. Co. of Am.*, *supra* was decided, Robert N. Anfield,

8   Unum's most senior medical executive, placed in Hughes' claims file a memo referring to

9   articles about fibromyalgia. The memo, however, refers *only to articles which cast doubt on*

10  *fibromyalgia as a genuine condition and on it having disabling effects* and not to any articles

11  which affirm fibromyalgia as genuine or disabling. More particularly, as Mr. Anfield notes in

12  Mr. Hughes' file on March 15, 2005 -- just days before the denial letter was issued on March 22,

13  2005:

14          [Fibromyalgia] is a label developed within the discipline of rheumatology to
            identify individuals with widespread chronic aches and pain. The label does

15          not provide nor imply a pathophysiologic explanation for the pain not the
            other associated symptoms of which these individuals may complain.

16

17          **There is no evidence that fibromyalgia is a crippling or incapacitating**

18          **disorder or is the prodrome for more serious illness** (Blackburn WD.
            Fibromyalgia.  SMA Southern Medicine 1998; 85:3-5).  **Ultimately, the**

19          **label "fibromyalgia" provides no pathophysiologic foundation upon**
            **which to base a set of restrictions and limitations.** (See Claims File, page

20          UACL00677.) (Emphasis added.)

21      Based, in part, on the statements of this senior medical executive at Unum,  Mr. Sargent

22  states:

23          iv.    **In my opinion, Unum demonstrated clear bias against finding a**

24          **person disabled based on a diagnosis of fibromyalgia. As stated above,**
            **the collection of citations to medical articles by Robert N. Anfield, the**

25          **most senior medical executive in the company, appears to contain**
            **citations only to articles which cast doubt on the existence of**

26          **fibromyalgia or its disabling effects. As stated above, the position that**
            **fibromyalgia is not a genuine condition or is not disabling is contrary to**

27          **medical literature, court opinions and the statement of the American**

28          **College of Rheumatology which has recognized it as a legitimate**

                                                11

**disorder**. At least one federal case to which Unum was a party, *Russell v. Unum*, cited above, states that based on medical literature, fibromyalgia is a genuine and medical condition which can be disabling. As the court stated:

"The essence of Unum's argument is that fibromyalgia is not an objectively diagnosable disease. The courts disagree. 'Fibromyalgia is a type of muscular or soft-tissue rheumatism that affects principally muscles and their attachment to bones, but which is also commonly accompanied by fatigue, sleep disturbance, lack of concentration, changes in mood or thinking, anxiety and depression.'"

v. **It appears clear from the claims file that Unum's bias against finding that fibromyalgia is a legitimate disorder effected its claim decision.** On May 2, 1998, Dr. Edward L. Auen, one of Mr. Hughes' treating physicians, suspected fibromyalgia and stated that Mr. Hughes fits the diagnosis of fibromyalgia and "probably has trigger points." Dr. Duong, another of Mr. Hughes' treating physicians, advised Unum that he believed Mr. Hughes suffered from fibromyalgia. Unum chose to reject the diagnosis from Dr. Duong -- and did so without an IME consultation to confirm its own in-house medical staff review.

(See Declaration of Sargent, paragraph 13, pages 26-27.) (Emphasis Added.)

        c.    **Unum breached the standard of care and acted in its own economic self-interest by failing to obtain a rheumatologic IME to resolve the disagreement between the treating physician and its in-house medical staff as to whether Hughes suffers from fibromyalgia**

As Mr. Sargent states in his declaration, and as further set forth below, if Unum had genuine questions about whether Dr. Duong's diagnosis of fibromyalgia was correct and if it disputed Dr. Auen's finding that Hughes "probably had trigger points," the standard of care applicable to a disability insurer required Unum to seek an independent medical exam (IME).

ix. In light of the fact that one treating physician had diagnosed Mr. Hughes with fibromyalgia and another treating physician had suspected fibromyalgia, if Unum had legitimate questions about this diagnosis, the standard of care required that Unum obtain a rheumatological IME. **In my opinion, Unum violated the standard of care (as expressed in the *Report of the Targeted Multistate Market Conduct Examination*), by rejecting the opinions of treating physicians in favor of its own in-house medical staff and not seeking a rheumatological IME to attempt to resolve the disagreement.**

(See Declaration of Sargent, paragraph 13, pages 29.) (Emphasis Added.)

