THOMAS M. HERLIHY (SBN 83615)
LAWRENCE J. ROSE (SBN 129511)
WILSON, ELSER, MOSKOWITZ,
    EDELMAN & DICKER LLP
525 Market Street, 17th Floor
San Francisco, CA 94105
Telephone:    (415) 433-0990
Facsimile:    (415) 434-1370

Attorneys for Defendants
UNUM GROUP (formerly known as UNUMPROVIDENT CORPORATION),
FIRST UNUM LIFE INSURANCE COMPANY (erroneously sued as
UNUM CORPORATION) and NEW YORK LIFE INSURANCE COMPANY

J. Russell Stedman (SBN 117130)
Jennifer N. Lee (SBN 230727)
BARGER & WOLLEN LLP
650 California Street, 9th Floor
San Francisco, CA 94108
Telephone:    (415) 434-2800
Facsimile:    (415) 434-2533

Co-Counsel for NEW YORK LIFE INSURANCE COMPANY only

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYLE HUGHES,<br><br>    Plaintiff,<br><br>v.<br><br>UNUMPROVIDENT CORPORATION; UNUM CORPORATION, NEW YORK LIFE INSURANCE COMPANY, et al.,<br><br>    Defendants. | Case No.:    CV07-04088 PJH<br><br>**DEFENDANTS' REPLY BRIEF IN SUPPORT MOTION FOR PARTIAL SUMMARY JUDGMENT, OR IN THE ALTERNATIVE MOTION FOR JUDGMENT UNDER RULE 52**<br><br>New Date    :    September 17, 2008<br>Time         :    9:00 a.m.<br>Courtroom    :    3<br>Floor        :    17<br>Before       :    Hon. Phyllis J. Hamilton<br><br>[Filed pursuant to Stipulation and Order (Court Doc. # 65)] |

---

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE MOTION FOR JUDGMENT UNDER RULE 52**
USDC NDCA Case #CV07-044088 PJH
370958.1

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ...................................................................................................................1

OBJECTION TO PLAINTIFF'S "EVIDENCE" ..................................................................1

ARGUMENT ..........................................................................................................................1

I. PLAINTIFF'S ARGUMENT REGARDING THE STANDARD OF REVIEW MISDIRECTS THE COURT ..............................................................1

    A. The Plan Documents Give Unum The Right To Use Its Discretion In Handling Claims ........................................................................2

    B. The *Atwood v. Newmont Gold* Analysis Does Not Apply .....................4

    C. Unum's Decision Here Remains Entitled To Substantial Deference ....5

II. A PROPER REVIEW OF THE ADMINISTRATIVE RECORD DEMONSTRATES THAT UNUM'S DECISION MUST BE UPHELD ........7

    A. Dr. Duong's Silence ................................................................................7

    B. Necessity of an Independent Medical Examination ..............................9

    C. Necessity of Vocational Data ................................................................10

    D. Evaluation of Co-Morbid Conditions ...................................................10

    E. Unum's "Read" of the Evidence ...........................................................11

CONCLUSION .....................................................................................................................11

# TABLE OF AUTHORITIES

## FEDERAL CASES

PAGE

*Abatie v. Alta Health & Life Insurance Co.*, 458 F.3d 955 .................................................. 3, 4, 7

*Alday v. Container Corp. of America*, 906 F.2d 660 .................................................................. 3

*Alvarez v. Unum Life Insurance Co.*, 2007 U.S.Dist. LEXIS 62719 ........................................ 5

*Atwood v. Newmont Gold Co.*, 45 F.3d 1317 ............................................................................ 4

*Bergt v. Retirement Plan for Pilots Employed by MarkAir, Inc.*, 293 F.3d 1139
(9th Cir. 2002), *quoting Pisciotta v. Teledyne Industrial*, 91 F.3d 1326 ................................. 3

*Bogue v. Ampex Corp.*, 976 F.2d 1319 ...................................................................................... 3

*Booton v. Lockheed Medical Benefits Plan*, 110 F.3d 1461 ..................................................... 8

*Boyd v. Bert Bell/Peter Rozelle NFL Players Retirement Plan*, 410 F.3d 1173 ....................... 7

