UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LYLE HUGHES,

    Plaintiff,

v.

UNUMPROVIDENT CORPORATION, et al.,

    Defendants.
_____/

No. C 07-4088 PJH

**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendants' motion for partial summary judgment came on for hearing before this court on September 17, 2008. Plaintiff Lyle Hughes ("plaintiff") appeared through his counsel, Matthew Clark. Defendant Unumprovident Corporation ("Unum") appeared through its counsel, Lawrence Rose. Defendant New York Life Insurance Company ("New York Life") appeared through its counsel Lawrence Rose and co-counsel Jennifer Lee. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS defendants' motion for partial summary judgment for the reasons that follow.

**BACKGROUND**

This is an ERISA case, challenging the denial of payment of long-term disability benefits. Plaintiff was a New York Life agent operating an independent agency in Modesto, California. He was insured under the New York Life Group Long Term Disability Plan ("Plan"), which has been determined by this court to be an ERISA plan. Unum is the administrator and the funding source of the Plan.

A.    Background Facts

In 2002, plaintiff was diagnosed with chronic fibromyalgia. See Complaint, ¶ 31. Since then, he has developed bipolar disorder, thyroid problems, rheumatoid arthritis, sleep

1 apnea, and clinical depression.  Id.  He contacted Unum to make a claim for LTD benefits
2 in September 2004, alleging that he became totally disabled around the end of August
3 2004.  See Defs.'s Mot. for Partial Summ. J. ("Defs.'s Mot."), p. 4; see also  Defs.'s
4 Summary of Administrative Record ("AR SUM") 0005.

5 Unum sent a letter to plaintiff on September 20, 2004, stating that his claim had
6 been received, but that Unum needed additional information.  AR SUM 0010.  A telephone
7 call took place the next day between plaintiff and a Unum Disability Benefits Specialist
8 regarding plaintiff's physical and mental health status.  AR SUM 0031-34.  Plaintiff therein
9 identified several treating physicians, including Dr. John Duong for fibromyalgia and bipolar
10 disorder, Dr. Drew Logue for sleep apnea, and Dr. Evelyn Schaffer for bipolar disorder.  AR
11 SUM 0058.

12 On September 23, 2004, Unum sent plaintiff a letter defining "disability" as "unable to
13 perform all the material duties of any occupation for which you may reasonably become
14 qualified based on education, training or experience; or unable to earn 80% or more of your
15 indexed covered earnings."  AR SUM 0036.  The letter also indicated that plaintiff's proof of
16 claim, provided at his expense, must show: "(1) that he is under the regular care of a
17 physician; (2) the appropriate documentation of his monthly earnings; (3) the date plaintiff's
18 disability began; (4) the cause of plaintiff's disability; (5) the extent of plaintiff's disability,
19 including restrictions and limitations preventing him from performing his regular occupation;
20 and (6) the name and address of any hospital or institution where plaintiff received
21 treatment, including all attending physicians."  AR SUM 0037.  This list of requirements to
22 prove plaintiff's claim was sent to plaintiff in another letter as well.  See AR SUM 0050.
23 Furthermore, the letter stated that Unum needed additional proof of plaintiff's claim and was
24 contacting Duong, Logue, and Schaffer to obtain medical information to evaluate plaintiff's
25 claim.  AR SUM 0036.

26 Subsequently, on October 13, 2004, Dr. Duong submitted an Attending Physician's
27 Statement.  See AR SUM 0045-48.  The statement indicated that plaintiff's primary
28 diagnosis included fibromyalgia, sleep apnea, and bipolar disorder.  It also indicated under

"Restrictions" that plaintiff should avoid all stressful situations and long periods of sitting. AR SUM 0045. In addition, Dr. Duong submitted plaintiff's psychiatric evaluation from 2002 and rheumatology consultation report from 1996. See AR SUM 0082-90. The psychiatric evaluation stated that plaintiff "relate[d] feeling depressed as long as he remembers." AR SUM 0083. The rheumatology consultation report stated that plaintiff recalled having arthritis since the age of 11. AR SUM 0089. It also stated that plaintiff had psoriatic arthritis, which was "compatible with a long duration of a mild illness." AR SUM 0090.