12

1    By not obtaining an IME, Unum avoided the very real potential that an IME would have

2    supported Dr. Duong's diagnosis of fibromyalgia -- contrary to the opinions of Unum's in house

3    medical staff -- and thus supported the payment of the claim.

          **d.    Unum breached the standard of care by failing to fairly**
4                      **interpret and apply information obtained from treating**
5                      **physicians -- and, instead, choosing to interpret a lack of**
                  **information to support its denial of the claim**

6    As part of its fiduciary duty to the plan participant, a plan administrator has an affirmative

7    duty to obtain **adequate information** to make its decision. *Booton v. Lockheed Medical Benefit*

8    *Plan*, 110 F.3d 1461, 1364-1364 (9th Cir. 1997), *Kunin v. Benefit Trust Life Ins. Co.,* 910 F.2d 534,

9    538 (9th Cir. 1990).

10    In *Booton v. Lockheed Medical Benefit Plan, supra*, wherein the 9th Circuit Court of

11    Appeals reversed the Plan's denial on the ground that the plan administrator failed to discharge its

12    affirmative duty to diligently investigate the beneficiary's claim, the court stated:

13        ... If the plan administrators believe that more information is needed to make
14        a reasoned decision, **they must ask for it**. There is nothing extraordinary
    about this; it's how civilized people communicate with each other regarding
15        important matters. (Emphasis Added.) (<u>Id</u>. at 1463.)

16        Had Aetna requested the needed information and offered a rational reason for
17        its denial, it would be entitled to substantial deference. **But to deny the**
    **claim without explanation and without obtaining relevant information is**
18        **an abuse of discretion.** See <u>Kunin v. Benefit Trust Life Ins. Co.</u>, 910 F.2d
19        534, 538 (9th Cir. 1990) (**burden is on plan to obtain adequate**
    **information to make decision**); cf. <u>Halpin v. W.W. Grainger, Inc.</u>, 962 F. 2d
20        685, 691 (7th Cir. 1962) (**an ERISA plan cannot rely on a lack of**
    **information to support its denial of benefits when it fails to inform the**
21        **beneficiary about the missing information so that the beneficiary can**
22        **provide it**). (Emphasis Added.) (<u>Id</u>. at 1364.)

23    As Mr. Sargent states, Unum breached the standard of care by interpreting Dr. Duong's

24    silence to the question of "what, if anything" impairs" Hughes "from his previous level of

25    activity" to mean "nothing." Dr. Duong's silence was ambiguous and could well mean

26    something other than "nothing." Unum breached the standard of care by failing to obtain

27    clarification from Dr. Duong, clarification which likely would have supported the payment of

28

the claim in light of what he had already stated in the Attending Physician Statement submitted

to Unum. As Mr. Sargent states:

> x.    **Although the standard of care requires that Unum contact an attending physician where circumstances warrant and further require that Unum fairly interpret and apply information obtained from the treating physician, it is clear that Unum did not do so.** More particularly, when Dr. Carr wrote Dr. Duong and asked "What, if anything, about his medical condition impairs him from his previous level of activity?" (AR SUM 0110) and Dr. Duong did not respond to the question, Unum chose to interpret Dr. Duong's silence as indicating that his answer was "Nothing." **In my opinion, it was clearly inconsistent with industry standard to choose to interpret Dr. Duong's silence to mean that there is nothing which impairs Mr. Hughes from performing his prior level of activity.** Silence on the part of Dr. Duong is ambiguous and it is unclear what it means. Dr. Duong may have believed he had already answered the question in the Attending Physician Statement or may possibly not have understood the question as phrased or may have had some other reason for not answering. **At that point, it was essential for Unum to contact Dr. Duong to ascertain what his silence meant (if anything) rather than choosing to interpret it in a manner which would support the denial of the claim. Unum's interpretation of Dr. Duong's silence to support its denial is another example of Unum acting in its own financial self-interest rather than fairly and objectively evaluating the claim.**

(See Declaration of Sargent, paragraph 13, pages 29-30.) (Emphasis Added.)