*Evangelista v. Inlandboatmen's Union*, 777 F.2d 1390 ............................................................ 5

*Gehman v. Unum Life Insurance Co.*, 2008 U.S.Dist. LEXIS 17469 ........................................ 6

*Gonzalez v. Unum Life Insurance Co.*, 2008 U.S.Dist. LEXIS 57120 ...................................... 7

*Ingram v. Martin Marietta Long Term Disability Income Plan*, 244 F.3d 1109 ...................... 3

*Kearney v. Standard Insurance Co.*, 175 F.3d 1084 .................................................................. 2

*Metropolitan Life v. Glenn*, 128 S.Ct. 2343 ........................................................................... 4, 5

*Snow v. Standard Insurance Co.*, 87 F.3d 327 ........................................................................ 11

*Taft v. Equitable Life Assur. Social*, 9 F.3d 1469 .................................................................. 11

*Troutman v. Unum Life Insurance Co.*, 2008 U.S.Dist. LEXIS 53756 ..................................... 6

## INTRODUCTION

Defendants, Unum Group (formerly known as Unumprovident Corporation), First Unum Life Insurance Company (erroneously sued as Unum Corporation) and New York Life Insurance Company submit this reply brief in support of their motion for partial summary judgment, or in the alternative, motion for judgment under Rule 52 on the ERISA claims in this action. Stated simply, the plaintiff argues for an incorrect legal standard, relies on inadmissible hearsay and purported "character evidence," and ultimately nit-picks and second-guesses Unum's decision in an attempt to keep his ERISA claims alive. However, the decision in this matter is entitled to deference, and none of plaintiff's efforts are successful.

## OBJECTION TO PLAINTIFF'S "EVIDENCE"

As stated more completely in the specific Objections filed herewith, the defendants object to the plaintiff's attempt to augment his brief with thirty (30) pages of advocacy styled as an expert witness declaration. The Declaration of John Sargent contains ten pages of material taken, apparently verbatim, from the website of the Mayo Clinic, set among pages of speculation, hearsay, and the witness' own characterizations of documents that are not before the Court. Similarly, plaintiff's request for judicial notice attempts to introduce evidence of a settlement agreement, in violation of Federal Rule of Evidence 408, through the use of hearsay and documents that fail to satisfy the Best Evidence rule. All of these materials should be excluded, and this motion decided on the ERISA Administrative Record and the force of the applicable authorities.

## ARGUMENT

I.  **PLAINTIFF'S ARGUMENT REGARDING THE STANDARD OF REVIEW MISDIRECTS THE COURT**

Plaintiff first argues that a *de novo* standard of review should apply to Unum's decision; then he claims that the standard of review is an issue of fact; finally, he claims that a discredited legal analysis should be applied. In fact, the straightforward analysis that applies in ERISA cases demonstrates that Unum is entitled to judgment on the ERISA claims here.

### A. The Plan Documents Give Unum The Right To Use Its Discretion In Handling Claims

The plaintiff apparently agrees that the Unum insurance policy present before the Court as Exhibit B to the Declaration of Sophia Rodriguez (and the subject of defendants' request for judicial notice, filed with the moving papers) constitutes the applicable Plan document governing his benefits under the New York Life group ERISA Plan.[1] Further, the parties agree that the applicable Ninth Circuit precedent requires a clear and unambiguous statement if the plan documents are to confer discretion on an ERISA claims administrator. *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1090 (9th Cir. 1999). The plaintiff contends, however, that the reference to ERISA contained in the Plan's grant of discretion here somehow renders the language unclear and ambiguous.[2]

The idea that identifying the controlling law might make things *less* clear is an argument that only a lawyer could embrace; in the real world, more information is always better than less. Even if the Plan document gave a bare, passing reference to ERISA, that alone would provide a lay participant with a place to start an internet search – which, in turn, will yield ample lay references discussing the scope and effect of ERISA.[3]

In this instance, however, there is much more available. The insurance contract here has a full section titled, "ERISA – Additional Summary Plan Description Information." Thus, this section identifies the Plan Administrator and designates her as "the named fiduciary of the Plan." This section also describes the Plan's "Funding and Contributions," the "Employer's Right to Amend the Plan," the "Claims Procedures," and "Your Rights Under ERISA." The Plan's reference to ERISA in its grant of discretionary authority to the claims fiduciary, therefore, is hardly a single statement given in a vacuum.