Moreover, Dr. Logue submitted plaintiff's medical records for sleep apnea on September 13, 2004. See AR SUM 0061-82. The sleep apnea evaluations indicated that plaintiff was diagnosed with the condition "several years" before 2003. AR SUM 0064.

On November 2, 2004, a Unum representative interviewed plaintiff in plaintiff's home to obtain current information about his regular occupational duties, health condition and treating physicians, medications, daily activities, and financials. See AR SUM 0056-61. When the representative asked plaintiff why he felt he could no longer work around August 2004, plaintiff replied that he felt like he hit the wall physically, mentally, emotionally, and spiritually. AR SUM 0058.

On December 17, 2004, plaintiff's medical records were presented for review by a Unum staff nurse, Tina DiMatteo, who concluded that "there is no acute incident or injury or change in the insured's chronic medical condition around the time he goes out of work, the [restrictions and limitations] provided are not supported." AR SUM 0095. However, under her recommendation, DiMatteo wrote, "to discuss file with UnumProvident medical profession [sic] to determine if there is agreement that the [restrictions and limitations] are not supported based on the medical data." Id. Dr. Donna Carr, the medical professional with whom DiMatteo discussed plaintiff's file, agreed with DiMatteo's conclusion. AR SUM 0097.

Thereafter, plaintiff's file was referred to a multi-disciplinary roundtable, where the consensus appeared to be that plaintiff's medical records did not support his restrictions and limitations and that plaintiff had not been in appropriate treatment for his conditions.

3

1  AR SUM 0100-103.  It was also agreed that additional information was needed, including
2  whether Dr. Duong coordinated all of plaintiff's treatment and whether plaintiff had been
3  referred to anyone since his disability began in September 2004.  AR SUM 0101.  These
4  and other related questions were addressed to Dr. Duong on January 25, 2005.  AR SUM
5  0104-05.  Dr. Duong responded the next day that (1) plaintiff did not have any radiology
6  testing done recently, (2) Dr. Duong and plaintiff did not discuss changing plaintiff's current
7  medications, (3) Dr. Duong had not yet referred plaintiff out for physical therapy, (4) plaintiff
8  was seeing Dr. Logue for sleep apnea, (5) the last time plaintiff saw a psychiatrist was in
9  2002, and (6) plaintiff came in for a follow-up visit with Dr. Duong on January 13, 2005.  AR
10 SUM 0108-10.

11     An additional request for information was also sent to Dr. Logue on February 16,
12 2005.  AR SUM 0117-18.  Two days later, Dr. Logue faxed his notes from plaintiff's
13 February 14, 2005 office visit.  AR SUM 0119.  The report summarized plaintiff's recent
14 treatment for sleep apnea and stated that plaintiff was planning surgery for his sleep apnea
15 with another doctor.  Dr. Logue believed that it was premature to proceed with surgery, but
16 that plaintiff rejected his recommendation.  Id.

17     Meanwhile, Unum sent plaintiff a letter on January 10, 2005, informing him that his
18 contract required his illness to be one that "requires and receives regular care by a
19 physician."  AR SUM 0126.  The letter said that plaintiff's medical records did not show
20 treatment after March 23, 2004.  Id.  To determine if plaintiff met the policy definition of total
21 disability, the letter said that Unum needed to verify any restrictions and limitations plaintiff
22 might have and how those affected the performance of his job duties when his disability
23 began.  AR SUM 0127.  In addition, the letter said that Unum could not make a
24 determination at that time regarding his claims.  AR SUM 0126.

25     Furthermore, a Designated Medical Officer ("DMO") assessment by Unum was
26 conducted based on plaintiff's medical records on March 15, 2005.  AR SUM 0129-31.  The
27 administrative record does not show that any additional medical records were submitted to
28 supplement plaintiff's previous records before the DMO assessment.