Unum's act of interpreting an ambiguous silence in its favor is yet another example of

Unum acting its own self-interest rather than fairly and objectively evaluating the claim.

> e.    **Unum breached the standard of care and acted in its own self-interest by failing to evaluate the "totality" of Hughes' medical problems -- in other words, the interaction of his several co-morbid conditions**

As Mr. Sargent states in his Declaration, Unum breached the standard of care by failing

to consider how the various medical conditions afflicting Hughes might combine to impair his

ability to function as an insurance agent. As Mr. Sargent states:

> xi.    **In my opinion, Unum also violated industry standard by failing to evaluate the totality of Mr. Hughes' medical condition.** Unum did not consider the significant impact of Mr. Hughes' sleeping disorder within the context of his pain, nor did they factor in the variability of his mental disorder that is inconsistently controlled. **Unum clearly does not consider**

**the cumulative impact of the medical conditions on impairment; rather, it uses a reductive approach to minimize each condition individually**.

(See Declaration of Sargent, paragraph 13, pages 30.)  (Emphasis Added.)

By attempting to find ways to minimize the impact of all of Hughes' medical problems *on an individual basis* namely, by trying to minimize the effects of his sleep apnea (the existence of which was not disputed even by Unum), the effects of his fibromyalgia  (which one treating doctor diagnosed and another suspected), and the effects of his bi-polar disorder (which Unum never disputed), Unum breached the standard of care; by failing to perform this analysis, Unum failed to fairly evaluate Hughes' ability to function effectively as an insurance agent. Additionally, by failing to perform this analysis, Unum exhibited a desire to act in its own financial self-interest rather than in the interest of its own insured.

<blockquote>

**f.      In denying Hughes' claim, Unum selectively cited to purported evidence which supported its denial while ignoring or mischaracterizing evidence which supported payment of the claim**

</blockquote>

Unum's evaluation reveals that it selectively read the medical and vocational information in a calculated way to support a denial rather than to make a fair and objective analysis.  As Mr. Sargent states:

> **vi.      Other evidence that Unum permitted bias and self-interest to impact this claims decision is how Unum selectively cites to a purported lack of findings in the medical records or makes assumptions to support its denial but ignores substantial medical information which supports the payment of the claim**.  As set forth in its letter to Mr. Hughes dated March 22, 2005 (UACL000730-734), for example, Unum disregards the statement of Dr. Auen that Mr. Hughes "probably has trigger points" and that he suspected (even though he later believed that Mr. Hughes that psoriatic arthritis was the most likely diagnosis); **Unum disregards the observations of the field agent who witnessed Mr. Hughes' fatigue and evidence of increasing difficulty functioning as well as Mr. Hughes' description of the very extensive pain throughout his body; Unum disregards the limitations and restrictions imposed by Dr. Duong as set forth in his Attending Physician Statement; Unum disregards Mr. Hughes' own statement of his extensive symptoms and problems; Unum disregards or dismisses the totality of co-morbid conditions effecting Mr. Hughes; Unum falsely states that there is "no data indicating that [Mr. Hughes] is having difficulty with daytime somnolence, decreased concentration, or memory"** (UACL00732) when Mr. Hughes has given Unum multiple reports

15

Case No.: C 07-4088 PJH (E-FILING)
PLAINTIFF'S MEMO. OF POINTS AND AUTH. IN OPP. TO MOTION FOR PARTIAL SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, MOTION FOR JUDGMENT UNDER RULE 52

1     of these difficulties and they are recorded in the medical records. Unum
then, for example, makes the unsupported assumption that if Mr. Hughes
2     really had cognitive deficits, he would seek the services of a mental health
care provider. **Another example of Unum's selective citation of the**
3     **medical evidence to justify its denial is its citation of the comment by Dr.**
**McKee in March of 2004 that Mr. Hughes was "pleased" with the results**
4     **from the CPAP machine to treat his sleep apnea coupled with Unum's**
**disregard of the significance of reports of Mr. Hughes' consideration of**
5     **surgery in February, 2005 to treat the very same problem.** (UACL00732)
6

7     (See Declaration of Sargent, paragraph 13, pages 27.)  (Emphasis Added.)