---

[1] The plaintiff did not file any opposition to the defendants' request for judicial notice, and makes no claim that any other or different document controls his ERISA claims.

[2] As noted in the defendants' moving papers, the clause here states:

> **the Plan Administrator, with regard to eligibility to participate in the plan, and any designee (which shall include Unum as a claims fiduciary) will have the broadest discretion permissible under ERISA** and any other applicable laws, and its decision will constitute final review of your claim by the Plan. …

[3] *E.g.*, http://www.bourhis-mann.com/faq.htm ("What is meant by the phrase ERISA Preemption?")(accessed August 19, 2008).

---

2
**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT, OR IN THE ALTERNATIVE MOTION FOR JUDGMENT UNDER RULE 52**
USDC NDCA Case #CV07-044088 PJH
370958.1

Moreover, the document before the Court is the insurance contract with the employer, and not the Summary Plan Description, which is "the 'statutorily established means of informing participants of the terms of the plan and its benefits' and the employee's primary source of information regarding employment benefits." *Bergt v. Ret. Plan for Pilots Employed by MarkAir, Inc.*, 293 F.3d 1139, 1145 (9th Cir. 2002), *quoting Pisciotta v. Teledyne Indus.*, 91 F.3d 1326, 1329 (9th Cir. 1996)(*citing Alday v. Container Corp. of America*, 906 F.2d 660, 665 (11th Cir. 1990)). This document, therefore, is more precise, even if arguably more technical, than the summary booklets given to employees.

In fact, there is no legitimate basis to claim that the Plan's language here is insufficient to confer discretion. To the contrary, under well established Ninth Circuit law, the reservation of discretionary authority is easily accomplished. For example, one case advised, "[i]f an insurance company seeking to sell and administer an ERISA plan," or an employer seeking to create such a plan, "wants to have discretion in making claims decisions," then one or the other of them "should say ... 'The plan administrator has discretionary authority to grant or deny benefits under this plan.'" *Ingram v. Martin Marietta Long Term Disability Income Plan*, 244 F.3d 1109, 1113 (9th Cir. 2001). Here, the New York Life Plan did exactly that, stating that benefits will be granted when Unum, "as claims fiduciary, decides in its discretion that the applicant is entitled to them."

Recently, the Court of Appeals *en banc* stated that "[t]here are no 'magic' words that conjure up discretion." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006). Certainly, when the Plan document sets out a paragraph titled, "Discretionary Acts," and then uses the word, "discretion" three more times in that paragraph, that must be sufficient to reserve for the administrator the right to use its own judgment. And, the effect of that reservation is clear: "when a plan includes even one important discretionary element, and the power to apply that element is unambiguously retained by its administrator, we may not second-guess the exercise of that discretion." *Bogue v. Ampex Corp.*, 976 F.2d 1319, 1325 (1992). Thus, there should be no doubt here that Unum's decision is to be assessed under the deferential standard of review.

B. The *Atwood v. Newmont Gold* Analysis Does Not Apply

The plaintiff also claims that if a plan administrator "allowed its own economic self interest to effect its benefits decision, the court must apply the 'de novo' standard," citing *Atwood v. Newmont Gold Co.*, 45 F.3d 1317 (9th Cir. 1995). See Plaintiff's Memorandum, page 4, lines 3-4. The plaintiff then relies on the hearsay and speculative testimony of his "expert" to prove the existence of self-interest, based on the defendants' alleged departures from "industry standards." However, plaintiff's evidence is inadmissible, and his statement of the law is wrong.

There is no competent, admissible evidence that Unum or any other defendant gave any thought at all to its own economic self-interest. Even if the plaintiff's "expert" properly identified the standard of care, based on his own understanding of documents that are not before the Court, his conjectures about Unum's motives are completely groundless, and cannot be given any credit at all. Instead, the Administrative Record here shows that Unum repeatedly sought additional information from plaintiff's treating physicians, used appropriate clinical professionals to review that information, and gave the plaintiff's claim a full and fair review. Plaintiff's speculation to the contrary – even if clothed in a veil of putative "expertise" – cannot refute that conclusion.