B.   Unum's Denial of Plaintiff's Claim

On March 22, 2005, Unum denied plaintiff's request for benefits. AR SUM 0136. Specifically, Unum stated that plaintiff's medical data did not support his restrictions and limitations or his inability to perform his duties as an insurance agent. AR SUM 0136-40. Plaintiff later submitted a note detailing a recent office visit for sleep apnea. AR SUM 0143. However, Unum did not find the additional note as sufficient to reverse its decision. AR SUM 0145.

C.   Procedural History

Plaintiff sued Unum on June 27, 2007, alleging (1) Unum breached their insurance contract by failing to pay plaintiff disability benefits, (2) Unum fraudulently stated that it would pay him disability benefits if he became disabled, (3) Unum failed to act in good faith or deal fairly with him, and (4) Unum's conduct caused him severe emotional distress and anxiety. See Complaint. In addition, plaintiff alleged three state claims against the Commissioner of the California Department of Insurance. Id. The action was removed to federal court on August 8, 2007. See Notice of Removal of Action to Federal Court.

On September 11, 2007, plaintiff sought to remand the case to state court. See Court Docket, Document No. 11, filed September 11, 2007. On November 30, 2007, the court ordered further briefing in connection with plaintiff's motion to remand the complaint for lack of subject matter jurisdiction. See Order Granting Remand in Part and Denying Remand in Part. Specifically, the court sought further briefing on the issue whether the Plan at issue is governed by ERISA. Id. The court concluded that ERISA did govern the Plan. Id. Accordingly, the court denied plaintiff's motion to remand with respect to those claims preempted by ERISA. Id.

Unum now moves for partial summary judgment, or in the alternative, judgment under Rule 52.

////

////

**DISCUSSION AND ANALYSIS**

A.   Legal Standards

Ordinarily, summary judgment is appropriate if the pleadings and materials demonstrate there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). ERISA actions challenging a denial of benefits, however, require a slightly different analysis. It is well-established that a challenge to an ERISA plan's denial of benefits under 29 U.S.C. § 1132(a)(1)(B) is reviewed de novo, unless the benefit Plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the Plan. See Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 963 (9th Cir. 2006). When it is shown that the administrator has such discretion, the court will apply an abuse of discretion standard of review. Id. "When the decision to grant or deny benefits is reviewed for abuse of discretion, a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply." See Bendixen v. Standard Ins. Co., 185 F.3d 939, 942 (9th Cir. 1999).

Here, defendants request that the court review the denial of benefits under the abuse of discretion standard, find that Unum's denial was reasonable and supported by the administrative record, and grant their motion for partial summary judgment. Plaintiff, naturally, asks that the court review Unum's denial of his claims de novo and find that he has been disabled under the Plan from September 2004 through the present time. Thus, the parties raise, and the court must decide, two basic issues: (1) the threshold question of whether the court should review Unum's denial of plaintiff's disability claims de novo, or under an abuse of discretion standard; and (2) whether Unum properly denied plaintiff disability benefits.

B.   Proper Standard of Review

As noted above, a decision whether to apply de novo review or an abuse of discretion standard depends on the wording of the Plan itself. As the Ninth Circuit has

held, "for a Plan to alter the standard of review from the default of de novo to the more lenient abuse of discretion, the Plan must unambiguously provide discretion to the administrator." See Abatie, 458 F.3d at 964.

Here, Unum's 2003 Group Insurance Policy states:

> In exercising its discretionary powers under the Plan, the Plan Administrator, with regard to eligibility to participate in the plan, and any designee (which shall include Unum as a claims fiduciary) will have the broadest discretion permissible under ERISA and any other applicable laws, and its decisions will constitute final review of your claim by the Plan.  Benefits under this Plan will be paid only if Unum, as claims fiduciary, decides in its discretion that the applicant is entitled to them.