8         As Mr. Sargent notes, Unum's statement that there is "no data" that Hughes was having

9 difficult with "daytime somnolence, decreased concentration or memory" is simply false. Such

10 problems are reported by Hughes multiple times to Unum and are stated in the medical

11 information collected by Unum from his physicians. (See, e.g.,. UACL 00309, 00338, 00407,

12 00408, 00660, 006677; AR SUM 0050, 0123) Moreover, Unum seizes upon the statement by

13 Dr. McKee that Hughes is "pleased" with the CPAP machine while ignoring that, less than a

14 year later, Hughes was exploring the surgical option to relieve the nasal obstruction for which

15 the CPAP machine had been prescribed. Unum's false statement and self-serving distortions of

16 the factual record evidence how its financial self-interest has tainted its claims analysis.

17         **g.**     **Unum's breaches of industry standard in the instant case**
               **reflect Unum's well recognized pattern of unfair claims**
18                **handling**

19         Mr. Sargent testifies to further evidence of how Unum's breaches of the standard of care

20 evidence a pattern of unfair and self-serving claims handling. As Mr. Sargent states:

21     vii.     **The findings of the** *Report of the Targeted Multistate Market*
        *Conduct Examination*, **described above, further support my opinion that,**
22         **in this case, Unum allowed its own self-interest to effect its claims**
        **decision. In my opinion, Unum's handling of Mr. Hughes' claim**
23         **evidences the same pattern of improper claims handling condemned by**
        **that** *Examination*. **More particularly, for example, Unum exhibited an**
24         **excessive reliance upon in-house medical professionals who were at odds**
        **with the treating physician as to the diagnosis of fibromyalgia and other**
25         **medical issues; Unum engaged in an unfair and self-serving construction**
        **of the attending physician's records and statements, as stated in more**
26         **detail below, when Unum chose to interpret a treating doctor's silence as**
27         **a negative; Unum further failed to evaluate the totality of Mr. Hughes'**
28

1  condition -- that is, how the combination of several different conditions
   might impair his ability to work.

2

3  (See Declaration of Sargent, paragraph 13, pages 28-29.) (Emphasis Added.)

4      As the U.S. Supreme Court stressed in *Metropolitan Life Ins. Co. v. Glenn, supra* at

5  2351, that an insurer has a well-recognized history of unfair claims handling is "**perhaps of**

6  **great importance**" in deciding whether the insurer's conflict of interest affected its decision-

7  making process. In this case, as set forth above, Unum's decision with respect to Hughes' claim

8  came just four months after the Multistate Market Conduct Examination was issued and when

9  the same widespread and condemned claims practices appeared to still be in effect.

10         h.    It was unreasonable to deny Hughes' claim based on the
                 type of analysis Unum performed -- an analysis which
11               violates industry standard and the particular mandates of
                 the Multi-State Market Conduct Examination

12

13     Unum's serious and numerous violations of industry standards renders its claims decision in

   this case unreasonable. As Mr. Sargent states:

14

15         xii.   In my opinion and for the reasons stated above, from a claims
                  standpoint and in light of the industry standard of care governing claims
                  handling, it was unreasonable to deny Mr. Hughes' claim for disability
16                benefits. Before Unum could reasonably deny benefits to Mr. Hughes, it
                  had to perform a complete, fair and objective evaluation -- which it
17                clearly never performed.

18

19  (Declaration of Sargent, page 31)

20     Accordingly, Unum's breaches of industry standards directly affected both the manner in

21  which the claim was handled and the ultimate claims decision.