Furthermore, *Atwood v. Newmont Gold* has been overruled, and the plaintiff's discussion of that decision simply misleads the Court. The Ninth Circuit Court of Appeal specifically overruled *Atwood* in its *en banc* decision in *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir. 2006). Based on "*Atwood*'s failure to follow Supreme Court precedent, and its placement of an unreasonable burden on ERISA plaintiffs," the Ninth Circuit Court overruled the decision "in its entirety." Id. at 966-67. In its place, the court ruled that the decision of an administrator with discretionary authority is always entitled to some degree of deference, but should be reviewed with the "level of skepticism" that corresponds to any legitimate evidence of the administrator's self-dealing. Id. at 968.

Thereafter, in *Metropolitan Life v. Glenn*, 128 S.Ct. 2343, 2351 (2008), the Supreme Court adopted a rule for "conflicted fiduciaries" that comports closely with *Abatie*. The fact that a particular ERISA plan administrator pays claims out of its own funds – i.e., operates under a

---

4
DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE MOTION FOR JUDGMENT UNDER RULE 52

USDC NDCA Case #CV07-044088 PJH
370958.1

"conflict of interest" – is one factor for the trial court's consideration; in some instances it may act as a tiebreaker, while in others it may vanish. <u>Id.</u> at 2351.

With the proper standard of review in mind, it is clear that plaintiff's attempt to use the declaration of his "expert" to demonstrate Unum's alleged self-interest must be rejected. In truth, the declaration that plaintiff offers is simply an attempt to substitute the conclusion of his professional witness for the analysis that actually belongs to the Court. <u>See</u> <u>Evangelista v. Inlandboatmen's Union</u>, 777 F.2d 1390, 1398 & n.3 (9th Cir. 1985)(union chairman's testimony on grievance handling is improper legal conclusion). Indeed, none of the recent cases discussed below involving Unum showed any need to resort to "expert testimony" outside of the ERISA administrative record, nor any need to subject Unum's decisions to a particularly heightened level of review.

### C.  Unum's Decision Here Remains Entitled To Substantial Deference

The decisions of the Northern District Court issued since the <u>Abatie</u> opinion do not provide any support for plaintiff's claim that Unum should be subject to increased scrutiny for an alleged "history of biased claims administration." <u>See</u> Plaintiff's Memorandum at 5, lines 5-6. To the contrary – in the decisions discussed below, Unum's conclusions as a claims fiduciary have been given deference, just as the decision here should be.

For example, in <u>Alvarez v. Unum Life Ins. Co.</u>, 2007 U.S. Dist. LEXIS 62719 (N.D. Cal. 8/14/2007), the Court held that the plan language at issue "fits squarely within the <u>Firestone</u> exception," and entitled Unum's decision to a deferential, abuse of discretion review. <u>Id.</u> at *10-11. The Court rejected the plaintiff's attempt to use a settlement agreement between Unum and the California Department of Insurance to alter the standard of review, and instead noted that "employers have large leeway to design disability and other welfare plans as they see fit." <u>Id.</u> at *11, citing <u>Black & Decker Disability Plan v Nord</u>, 538 U.S. 822, 833 (2003). Although issues of fact remained, they were to be resolved under the deferential, abuse of discretion standard, with no mention of any heightened scrutiny. <u>Id.</u> at *15.

In *Gehman v. Unum Life Ins. Co.*, 2008 U.S. Dist. LEXIS 17469 (N.D. Cal. 3/6/2008), the plaintiff cited the same law review article that Hughes mentions here, and claimed that a "documented parsimonious claims history" supported application of a "heightened level of review." The Court noted that the plaintiff had failed to make any connection between Unum's administration of life insurance policy – the issue in *Gehman* – and the article's discussion of disability claims practices, and therefore the Court was unwilling to "categorically apply that history to all divisions of the company without some evidence in support." *Id.* at *12, n.3. However, the Court did rely on the factual record legitimately adduced in the dispute before it, which showed "no evidence or allegations of malice, self-dealing or procedural errors." For that reason, the court applied only a "slightly heightened abuse of discretion standard." *Id.* at *11.