See Req. for Judicial Notice ISO Defs.' Mot. for Partial Summ. J. ("Judicial Notice"), Ex. B. In addition, a memo sent to all agents enrolled in the Plan on August 11, 2003 summarized material modifications to the Plan, and stated: "Unum has the exclusive and final discretionary authority to construe and interpret Plan provisions, to make any factual determinations to determine benefits, if any, to be paid."  Judicial Notice, Ex. D.

Under the standards enunciated in Abatie, this language constitutes an unambiguous grant of discretionary authority on Unum.  See 458 F.3d at 963 (The Plan at issue stated that "[t]he responsibility for full and final determinations of eligibility for benefits; interpretation of terms; [and] determinations of claims. . .rests exclusively with Plan administrator.").  For as in Abatie, where the Ninth Circuit noted that Plan language "granting the power to interpret Plan terms and to make final benefits determinations confers discretion on the Plan administrator," the Plan here also grants Unum the discretionary authority to "construe and interpret Plan provisions," and to "make any factual determinations to determine benefits."  See Abatie, 458 F.3d at 963; see also Judicial Notice, Ex. D.

Seeking to avoid this conclusion, plaintiff argues that Unum had a structural conflict of interest, sufficient to alter the standard of review from abuse of discretion to de novo review.  While plaintiff is correct as to the former, he is incorrect as to the latter.  A "structural conflict of interest" does exist since Unum acts "as both the Plan administrator and the funding source for benefits."  See Abatie, 458 F.3d at 965 ("[A]n insurer that acts as

7

both the plan administrator and the funding source for benefits operates under what may be termed a structural conflict of interest.")  In deciding whether such conflicts are sufficient to alter the standard of review from abuse of discretion to de novo review, however, the Abatie court held that abuse of discretion review is required "whenever an ERISA plan grants discretion to the Plan administrator," and that to the extent a conflict of interest exists, the abuse of discretion review is to be informed "by the nature, extent, and effect on the decision-making process of any conflict of interest that may appear in the record."  See Abatie, 458 F.3d at 967.  In so stating, the Ninth Circuit rejected its prior approach, used in Atwood v. Newmont Gold Co., 45 F.3d 1317 (9th Cir. 1995), in which the Ninth Circuit employed a burden shifting approach in evaluating conflicts to determine which standard of review applies.

In other words, abuse of discretion review is mandated once the court deems that discretionary authority is delegated to the Plan administrator.  Rather than weighing – as before – the conflict of interest issue to determine whether abuse of discretion review should be discarded in favor of de novo review, the court must now weigh the conflict of interest "as a factor in abuse of discretion review," requiring a "case-by-case" balancing.  Abatie, 458 F.3d at 968.

Thus, since the court has determined that the Plan unambiguously conferred discretion upon Unum, the appropriate standard of review is abuse of discretion.  To the extent a conflict of interest existed, the court considers it as one factor to be weighed against others in determining whether Unum's denial of plaintiff's benefits was reasonable.

C.   Analysis of Unum's Denial of Plaintiff's Benefits

Having determined that the applicable standard of review is abuse of discretion, the court turns to the heart of the parties' dispute: whether Unum properly denied plaintiff's disability benefits.  Under the abuse of discretion standard, the court can set aside the administrator's discretionary determination only when it is arbitrary and capricious.  Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 370 F.3d 869, 875 (9th Cir. 2004).  The Ninth Circuit has held that "a decision grounded on any reasonable basis is not arbitrary or

capricious, and that in order to be subject to reversal, an administrator's factual findings that a claimant is not totally disabled must be clearly erroneous." Id. (internal quotations omitted).