22         4.    The Evidence In The Claims File, If Evaluated In Conformity With The
                 Standard Of Care, Mandates The Payment Of Hughes' Claim

23     The evidence in the claims file, if evaluated fairly and objectively, requires payment of

24  the claim. As Mr. Sargent states:

25         xiii.  In my opinion, based on the medical information in the claims
                  file and my understanding of the occupation of an insurance agent -- an
26                occupation with which I am quite familiar due to my work in the
                  industry -- industry standard mandated the payment of Mr. Hughes'
27                claim. (Unum, as stated, did not adequately evaluate Mr. Hughes' job duties
                  and demands as an insurance agent.)    There is abundant evidence of
28

17

1   conditions, including sleep apnea, fibromyalgia, bi-polar disorder, which
2   produce symptoms which would likely impair Mr. Hughes' ability to
    function effectively as an insurance agent. Unum has not identified any other
3   appropriate job for which he would be suited in light of his medical
    condition, symptoms and limitations. Based on the information in the claims
4   file, had Unum conducted an evaluation in conformity with industry standard,
    it would likely have concluded that Mr. Hughes was unable to perform the
5   material and substantial duties of his occupation on a regular basis and of any
6   other occupation for which he is suited. (*Id.*)

7   Abundant evidence supports a finding of disability. The evidence supporting disability

8   includes but is not limited to the evidence to which Mr. Sargent refers in his Declaration.  In

9   fact, the Attending Physician Form, dated October 10, 2004, completed by Dr. John Duong,

10  Hughes' principal treating physician, *by itself* supports a finding of disability.

11  As set forth in the Attending Physician Form, Dr. Duong wrote in as the "Primary

12  Diagnosis": **"Fibromyalgia 729.1/Sleep Apnea 780.59/Bipolar disorder 296.7."**

13  With regard to "Restrictions" applicable to Hughes, Dr. Duong wrote: **Avoid all stressful**

14  **situations, no long periods of sitting.** (UACL00336)

15  Dr. Duong further commented, **"Due to patient's chronic illness, he is not able to perform**

16  **a lot of duties.  Symptoms change from day to day.  Difficult for patient to perform any tasks."**

17  (See the Attending Physician Form, UACL00340)

18  In the "Claimant's Supplemental Statement" dated 2/22/05, Dr. Duong reiterates his

19  diagnoses of fibromyalgia, sleep apnea and bi-polar disorder and further states:

20  **Patient should not be working full time or part time anymore.  Multiple**
    **overlapping symptoms are and will be an on-going issue [?] for patient.**
21  (The word following "on-going" is difficult to decipher.) (UACL 00661)

22  Although there is considerably more evidence in the file to support a finding of disability,

23  the evidence cited above is far greater than the "scintilla" required to defeat a motion for summary

24  judgment under *Ingram v. Martin Marietta Long Term Disability Income Plan*, supra at 1114.

25  The evidence cited above combined with John Sargent's opinion that the evidence in the

26  claims file compels a finding of disability establishes plaintiff's right, under FRCP 52 to judgment

27  in his favor and against Unum. Assuming the Court requires additional evidence concerning

28

1    Hughes' medical condition or the demands of his occupation, a trial should be held in which such

2    extrinsic evidence is admitted as permitted by *Mongeluzo v. Baxter Travenol Long Term Disability*

3    *Benefit Plan, supra* at 943-944.

4    **C.    EVEN UNDER THE "ARBITRARY AND CAPRICIOUS" STANDARD OF
         JUDICIAL REVIEW, A TRIABLE ISSUE OF FACT EXISTS AS TO
5        WHETHER UNUM ABUSED ITS DISCRETION**

6        Hughes incorporates by reference all of the documentary references and arguments

7    stated above and re-states them herein in the event the Court determines that the "arbitrary and

8    capricious" standard applies. Hughes raises the additional arguments set forth below.

9        Under *Booton v. Lockheed Medical Benefit Plan, supra* at 1463-1464, Unum cannot

10   reasonably deny a claim under the "arbitrary and capricious" standard when it never obtained

11   information it reasonably could have obtained; moreover, Unum cannot properly capitalize on a

12   lack of information which it had the ability to obtain.