Finally, in *Troutman v. Unum Life Ins. Co.*, 2008 U.S. Dist. LEXIS 53756 *16-19 (N.D. Cal. 7/14/2008), the plaintiff attempted to rely on much of the same "evidence" that Hughes asserts, including the settlement agreement between Unum and the California Department of Insurance, under which certain disability claimants were offered an opportunity to have their claims reassessed,[4] and the multi-state settlement agreement to which the Hughes "expert" refers. The Court rejected plaintiff's claim that those settlements constituted "evidence of past misconduct," because the Federal Rules of Evidence exclude settlement agreements as evidence of liability, and because the agreements themselves acknowledge that there was no admission or concession of any wrongdoing. *Id.* at * 20-21. The Court would, however, "consider the fact that concerns about Unum's claims-handling practices were raised," and "apply an analysis using the abuse of discretion standard, tempered by a moderate amount of skepticism." *Id.* at *21-23. Thereafter, pursuant to *Abatie*, the Court limited its review to the administrative record (*see id.* at *14-15, *citing Abatie*, 458 F.3d at 970), and concluded that Unum's decision to deny benefits was <u>not</u> an abuse of discretion. *Id.* at *30.

---

[4] This offer was extended to Lyle Hughes, who initially accepted it, and then retracted his request for reassessment, apparently on advice of counsel. *See* Declaration of Catherine Curtis in Support of Defendants' Opposition to Motion to Remand and Exhibits, filed 11/07/2007 (Doc. #25).

As these opinions demonstrate, cases that involve Unum can be resolved through the same principles that govern ERISA cases generally. No special rules apply, no extra-juridical materials are necessary, and Unum's decisions are accorded the deference that they deserve. In this instance, a review affording any deference at all must affirm the benefits decision here.

## II. A PROPER REVIEW OF THE ADMINISTRATIVE RECORD DEMONSTRATES THAT UNUM'S DECISION MUST BE UPHELD

As noted above, the attempts by plaintiff's "expert" to testify to Unum's "self-interest" are pure speculation, and must be disregarded. Nor can that "expert" provide admissible evidence on the merits of plaintiff's claim, which must be decided on the administrative record and the Court's own review. *Abatie, supra*, at 970. The alleged "industry standards" that he has divined from his private reading of a document that is not before the Court are, simply stated, irrelevant. To be precise, "the issue before the court is not whether Unum reached the 'correct' decision; the issue is whether there is substantial evidence in record to support Unum's decision." *Gonzalez v. Unum Life Ins. Co.*, 2008 U.S. Dist. LEXIS 57120 *25 (N.D. Cal. 7/28/2008).

When the plaintiff's argument is distilled, he finds fault with Unum's claims analysis on five specific points. See Plaintiff's Memorandum, page 19. In each instance, however, any fair review of the administrative record shows that Unum's decision was based on a reasonable interpretation of the Plan's terms, and shows no sign of bad faith. See *Boyd v. Bert Bell/Peter Rozelle NFL Players Retirement Plan*, 410 F.3d 1173, 1178 (9th Cir. 2005)(specifying factors that require affirming an administrator's decision).

### A. Dr. Duong's Silence

Plaintiff has seized on the emphasis given in the defendants' opening brief to his treating physician's failure to respond to the question, "What, if anything, about (plaintiff's) medical condition impairs him from his previous level of activity?" See Plaintiff's Memorandum, pgs. 13-14 & 19; cf. Defendants' Memorandum of Points and Authorities, pg. 10, lines 23-25. Plaintiff argues that Unum "chose to interpret ... ambiguous silence" against him, when somehow it should have

compelled Dr. Duong to answer the question. In fact, there is no evidence in the administrative record that Unum drew any conclusion at all from Dr. Duong's silence. It is just as reasonable – and just as speculative – to conclude that Unum ignored it, and took no message from the doctor's omission. Certainly, the fact that counsel, in motion papers, emphasizes a particular response (or failure to respond) is not proof that the client inappropriately relied on that fact.