Here, there is little evidence to support a finding that Unum's decision was arbitrary or capricious. The whole of plaintiff's evidence rests upon the expert declaration of John Sargent, former Head of Operations for Disability Claims at Unum. See Decl. of John Sargent in Opp. to Mot. for Partial Summ. J. ("Sargent Decl."), p.1. Mr. Sargent opines that Unum's decision was unreasonable and that Unum breached industry standards by (1) failing to perform a vocational analysis; (2) being biased against a finding of fibromyalgia; (3) failing to obtain a rheumatology independent medical examination; (4) failing to follow up with Dr. Duong when he did not respond to the question of "What, if anything, about [plaintiff's] medical condition impairs him from his previous level of activity?"; and (5) failing to evaluate the cumulative impact of Hughes' medical conditions. See Sargent Decl., p. 24-31.

Mr. Sargent's declaration, however, is inadmissible because it usurps the function of this court, is replete with improper legal conclusions, and is ultimately not helpful to the court. Mr. Sargent draws improper legal conclusions by stating that Unum breached industry standards, that Unum failed to make a fair and objective evaluation of plaintiff's claim, and that Unum's decision to deny plaintiff benefits was unreasonable. See Sargent Decl., p. 24, 27, 31. It is well-settled that allowing an expert to opine on an issue of law usurps the authority of the court. See, e.g., McHugh v. United Serv. Auto. Ass'n, 164 F.3d 451, 454 (9th Cir. 1999) (stating that expert opinions on issues of law are inappropriate; an expert's role is to interpret and analyze factual evidence, not to provide legal meaning). Accordingly, the court STRIKES Mr. Sargent's declaration. Without Mr. Sargent's declaration to support plaintiff's position, there is no other evidence to show that Unum's denial of plaintiff's claims was arbitrary or capricious. Thus, bereft of Mr. Sargent's inadmissible declaration, plaintiff's showing is wholly deficient.

1 By contrast, substantial evidence in the record supports Unum's decision as reasonable. In evaluating plaintiff's disability claim, for example, Unum repeatedly sent letters to plaintiff requesting information and documents for proof of his claim; interviewed plaintiff at his residence; contacted his treating physicians multiple times to supplement his medical records; and requested several medical professionals to review his medical records, all of whom reached the consensus that plaintiff was not disabled under the Plan's definition. See AR SUM 0010, 36-37, 45-48, 50, 56-61, 95-97, 100-105, 117-118, 129-131. Therefore, on balance, the court finds that Unum's denial of plaintiff's claims was reasonable, and not arbitrary or capricious.

Moreover, the court finds that Unum's decision was reasonable despite a purported structural conflict of interest. In the presence of any purported structural conflict of interest, the Ninth Circuit noted that the court may view the conflicted administrator's decision with an increased level of skepticism when, for example, the administrator provides inconsistent reasons for denial, fails to adequately investigate a claim, fails to credit a claimant's reliable evidence, or repeatedly denies benefits to deserving participants. Abatie, 458 F.3d at 968. Conversely, if the conflict is unaccompanied by any evidence of this sort, the decision to deny benefits may be treated as if it had more credibility. Id.

In this case, Unum's decision to deny plaintiff benefits is credible. Plaintiff asserts that Unum has had a history of biased claims administration. See Plaintiff's Opposition, p. 5. The court accordingly considers Unum's decision to deny plaintiff benefits with an increased level of skepticism. See Abatie, 458 F.3d at 968. However, plaintiff has not demonstrated that Unum was biased in the instant case, and the court will not assume that Unum is biased every time it denies a claimant benefits merely because it has a parsimonious claims-granting history. As a result, the court finds that Unum's history does not outweigh the evidence in the record supporting its decision to deny plaintiff benefits. Accordingly, the court concludes that Unum's decision, even when viewed with skepticism, was credible and not an abuse of discretion.

////

**CONCLUSION**

For the foregoing reasons, the court GRANTS defendants' motion for partial summary judgment. A case management conference will be held on November 13, 2008, at 2:30 p.m., to discuss the procedures for resolving the remaining claims.

**IT IS SO ORDERED.**

Dated: October 3, 2008

_____
PHYLLIS J. HAMILTON
United States District Judge