13       In the instant case, under the law cited above, Unum cannot claim that its factual findings

14   are reasonable where it:

15           a.   failed to ascertain the meaning of Dr. Duong's silence to the question posed about

16                what, if anything, impairs Huges performance of present activities;

17           b.   failed to obtain an IME to resolve the disagreement between Dr. Duong and

18                Unum's in-house medical staff as to the diagnosis of fibromyalgia;

19           c.   failed to obtain vocational data to determine the precise demands of Hughes'

20                occupation in terms of duties, frequency of performance, scheduling, nature and

21                degree of stress and other matters;

22           d.   failed evaluate the interplay of co-morbid conditions on Hughes' ability to perform

23                his occupation; and,

24           e.   unreasonably read the evidence in a way to support a denial -- for example, when it

25                asserted in its denial letter that Hughes' sleep apnea was not disabling because he

26                was "pleased" with the effect of this CPAP machine but then ignored the

27                significance of his exploring surgical options to treat the very problem for which he

28                was prescribed the CPAP.  (See UACL00732)

19

1    In *Govindarjan v. FMC Corp.* 932 F.2d 634 (7th Cir. 1991), wherein the Court of Appeals

2    upheld the district court's reversal of the ERISA plan's denial of benefits, a denial based on a

3    *selective reading* of the medical evidence and erroneous conclusions that the disability had no

4    physical cause, the court stated:

5    The district court concluded that "FMC's **selective review of the medical
     evidence and its completely erroneous assertion that there was no
     physical cause of the subjective symptoms** of pain renders its decision not
6
     only unreasonable but arbitrary and capricious." Id. at 637.
7

8    In the instant case, Unum's numerous breaches of accepted and approved claims handling

9    practices, its failure to perform necessary analysis, its failure to make essential factual findings and

10   its selective and self-serving reading of the medical and vocational evidence create, at the very least,

11   a triable issue of fact as to whether Unum's denial was reasonable.  Accordingly, Unum has failed

12   to carry its burden to show that it is entitled to summary judgment or judgment under FRCP 52.

13   Hughes, however, has established his right to judgment under FRCP 52 -- unless the Court

14   determines that extrinsic evidence is necessary to decide the case.

15                              **IV.  CONCLUSION**

16   For the reasons shown, Plaintiff respectfully requests that this Court deny Unum's motion.

17   **Respectfully submitted,**

18

19   Dated:  August 4, 2008                    **BOURHIS & MANN**

20

21                                             By

22                                                  Ray Bourhis, Esq.
                                                   Lawrence Mann, Esq. SBN 83698
23                                                 Bennett M. Cohen, Esq.
                                                   Attorneys for Plaintiff LYLE HUGHES
24

25

26

27

28

**PROOF OF SERVICE**
*Lyle Hughes v.Unumprovident Corporation, et al.*

*U.S. District Court, Northern District of California, Case No. C07-4088 PJH*

I am a resident of the State of California, over the age of eighteen years and not a party to this action. My business address is 1050 Battery Street, San Francisco, California 94111. On August 4, 2008, I will serve the following documents:

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, MOTION FOR JUDGMENT UNDER RULE 52

in the manner as provided by Rule 5(b) of the Federal Rules of Civil Procedure by placing a true copy of the document(s) listed above, enclosed in a sealed envelope, addressed as set forth below, for collection and mailing on the date and at the business address shown above following our ordinary business practices. I am readily familiar with this business practice for collection and processing of correspondence for mailing with the United States Postal Service. On the same day that a sealed envelope is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service with postage fully prepaid. I am employed in the county where the mailing described below occurred, and am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service. I placed a true copy of the specified document(s) in a sealed envelope(s) with postage thereon fully prepaid. The envelope(s) will be deposited with the United States Postal Service on this day in the ordinary course of business in San Francisco, California.