Nor does plaintiff's case authority support his criticism of this supposed fault. Plaintiff quotes *Booton v. Lockheed Medical Benefits Plan*, 110 F.3d 1461, 1463, for the principle that, "(i)f plan administrators believe that more information is needed to make a reasoned decision, they must ask for it." Plainly, the administrative record here shows with compelling clarity the numerous occasions on which Unum sought out additional information from the plaintiff and his physicians. But even if there were any doubt about that fact, the *Booton* decision would still be inapposite.

In *Booton*, the benefits carrier sent the plan participant a series of computer-generated form letters denying coverage, while its clinical consultant prepared a list of materials to be gathered "if questioned." 110 F.3d at 1462. The complete absence of any meaningful exchange between the participant and the administrator brought to Circuit Judge Kozinski's mind the famous line from the movie *Cool Hand Luke* – "What we got here, is a failure to communicate." 110 F.3d at 1465. By contrast, the record in this case shows personal contacts with plaintiff himself, telephone calls with his treating physicians, letters confirming those telephone calls, and even a response from one physician confirming that Unum accurately understood the medical facts.[5]

The failure to discover *why* Dr. Duong refused to identify the disabling aspects of plaintiff's medical condition is simply not a legitimate criticism of the record here, and any fair comparison of this record and that in *Booton* demonstrates that Unum completely fulfilled its obligation to investigate plaintiff's claim.

---

[5]  In fact, plaintiff's zeal to find an explanation for Dr. Duong's silence prompts another reference to *Cool Hand Luke* – "Sometimes, 'nothing' can be a pretty reasonable conclusion." *Cf.* Internet Movie Data Base, www.imdb.com/title/tt0061512/quotes ("Sometimes nothin' can be a real cool hand.").

### B. Necessity of an Independent Medical Examination

Next, plaintiff faults UNUM for failing to send him to a rheumatologist to "confirm" his diagnosis of fibromyalgia. To evaluate this averred omission, some background is required. Plaintiff emphasizes that he saw Dr. Edward Auen in May, 1998, who opined that plaintiff "probably has trigger points," which he treats as diagnostic of fibromyalgia. Of course, Dr. Auen did not actually diagnose fibromyalgia, and the plaintiff continued to work for *four years and three months* before filing his claim. In fact, the only time plaintiff ever saw a rheumatologist was *two years earlier*, in 1996. See AR SUM 0090 (Record of David Curtis, M.D.).

If one visit to a rheumatologist would actually reveal the full scope of plaintiff's medical condition, one could fairly ask why plaintiff never went on his own – or why Dr. Duong never felt it necessary to refer him for such a consultation. In fact, accomplishing that visit is actually the plaintiff's own obligation under the New York Life disability Plan, which states:

> Your proof of claim, provided at your expense, must show:
>
> \* \* \* \* \*
>
> the extent of your disability, including restrictions and limitations preventing you from performing your regular occupation.

See Exhibit B to the Declaration of Sophia Rodriguez (Plan Document), and Defendants' Request for Judicial Notice of same.[6]

In addition, plaintiff confuses "diagnosis" with "disability." Benefits under the New York Life Plan are available for participants who are *disabled*; no diagnosis is required. Thus, in the right circumstances, a person could be unable to work as a result of a condition that physicians had not been able to diagnose, and still be entitled to benefits. But the converse is also true: benefits are *not* available simply because one has a diagnosis; instead, the participant must prove that he or she is actually unable to perform the material and substantial duties of employment.

The plaintiff at bar is a life insurance agent, who is averredly suffering from a debilitating rheumatologic disorder. If a trip to a rheumatologist were likely to unlock the keys to his disease, he

---

[6] This document originally appeared as Document No. 27 in the Court's file of this case, and the quoted language appears at page 7 of 40.

would not have needed Unum to make the appointment for him. The administrative record here shows that Dr. Duong never referred plaintiff to a rheumatologist, never identified concrete restrictions and limitations on plaintiff's physical condition, and specifically declined to state what aspects of plaintiff's medical condition prevented him from working. The issue of an IME is a red herring, and Unum's decision on plaintiff's claim was entirely reasonable.