| | |
|---|---|
| **UNUMPROVIDENT CORPORATION, etc.** | **(CO-COUNSEL FOR NEW YORK LIFE** |
| Thomas M. Herlihy, Esq. | **INSURANCE COMPANY ONLY)** |
| Wilson Elser Moskowitz | |
| Edelman & Dicker LLP | J. Russell Stedman, Esq., SBN 117130 |
| 525 Market Street - 17th Floor | Jennifer N. Lee, Es2q. SBN 230727 |
| San Francisco, CA 94105-2725 | BARGER & WOLEN |
| p 415-433-0990 x3015 | 650 California Street, 9th Floor |
| f 415-434-1370 | San Francisco, CA 94108 |
| Email: thomas.herlihy@wilsonelser.com | Tel: (415) 434-2800 |
| | Fax: (415) 434-2533 |
| | Email: rstedman@barwol.com; |
| | jlee@barwol.com |

**(X) (FEDERAL)** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. Executed at San Francisco, California, on August 4, 2008.

Irene N. Palada

21

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................1

II.  LAW GOVERNING AN MOTION FOR SUMMARY JUDGMENT IN ERISA
     CASE ................................................................................................................1

III. LEGAL ARGUMENT .............................................................................................2

    A.    THE "DE NOVO" STANDARD OF JUDICIAL REVIEW APPLIES
        BECAUSE THE UNUM PLAN LANGUAGE FAILS TO CLEARLY AND
        UNAMBIGUOUSLY STATE THAT UNUM HAS DISCRETION TO DECIDE
        HUGHES'S CLAIM .........................................................................................2

    B.    ASSUMING SOLELY FOR THE SAKE OF ARGUMENT THAT THE PLAN
        DOES SUFFICIENTLY GRANT UNUM DISCRETIONARY AUTHORITY,
        SUBSTANTIAL EVIDENCE EXISTS THAT UNUM'S CONFLICT OF
        INTEREST AFFECTED ITS DECISION TO DENY HUGHES' DISABILITY
        CLAIM; ACCORDINGLY, A TRIABLE ISSUE EXISTS AS TO WHETHER
        THE "DE NOVO" STANDARD OF JUDICIAL REVIEW APPLIES WHICH
        PREVENTS THE GRANTING OF SUMMARY JUDGMENT CLAIM ............3

        1.    The de novo standard of review applies where substantial evidence
            exists that the insurer's own financial self-interest affected its
            benefits decision ......................................................................................3

        2.    Unum's history of violating industry standards for claims handling
            is a highly relevant factor in determining whether its financial self-
            interest affected its claim decision.............................................................4

        3.    Unum Breached Industry Standards in Numerous And Significant
            Ways, the Effect Of Which Was To Further Unum's Own
            Economic Self Interest..............................................................................7

            a.    In This Case, Unum breached industry standards governing
                claims handling by failing to perform a vocational analysis
                of Hughes' occupation as an insurance agent before
                denying his claim.......................................................................8

            b.    Unum violated industry standard by exhibiting a clear bias
                against finding that fibromyalgia is a genuine illness and
                potentially disabling notwithstanding court decisions
                acknowledging fibromyalgia as such as well as medical
                literature and the statement of the American College of
                Rheumatology...........................................................................10

            c.    Unum breached the standard of care and acted in its own
                economic self-interest by failing to obtain a rheumatologic
                IME to resolve the disagreement between the treating
                physician and its in-house medical staff as to whether
                Hughes suffers from fibromyalgia.............................................12

i

d.    Unum breached the standard of care by failing to fairly interpret and apply information obtained from treating physicians -- and, instead, choosing to interpret a lack of information to support its denial of the claim...............................13

e.    Unum breached the standard of care and acted in its own self-interest by failing to evaluate the "totality" of Hughes' medical problems -- in other words, the interaction of his several co-morbid conditions......................................................14

f.    In denying Hughes' claim, Unum selectively cited to purported evidence which supported its denial while ignoring or mischaracterizing evidence which supported payment of the claim .................................................15

g.    Unum's breaches of industry standard in the instant case reflect Unum's well recognized pattern of unfair claims handling ................................................................16

h.    It was unreasonable to deny Hughes' claim based on the type of analysis Unum performed -- an analysis which violates industry standard and the particular mandates of the Multi-State Market Conduct Examination............................17