### C. Necessity of Vocational Data

Plaintiff faults Unum for the failure to obtain a formal vocational analysis, based on the view that Unum's own insurance professionals and physicians are not qualified to understand what a life insurance agent does. Interestingly, plaintiff's "expert" does not consider himself to require any such vocational analysis: he is fully willing to opine, from his "understanding of the occupation of an insurance agent – an occupation with which [he] is quite familiar due to [his] work in the industry," that plaintiff was disabled. *See* Declaration of John Sargent, ¶ 13(xiii), page 31, lines 8-9. Plaintiff does not explain why his "expert" is entitled to rely on general "familiarity with the industry," yet Unum's professionals are not. Apparently, vocational data is really only required through the lens of hindsight, and only if one disagrees with plaintiff.

### D. Evaluation of Co-Morbid Conditions

Plaintiff claims that Unum failed to evaluate the conditions other than fibromyalgia that affect his ability to remain employed. In fact, the administrative record is clear that Unum was aware of plaintiff's "working diagnosis" of bipolar disorder, made during his one-and-only trip to a psychiatrist in 2002; the record also revealed that plaintiff managed work with that diagnosis for two years before filing his disability claim. *See* AR SUM 0083-86. And, there is no evidence that his psychiatric condition ever changed, before or after the time he quit working full time. Similarly, the administrative record is clear that Unum understood plaintiff's sleep disorder. A Unum staff physician had a telephone conference with plaintiff's sleep specialist, Dr. Drew Logue, in which he stated that sleep apnea, when treated, is not a disabling condition. *See* AR SUM 0112-16. Unum

---

sent Dr. Logue a written summary of the conversation, and Dr. Logue returned it with very minor corrections, expressing his general assent to its accuracy. See AR SUM 0115-16 ("Concur [with] above, 2/10/05").

Here again, the record is clear that Unum assembled the relevant information and submitted it for review by the appropriate medical professionals. There is really no dispute but that Unum had a reasonable basis for its conclusion, even if plaintiff or his "expert" would have reached the opposite result. However, the law on point is also clear: In this circumstance, Unum's conclusion must be sustained. *Snow v. Standard Ins. Co.*, 87 F.3d. 327, 331-32 (9th Cir. 1996).

### E.  Unum's "Read" of the Evidence

Finally, plaintiff contends that Unum "read the evidence in a way to support a denial." See Plaintiff's Memorandum at 19, line 24. Even if this were true, it does not rise to the level of a legal failing: When a plan administrator has been granted the right to employ its own discretion, even a decision that is directly contrary to some of the evidence in the record does not necessarily constitute an abuse of discretion. *Taft v. Equitable Life Assur. Soc.*, 9 F.3d 1469, 1472. Again, the mere fact that plaintiff himself, or his "expert," or his treating physician would have reached the opposite conclusion is not sufficient to overturn Unum's decision here.

### CONCLUSION

Plaintiff has no dispute with the procedure that defendants have used to bring this issue before the court, and does not dispute the defendants' designations of the Plan document and the administrative record. Instead, plaintiff has based his opposition to defendants' motion on a strained interpretation of the Plan, on inadmissible hearsay and speculation, and on a dogged reliance on an overturned case. The record here reveals that Unum had the authority to apply its own judgment in deciding plaintiff's claim, and that Unum reached a reasonable decision, based on a reasonable interpretation of an adequately developed claims file. In this circumstance, the law requires that

11
DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE MOTION FOR JUDGMENT UNDER RULE 52
USDC NDCA Case #CV07-044088 PJH
370958.1

1  Unum's decision be sustained, and defendants awarded judgment on plaintiff's claims under his
2  New York Life group ERISA plan.

Dated: August 22, 2008          WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP


                                By:      /s/ Thomas M. Herlihy
                                     THOMAS M. HERLIHY
                                     LAWRENCE J. ROSE
                                     Attorneys for Defendants
                                     UNUM GROUP (formerly known as UNUMPROVIDENT
                                     CORPORATION), FIRST UNUM LIFE INSURANCE
                                     COMPANY (erroneously sued as UNUM CORPORATION)
                                     and NEW YORK LIFE INSURANCE COMPANY