4.    The Evidence In The Claims File, If Evaluated In Conformity With The Standard Of Care, Mandates The Payment Of Hughes' Claim........17

C.    EVEN UNDER THE "ARBITRARY AND CAPRICIOUS" STANDARD OF JUDICIAL REVIEW, A TRIABLE ISSUE OF FACT EXISTS AS TO WHETHER UNUM ABUSED ITS DISCRETION...........................................19

IV. CONCLUSION ..........................................................................................20

ii

1

## TABLE OF AUTHORITIES

2

**Cases**

3  Abatie v. Alto Health & Life Insurance, 458 F.3d 955 (9th Cir. 2006) ..........................................3

4  Atwood v. Newmont Gold Co., Inc, *supra* at 1323 ................................................................4

5  Atwood v. Newmont Gold Co., Inc., 45 F.3d 1317, 1322 (9th Cir. 1995)................................3, 4

6  Bogue v. Ampex Corporation 976 F. 2d 1319, 1325 (9th Cir. 1992).............................................2

7  Booton v. Lockheed Medical Benefit Plan, 110 F.3d 1461, 1364-1364 (9th Cir. 1997) ..............13

8  Casey v. Uddeholm Corp., 32 F.3d 1094, 1098 (7th Cir. 1994) ......................................................1

9  Firestone Tire & Rubber Co. v. Bruch 489 U.S. 101 (1989).............................................................2

10  Godfrey v. BellSouth Telecomm., Inc., 89 F.3d 755, 759-60 (11th Cir. 1996) ........................10

11  Govindarjan v. FMC Corp. 932 F.2d 634 (7th Cir. 1991)..............................................................20

12  Halpin v. W.W. Grainger, Inc., 962 F. 2d 685, 691 (7th Cir. 1962) ............................................13

13  *Ingram v. Martin Marietta Long Term Disability Income Plan,* 244 F.3d 1109, 1114 (9th Cir. 2001).

14    ..........................................................................................................................................2

15  *Ingram v. Martin Marietta Long Term Disability Income Plan*, supra at 1114 ...........................18

16  Kunin v. Benefit Trust Life Ins. Co., 910 F.2d 534, 538 (9th Cir. 1990)......................................13

17  Lang v. Long-term Disability Plan of Sponsor Applied Remote Tech., Inc., 125 F.3d 794, 796 (9th

18    Cir. 1997).....................................................................................................................10

19  Langbein, supra, at 1317-1321 .....................................................................................................5

20  Mongeluzo v. Baxter Travelol Long Term Disability Benefit Plan, supra at 942 (9th Cir. 1995).2

21  Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan, 46 F.3d 938, 942 (9th Cir. 1995)

22    ..........................................................................................................................................1

23  Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan, supra at 942........................2

24  Robinson v. Phoenix Home Life Mut. Ins. Co., 7 F. Supp. 2d 623, 632-33 (D. Md. 1998) ........10

25  *Russell v. Unum* ..........................................................................................................................12

26  *Russell v. UNUM Life Ins. Co. of Am.*, 40 F. Supp. 2d 747 (E.D. South Carolina 1999) ......10, 11

27

**Statutes**

28  ERISA, 29 U.S.C. § 1104(a)(1)....................................................................................................5

Case No.: C 07-4088 PJH (E-FILING)
PLAINTIFF'S MEMO. OF POINTS AND AUTH. IN OPP. TO MOTION FOR PARTIAL SUMMARY
JUDGMENT, OR IN THE ALTERNATIVE, MOTION FOR JUDGMENT UNDER RULE 52

1    **Other Authorities**

2    *Langbein, Trust Law as Regulatory Law*, 101 Nw. U. L. Rev. 1315, 1323-1324 (2007) .............7

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No.: C 07-4088 PJH (E-FILING)
PLAINTIFF'S MEMO. OF POINTS AND AUTH. IN OPP. TO MOTION FOR PARTIAL SUMMARY
JUDGMENT, OR IN THE ALTERNATIVE, MOTION FOR JUDGMENT UNDER RULE 52